IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| PHILLIP J. LAVEZZO<br>d/b/a DKO TECHNOLOGIES,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | No. 05-575C<br>(Judge Wheeler) |

JOINT STIPULATIONS OF FACT

Pursuant to this Court's pretrial order dated March 14, 2006, the parties respectfully inform the Court that they believe that there are no genuine issues of material fact requiring a trial, and submit the following joint stipulations of fact. The parties propose that briefing of cross-motions for summary judgment proceed in accordance with the schedule proposed in the Joint Preliminary Status Report, filed March 8, 2006. Additionally, the parties interpret the Court's pretrial order as permitting the filing of joint stipulations of fact as an alternative to the filing of witness and exhibit lists. If the parties' interpretation is incorrect, we respectfully request an enlargement of time within which to respond to such revised schedule as the Court should issue.

1. The Federal Labor Relations Authority ("FLRA") is an agency of the Government of the United States of America.

2. From August 14, 2000 to April 30, 2005, Gary Crawford was employed by the FLRA as a contracting officer.

3. On September 22, 2002, Mr. Crawford was promoted from GS-13 to GS-14. A true and correct copy of Mr. Crawford's position description with the FLRA following his

promotion will be filed with the Court in a joint appendix to accompany the cross motions for summary judgment.

4. In connection with his position, Mr. Crawford had a Certification of Appointment (also known as a warrant) appointing him as a contracting officer for the United States of America, which was applicable to contracts with unlimited amounts.

5. At all relevant times prior to Mr. Crawford's retirement, Yvonne Thomas, Director of the FLRA's Administrative Services Division, was Mr. Crawford's immediate supervisor, and Ms. Thomas's immediate supervisor was David Smith, Acting Executive Director of the FLRA (who also served as Solicitor of the FLRA).

6. Neither Ms. Thomas or Mr. Smith were contracting officers. Ms. Thomas was not authorized to personally handle claims by contractors with the FLRA.

7. On March 25, 2004, Mr. Smith terminated Mr. Crawford's existing warrant and issued a new Certification of Appointment, appointing him as a contracting officer for the United States of America, which was applicable to contracts with amounts not exceeding $200,000 ("Crawford's New Warrant"). A true and correct copy of Mr. Crawford's New Warrant will be filed with the Court in a joint appendix to accompany the cross motions for summary judgment.

8. Mr. Crawford's New Warrant remained in effect until terminated by Mr. Smith on April 26, 2005, in anticipation of Mr. Crawford's retirement.

9. Mr. Crawford retired from the FLRA on April 30, 2005.

10. In late 2002 or early 2003, Phillip J. Lavezzo began business as a sole proprietorship under the name DKO Technologies ("DKO"), in response to a business opportunity to contract with the FLRA.

11. Mr. Lavezzo had learned of the business opportunity indirectly through Donald K. Ourecky who learned of the opportunity from Mr. Crawford. Mr. Crawford knew

Mr. Ourecky because Mr. Ourecky had previously acted as the moderator for a FLRA administrative forum, at which time Mr. Crawford informed Mr. Ourecky about the anticipated opportunity to contract with the FLRA.

12. Mr. Lavezzo was and is the sole owner of DKO. Mr. Lavezzo has at all times been the sole proprietor of DKO.

13. On January 23, 2003, Mr. Lavezzo registered DKO with and obtained a business license for DKO from the City of Alexandria, Virginia, as a sole proprietorship owned by Mr. Lavezzo. DKO has at all times been licensed by the City of Alexandria, Virginia, as a sole proprietorship.

14. Mr. Lavezzo appointed Mr. Ourecky and Mr. Ourecky agreed to serve as the Vice President of DKO. Mr. Ourecky is the Vice President of DKO.

15. Mr. Ourecky was authorized by Mr. Lavezzo to, inter alia, execute documents, sign checks, communicate with the FLRA, and interview potential subcontractors on behalf of DKO.

16. From time to time on various dates, Mr. Lavezzo either sent, or directed Mr. Ourecky to send, e-mails and or letters to Mr. Crawford or others at the FLRA. Most written communications with the FLRA nominally from Mr. Ourecky were written or were in large part the work product of Mr. Lavezzo.

17. Other than Mr. Lavezzo, the sole proprietor, and Mr. Ourecky, who was not paid a salary (although he may have received one or more bonuses), there were no employees of DKO.

18. In late 2002, the FLRA solicited bids for a contract to provide staffing for a FLRA computer help desk.

19. DKO submitted a bid in response to the solicitation.

20. Mr. Crawford, as FLRA contracting officer, awarded the help desk contract to DKO.

21. On December 29, 2002, defendant entered into Contract Number 8095-02-035, also identified upon multiple documents as Contract Number 8095-03-035, with DKO Technologies (the "Help Desk Contract"). The parties have been unable to locate an executed copy of the Help Desk Contract.

22. The Help Desk Contract was signed upon behalf of the United States by Mr. Crawford, as contracting officer.

23. The Help Desk Contract and all subsequent modifications were signed upon behalf of DKO by Donald Ourecky. True and correct copies of the signed modifications to the Help Desk Contract will be filed with the Court in a joint appendix to accompany the cross motions for summary judgment.

24. The Help Desk Contract provided for an initial term from January 1, 2003, to September 30, 2003, with options for up to three (3) additional one-year periods at escalating hourly rates.

25. On or about February 24, 2003, the FLRA solicited bids for a contract to provide Oracle database programming services to the FLRA.

26. DKO was one of 28 companies to submit bids.

27. Mr. Crawford, as FLRA contracting officer, awarded the Oracle contract to DKO.

28. On April 3, 2003, defendant entered into Contract Number 8095-03-001 with DKO (the "Oracle Contract"). A true and correct copy of the Oracle Contract will be filed with the Court in a joint appendix to accompany the cross motions for summary judgment.

29. The Oracle Contract was signed upon behalf of the United States by Mr. Crawford, as contracting officer.

30. The Oracle Contract and all subsequent modifications were signed upon behalf of DKO by Donald Ourecky. True and correct copies of the signed modifications to the Oracle Contract will be filed with the Court in a joint appendix to accompany the cross motions for summary judgment.

31. The Oracle Contract provided for an initial term from April 1, 2003, to October 30, 2003, with options for up to four (4) additional one-year periods at escalating hourly rates.

32. Prior to the award and thereafter during the performance of the contracts, the FLRA never requested from DKO, and DKO never provided to the FLRA, any information specifically establishing that Mr. Ourecky was the agent of Mr. Lavezzo.

33. Prior to the award and thereafter during the performance of the contracts, the FLRA never requested from DKO, and DKO never provided to the FLRA, any information establishing that Mr. Lavezzo was the owner of DKO.

34. In response to a request from the FLRA for a taxpayer identification number for DKO Technologies, Mr. Lazezzo provided his own social security number.

35. At the time of award, and during the performance of the contracts, Mr. Crawford was unaware that Mr. Lavezzo was the sole proprietor of DKO.

36. At the time of award, and during the performance of the contracts, Mr. Crawford believed that Mr. Ourecky was the owner of DKO, or was a partner in the ownership of DKO.

37. At the time of award, and during the performance of the contracts, Mr. Crawford believed that Mr. Ourecky was authorized to execute the contracts and modifications upon behalf of DKO.

38. DKO retained qualified subcontractors to perform the Help Desk Contract (Gurdev Bajwa) and the Oracle Contract (Linda Lou).

39. DKO successfully performed the Help Desk and Oracle Contracts.

40. Although the FLRA never formally executed any option period, the Help Desk and Oracle Contracts were modified by the FLRA on multiple occasions to extend the performance period with additional hours to be provided at the same hourly rates as the initial terms of each contract.

41. The Help Desk Contract was terminated by the FLRA on January 31, 2004.

42. On or about April 30, 2004, the FLRA notified DKO that the Oracle Contract would not be extended any further and directed DKO (including its subcontractors) to cease all work on the Oracle Contract.

43. The Oracle Contract was terminated by the FLRA on April 30, 2004.

44. Mr. Crawford was informed by Ms. Thomas via e-mail, on or about June 30, 2004, that he should not take any action with regard to any Contract Disputes Act claims that potentially could be filed by DKO, or any other contractor, until he received guidance from Ms. Thomas and Mr. Smith. A true and correct copy of Ms. Thomas' June 30, 2004 e-mail to Mr. Crawford will be filed with the Court in a joint appendix to accompany the cross motions for summary judgment.

45. On or about December 9, 2004, DKO submitted claims concerning the Help Desk and Oracle Contracts to Mr. Crawford as the contracting officer (the "claims"). True and correct copies of the Claims will be filed with the Court in a joint appendix to accompany the cross motions for summary judgment.

46. The Claims were received in the FLRA mailroom on December 13, 2004.

47. On January 11, 2005, Ms. Thomas informed Mr. Crawford that he should take no action with regard to the DKO claims until he received guidance from Ms. Thomas and Mr. Smith.

48. On or before January 13, 2005, Ms. Thomas and Mr. Smith decided to transfer the DKO Claims to a contracting officer at the Department of the Treasury, Bureau of Public Debt ("BPD"), for a final decision. Mr. Crawford was not informed of this decision at that time.

49. On January 13, 2005, Ms. Thomas requested that the BPD modify the contracting agreement between the BPD and the FLRA to include a review and decision on the claims, and sent a package of documents from the FLRA contract file(s) to BPD.

50. Mr. Crawford prepared and, on January 13, 2005, signed a document purporting to be a contracting officer's final decision addressing the claims (the "Crawford Decision"). A true and correct copy of the Crawford Decision will be filed with the Court in a joint appendix to accompany the cross motions for summary judgment.

51. Mr. Crawford's signature upon the Crawford Decision was notarized on January 13, 2005, by Mary Prothro, a U.S. Government employee and notary public.

52. On January 13, 2005, after having the Crawford Decision notarized, Mr. Crawford sent an e-mail to Ms. Thomas, a true and correct copy of which will be filed with the Court in a joint appendix to accompany the cross motions for summary judgment.

53. Mr. Crawford was again informed by Ms. Thomas via e-mail, on January 14, 2005, that he should not take any action with regard to the claims until he received guidance from Ms. Thomas and Mr. Smith. A true and correct copy of Ms. Thomas' January 14, 2005 e-mail to Mr. Crawford will be filed with the Court in a joint appendix to accompany the cross motions for summary judgment.

54. On January 14, 2005, Mr. Crawford mailed the Crawford Decision to DKO.

55. Shortly thereafter, DKO learned that Mr. Crawford had purportedly mailed a final decision on the Claims to DKO.

56. On January 14, 2005, Mr. Crawford sent an e-mail to Ms. Thomas, a true and correct copy of which will be filed with the Court in a joint appendix to accompany the cross motions for summary judgment.

57. On January 14, 2005, Ms. Thomas sent a letter to DKO advising of the purported reassignment of the Claims to BPD. A true and correct copy of the letter will be filed with the Court in a joint appendix to accompany the cross motions for summary judgment.

58. DKO received Ms. Thomas' January 14, 2005 letter on January 17, 2005, and on that same date sent a letter (by regular mail as well as e-mail) to Ms. Thomas objecting to the reassignment. A true and correct copy of DKO's letter will be filed with the Court in a joint appendix to accompany the cross motions for summary judgment.

59. On or about January 18, 2005, the Claims were purportedly assigned to Linda Pryor, a contracting officer with BPD.

60. By letter and e-mail dated January 23, 2005, DKO again objected to the reassignment of the Claims to the BPD. A true and correct copy of that letter will be filed with the Court in a joint appendix to accompany the cross motions for summary judgment.

61. By letter and e-mail dated January 28, 2005, DKO wrote to Mr. Crawford, with copy to Francine Eichler, FLRA Inspector General, inquiring why the FLRA had not offered to resolve the dispute by Alternative Dispute Resolution.

62. On January 31, 2005, Ms. Thomas sent a letter (misdated as 2004), by regular mail and e-mail, to DKO advising again of the purported reassignment of the Claims to BPD. A true and correct copy of that letter will be filed with the Court in a joint appendix to accompany the cross motions for summary judgment.

63. By e-mail dated January 31, 2005, DKO wrote to Ms. Thomas, again with a copy to the FLRA Inspector General, Ms. Eichler, to protest the reassignment of its claim to the BPD.

A true and correct copy of that letter will be filed with the Court in a joint appendix to accompany the cross motions for summary judgment.

64. DKO received the Crawford Decision on January 31, 2005.

65. Mr. Lavezzo testified that, on February 1, 2005, DKO submitted an invoice to the FLRA for amounts due pursuant to the Crawford Decision, that the invoice was delivered by courier to the FLRA, that the courier returned to DKO a time-stamped copy of the invoice. A true and correct copy of DKO's invoice, bearing the FLRA mailroom date-stamp of February 1, 2005, will be filed with the Court in a joint appendix to accompany the cross motions for summary judgment.

66. DKO's invoice was never entered into the FLRA Budget and Finance Division invoice log.

67. On February 18, 2005, Ms. Pryor signed documents purporting to be written decisions addressing the claims (the "Pryor Decisions"). True and correct copies of the Pryor Decisions will be filed with the Court in a joint appendix to accompany the cross motions for summary judgment.

68. DKO never communicated with or provided any information to BPD concerning the claims.

69. The United States has not paid DKO for any of the amounts purportedly due under the Crawford Decision.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/ Franklin E. White, Jr.
FRANKLIN E. WHITE, JR.
Assistant Director

s/ David M. Knasel
DAVID M. KNASEL
CLARK & COLLINS, P.C.
Market Station
108-E South Street, S.E.
Leesburg, VA 20175

Attorney for Plaintiff

s/ David D'Alessandris
DAVID D'ALESSANDRIS
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, N.W.
Attn: Classification Unit
8th Floor
Washington, D.C. 20530
Telephone: (202) 307-0139
Facsimile (202) 514-8624

Attorneys for Defendant

June 9, 2006

CERTIFICATE OF SERVICE

I hereby certify that on June 9, 2006, a copy of the forgoing "JOINT STIPULATIONS OF FACT" were filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ David D'Alessandris