IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 05-575 C
(Judge Wheeler)

PHILLIP J. LAVEZZO
d/b/a/ DKO TECHNOLOGIES,
Plaintiff,
v.

UNITED STATES,
Defendant.

# DEFENDANT'S MOTION TO DISMISS OR IN THE ALTERNATIVE FOR SUMMARY JUDGMENT

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

FRANKLIN E. WHITE JR.
Deputy Director

DAVID D'ALESSANDRIS
Trial Attorney
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tele: (202) 307-1011
Fax: (202) 514-8624

July 7, 2006

Attorneys for Defendant

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

INDEX TO APPENDIX . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . v

DEFENDANT'S BRIEF . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

STATEMENT OF THE ISSUES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

I. Nature Of The Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II. Statement Of The Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

SUMMARY OF THE ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

I. Standard Of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

II. Mr. Lavezzo's Claim Must Be Dismissed As There Is No Privity Of Contract . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

III. The Crawford COFD Is Ultra Vires And Is Not Binding Upon The United States . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

IV. The DKO Technologies Claim Was Reassigned To The BPD Before Mr. Crawford Issued The Purported COFD . . . . . . . . . . . . . . . . . . . . . . . . . 22

V. The Crawford COFD Was Constructively Rescinded . . . . . . . . . . . . . . . . 24

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

# TABLE OF AUTHORITIES

I. Cases Page

Alder Terrace, Inc. v. United States,
161 F.3d 1372 (Fed. Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Anderson v. Liberty Lobby, Inc.,
477 U.S. 242 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Appeal of Systems Technology Associates, Inc.,
IBCA 1108-4-76, 81-1 BCA ¶ 14,934 (Fed. 19, 1981) aff'd, 699 F.2d 1383 (Fed. Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Bowen v. United States,
49 Fed. Cl. 673 (2001), aff'd, 292 F.3d 1383 (Fed. Cir. 2002) . . . . . . . . . . 15

Celotex Corp. v. Catrett,
477 U.S. 317 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Conley v. Gibson,
355 U.S. 41 (1957) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Daniels & Shanklin Constr. Co.,
ASBCA No. 37102, 89-3 BCA ¶ 22,060 (May 23, 1989) . . . . . . . . . . . . . 24

Erickson Air Crane Co. v. United States,
731 F.2d 810 (Fed. Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 20

General Dynamics Corp.,
ASBCA No. 39866, 91-2 BCA ¶ 24,017 (May 10, 1991) . . . . . . . . . . . . . 24

Golden Pacific Bancorp v. United States,
15 F.3d 1066 (Fed. Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Jacob Schlesinger, Inc. v. United States,
94 Ct. Cl. 289, 307 (1941) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Maki v. United States,
13 Cl. Ct. 779, 781 (1987), aff'd, 852 F.2d 1293 (Fed. Cir.) (table) . . . . . . 16

McCauley v. United States,
38 Fed. Cl. 250 (1997) , aff'd, 152 F.3d 948 (Fed. Cir.) (table). 4 . . . . . . . 15

McNutt v. General Motors Acceptance Corp.,
298 U.S. 178 (1936) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Mingus Constructors, Inc. v. United States,
812 F.2d 1387 (Fed. Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

New York Shipbuilding Corp. v. United States,
180 Ct. Cl. 446, 457 (1967) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Rice v. United States,
31 Fed. Cl. 156 (1994), aff'd, 48 F.3d 1236 (Fed. Cir. 1995) (table) . . . . . 15

Schweiger Constr. Co. v. United States,
49 Fed. Cl. 188 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Scope Enterprises, Ltd. v. United States,
18 Cl. Ct. 875, 879 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 19

Sweats Fashions, Inc. v. Pannill Knitting Co., Inc.,
833 F.2d 1560 (Fed. Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Trauma Serv. Group v. United States,
104 F.3d 1321 (Fed. Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

II. Statutes And Regulations

41 U.S.C. §15 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

48 C.F.R. § 4.102 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

48 C.F.R. § 16.602 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

III. Miscellaneous

75 A.L.R. 3d 1184 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 19

3 Am. Jur. 2d Agency § 316 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

John Cibinic, Jr. and Ralph C. Nash, Jr., Administration of Government Contracts, 3rd Ed. (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 24

# INDEX TO APPENDIX


Exhibit 1 Contract 8095-02-035, including proposal submitted by Donald K. Ourecky . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Exhibit 2 Memorandum from Yvonne Thomas to Gary Crawford, dated March 24, 2004 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Exhibit 3 E-mail from Yvonne Thomas to David Smith concerning reassignment of claims to the BPD, dated January 13, 2005 . . . . . . 22

Exhibit 4 E-mail from Claudine Woodyard to Yvonne Thomas, concerning reassignment of claims to the BPD, dated January 13, 2005 . . . . . . 23

Exhibit 5 Transcript of deposition of Gary W. Crawford, May 15, 2006, selected pages . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Exhibit 6 Transcript of deposition of Phillip J. Lavezzo, May 17, 2006, selected pages . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

Exhibit 7 Transcript of deposition of Donald K. Ourecky, May 17, 2006, selected pages . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

Exhibit 8 Transcript of deposition of David M. Smith, May 24, 2006, selected pages . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 48

Exhibit 9 Transcript of deposition of Yvonne Thomas, May 24, 2006, selected pages . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 56

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| PHILLIP J. LAVEZZO<br>d/b/a DKO TECHNOLOGIES,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | ) | No. 05-575C<br>(Judge Wheeler) |

DEFENDANT'S MOTION TO DISMISS OR
IN THE ALTERNATIVE FOR SUMMARY JUDGMENT

Pursuant to Rules 12(b)(1) and 56 of the Rules of the United States Court of Federal Claims ("RCFC"), defendant, the United States, respectfully requests that the Court dismiss the complaint for lack of subject matter jurisdiction because the plaintiff lacks privity of contract with the United States. In the alternative, the Court should enter summary judgment in favor of the United States upon the grounds that there are no material issues of fact in dispute and the United States is entitled to judgment as a matter of law. In support of this motion we rely upon the complaint, the joint stipulations of fact (with appendix) previously filed with this Court, this brief, and the attached defendant's appendix.

# DEFENDANT'S BRIEF

## STATEMENT OF THE ISSUES

I. Whether the complaint should be dismissed, pursuant to RCFC 12(b)(1), for lack of subject matter jurisdiction because no privity of contract exists between plaintiff Phillip J. Lavezzo and the United States.

II. Assuming the Court possesses subject matter jurisdiction, whether the United States is entitled to summary judgment because Mr. Lavezzo seeks to enforce an invalid contracting officer's final decision that was ultra vires when issued, and which was constructively rescinded.

## STATEMENT OF THE CASE

### I. Nature Of The Case

The complaint in this case was filed by Donald K. Ourecky, who had falsely represented in the complaint that he was doing business as DKO Technologies ("DKO"). In his complaint, Mr. Ourecky alleged that he had performed contracts awarded by the Federal Labor Relations Authority ("FLRA"), and had submitted contract claims relating to those contracts that had not been paid by the FLRA – despite the fact that the contracting officer, Mr. Gary Crawford, had issued a contracting officer's final decision ("COFD") that had sustained the claims.

Mr. Ourecky sought a writ of mandamus compelling the FLRA to pay the amount awarded plus interest. Compl. ¶ 18 and Prayer for Relief.

During proceedings before this Court related to Mr. Ourecky's motion for summary judgement, Mr. Phillip J. Lavezzo was given permission to substitute himself for Mr. Ourecky as plaintiff, based upon his demonstrating that DKO Technologies is a sole proprietorship entirely owned by Mr. Lavezzo (not Mr. Ourecky).

II. Statement Of The Facts

In 2002, Mr. Ourecky acted as the moderator for a FLRA administrative forum, at which time Mr. Crawford informed Mr. Ourecky about the anticipated opportunity to contract with the FLRA. JS ¶ 11.[1] Mr. Lavezzo subsequently learned of the business opportunity from Mr. Ourecky. JS ¶ 11. Mr. Lavezzo and FLRA contracting officer Mr. Crawford had known each other through a personal friendship for approximately 10 or 12 years. DPFUF ¶ 1.

In response to the anticipated business opportunity, Mr. Lavezzo established a sole proprietorship under the name DKO Technologies ("DKO"). JS ¶ 10. Mr. Lavezzo has at all times been the sole proprietor of DKO. JS ¶ 12. On

[1] "JS ¶ __" refers to that Joint Stipulation of Fact filed by the parties on June 9, 2006. "DPFUF ___" refers to Defendant's Proposed Findings of Uncontroverted Fact, filed with this brief.

January 23, 2003, Mr. Lavezzo registered DKO with (and obtained a business license for DKO) from the City of Alexandria, Virginia, as a sole proprietorship owned by Mr. Lavezzo. DKO has at all times been licensed by the City of Alexandria, Virginia, as a sole proprietorship. JS ¶ 13. Mr. Lavezzo named his sole proprietorship DKO Technologies to allow Mr. Ourecky to be the public figure for all communication with the FLRA. DPFUF ¶ 2.

Mr. Lavezzo also owns a landscaping business and is involved with an antiques business. DPFUF ¶ 3. Other than Mr. Lavezzo, DKO did not have any employees, although Mr. Ourecky, who was not paid a salary (although he may have received one or more bonuses), was appointed to serve as "Vice President." JS ¶ 14, 17. Mr. Ourecky, holds a Ph.D. in genetics, with a minor in horticulture, and also owns an antiques business. DPFUF ¶ 4. Neither Mr. Lavezzo nor Mr. Ourecky possess any training in computer programming or database design. DPFUF ¶ 5.

In late 2002, the FLRA solicited bids for a contract to provide staffing for a FLRA computer help desk. JS ¶ 18. DKO submitted a bid in response to the solicitation. JS ¶ 19. Mr. Ourecky's bid did not include any information indicating that Mr. Lavezzo was his principal. DPFUF ¶ 6. Mr. Crawford, as FLRA contracting officer, awarded the help desk contract to DKO. JS ¶ 20. On

December 29, 2002, the FLRA entered into Contract Number 8095-02-035, also identified upon multiple documents as Contract Number 8095-03-035, with DKO Technologies (the "Help Desk Contract"). JS ¶ 21. The Help Desk Contract was signed upon behalf of the United States by Mr. Crawford, as contracting officer. JS ¶ 22. The Help Desk Contract and all subsequent modifications were signed upon behalf of DKO by Donald Ourecky. JS ¶ 23. The Help Desk Contract was a labor hours contract pursuant to FAR §16.602,[2] in which the FLRA provided all materials. DPFUF ¶ 7. The Help Desk Contract did not provide for a minimum number of hours. DPFUF ¶ 8. The Help Desk Contract provided for an initial term from January 1, 2003, to September 30, 2003, with options for up to three (3) additional one-year periods at escalating hourly rates. JS ¶ 24.

On or about February 24, 2003, the FLRA solicited bids for a contract to provide Oracle database programming services to the FLRA. JS ¶ 25. DKO was one of 28 companies to submit bids. JS ¶ 26. Once again, Mr. Ourecky's bid for the Oracle contract did not identify Mr. Lavezzo as his principal. DPFUF ¶ 9. Mr. Crawford, as FLRA contracting officer, awarded the Oracle contract to DKO. JS ¶ 27. On April 3, 2003, the FLRA entered into Contract Number 8095-03-001

[2] "A labor hours contract is a variation of the time-and-materials contract, differing only in that materials are not supplied by the contractor." FAR 16.602.

with DKO (the "Oracle Contract"). JS ¶ 28. The Oracle Contract was signed upon behalf of the United States by Mr. Crawford, as contracting officer. JS ¶ 29. The Oracle Contract and all subsequent modifications were signed upon behalf of DKO by Donald Ourecky. JS ¶ 30. Like the Help Desk Contract, the Oracle Contract was also a labor hours contract, with no guaranteed minimum number of hours. DPFUF ¶ 10. The Oracle Contract provided for an initial term from April 1, 2003, to October 30, 2003, with options for up to four (4) additional one-year periods at escalating hourly rates. JS ¶ 31.

There is no written document establishing that Mr. Ourecky signed the contract documents as Mr. Lavezzo's agent, or that Mr. Lavezzo had granted Mr. Ourecky a power of attorney. DPFUF ¶ 11. Prior to the award, and during the performance of the contracts, the FLRA never requested from DKO, and DKO never provided to the FLRA, any information specifically establishing that Mr. Ourecky was the agent of Mr. Lavezzo. JS ¶ 32. Prior to the award, and during the performance of the contracts, DKO never provided to the FLRA any information establishing that Mr. Lavezzo was the owner of DKO. JS ¶ 33. In response to a request from the FLRA for a taxpayer identification number for DKO Technologies, Mr. Ourecky provided Lavezzo's social security number without Mr. Lavezzo's name . JS ¶¶ 16, 34; DPFUF ¶ 12. At the time of award, and

during the performance of the contracts, Mr. Crawford was unaware that Mr. Lavezzo was the sole proprietor of DKO, and believed that Mr. Ourecky was the owner of DKO, or was a partner in the ownership of DKO. JS ¶¶ 35, 36. At the time of award, and during the performance of the contracts, Mr. Crawford believed that Mr. Ourecky was authorized to execute the contracts and modifications upon behalf of DKO. JS ¶ 37.

DKO retained subcontractors to perform the Help Desk Contract and the Oracle Contract. JS ¶ 38. DKO successfully performed the Help Desk and Oracle Contracts. JS ¶ 39. Although the FLRA never formally executed any option period, the Help Desk and Oracle Contracts were modified by the FLRA upon multiple occasions to extend the performance period with additional hours to be provided at the same hourly rates as the initial terms of each contract. JS ¶ 40. The Help Desk Contract was terminated by the FLRA on January 31, 2004. JS ¶ 41. On or about April 30, 2004, the FLRA notified DKO that the Oracle Contract would not be extended any further and directed DKO (including its subcontractors) to cease all work on the Oracle Contract. JS ¶ 42. The Oracle Contract was terminated by the FLRA on April 30, 2004. JS ¶43.

In response to concerns that Mr. Crawford would not act in a fair and equitable manner in response to claims submitted by contractors, FLRA Director of

the Administrative Services Division, Ms. Yvonne Thomas provided written orders, dated March 24, 2004, to Mr. Crawford requiring him to notify her in writing when he received a claim, and to take no further action until receiving further direction. DPFUF ¶ 13. On or about June 30, 2004, Ms. Thomas again informed Mr. Crawford in writing, this time via e-mail, that he should not take any action with regard to any Contract Disputes Act claims that potentially could be filed by DKO, or any other contractor, until he received guidance from her and FLRA Solicitor and Acting Executive Director David Smith. JS ¶ 44. On or about December 9, 2004, DKO submitted claims concerning the Help Desk and Oracle Contracts to Mr. Crawford as the contracting officer (the “claims”). JS ¶ 45. The claims were submitted by Donald Ourecky and, once again, do not reference the existence of Mr. Lavezzo. DPFUF ¶ 14.

The claims were received in the FLRA mailroom on December 13, 2004. JS ¶ 46. Ms. Thomas testified that she was not informed of the DKO claims until January 10, 2005. DPFUF ¶ 15. Mr. Smith also did not learn of the claims until several weeks after they were filed. DPFUF ¶ 16. On January 11, 2005, Ms. Thomas again informed Mr. Crawford that he should take no action with regard to the DKO claims until he received guidance from her and Mr. Smith. JS ¶ 47. Mr. Smith testified that the requirement that Mr. Crawford not take any

action with regard to the DKO claims was to allow the FLRA to determine the basis for the claim, and that the steps after notification would be determined at that point. DPFUF ¶ 17.

On or before January 13, 2005, Ms. Thomas and Mr. Smith decided to transfer the DKO Claims to the United States Department of the Treasury, Bureau of the Public Debt ("BPD") for a final decision. Mr. Crawford was not informed of this decision at that time. JS ¶ 48. The FLRA determined to reassign the DKO claim to the BPD based upon Mr. Crawford's failure to notify management of the DKO claim in a timely manner and because of problems with Mr. Crawford's resolution of other claims. DPFUF ¶ 18. On January 13, 2005, Ms. Thomas requested that the BPD modify the existing contracting agreement between the BPD and the FLRA to include a review and decision upon the claims, and she sent a package of documents from the FLRA contract files to BPD. JS ¶ 49.

Ms. Thomas' e-mail to the BPD was sent at 1:09 p.m., and the BPD confirmed the agreement at 1:15 p.m. DPFUF ¶ 19. That same afternoon (January 13, 2005) Mr. Crawford consulted with his former supervisor, Mr. Dan Funkhowser, at the Federal Mediation and Conciliation Service ("FMCS"). DPFUF ¶ 20. After meeting with Mr. Funkhowser, Mr. Crawford signed the purported COFD, before Ms. Prothro, a notary employed by the FMCS, and returned to the FLRA late in the

evening, after the FLRA mailroom had closed. DPFUF ¶ 21; JS ¶ 51.

Mr. Crawford was aware, at the time that he signed the purported COFD, that he had been instructed not take any action with the DKO claim, but he believed these instructions to be invalid. DPFUF ¶ 22.

In his purported COFD, Mr. Crawford found that the FLRA had wrongly suspended work upon an implied-in-fact contract, and that the FLRA had violated its duty of good faith and fair dealing. DPFUF ¶ 23. Mr. Crawford determined that DKO was entitled to general & administrative expenses, fee and overhead costs totaling 35 percent of the unperformed portion of the implied-in-fact contracts, totaling $81,728, plus CDA interest from receipt of the claims. DPFUF ¶ 24.

On January 13, 2005, after having the purported COFD notarized, Mr. Crawford sent an e-mail to Ms. Thomas. JS ¶ 52. In that e-mail, which was sent at 5:07 p.m., Mr. Crawford promised to "put his mind" to the claims, and did not indicate to Ms. Thomas that he had already prepared and notarized a purported COFD. DPFUF ¶ 25.

On January 14, 2005, Mr. Crawford was again informed by Ms. Thomas, via e-mail, that he should not take any action with regard to the DKO claims until he received guidance from her and Mr. Smith. JS ¶ 53. Later that same day,

Mr. Crawford mailed the purported COFD to DKO. JS ¶ 54. On January 14, 2005, Mr. Crawford sent an e-mail to Ms. Thomas, once again, Mr. Crawford did not inform Ms. Thomas of the COFD. JS ¶ 56; DPFUF ¶ 26. On January 14, 2005, Ms. Thomas sent a letter to DKO advising of the reassignment of the Claims to BPD. JS ¶ 57. DKO received Ms. Thomas' January 14, 2005, letter on January 17, 2005, and, on that same date, sent a letter (by regular mail as well as e-mail) to Ms. Thomas objecting to the reassignment. JS ¶ 58. On or about January 18, 2005, the claims were assigned to Linda Pryor, a contracting officer with BPD. JS ¶ 59.

Around this time, Mr. Ourecky learned that Mr. Crawford had mailed a final decision upon the claims to DKO. JS ¶ 55. By letter and e-mail dated January 23, 2005, DKO again objected to the reassignment of the Claims to the BPD. JS ¶ 60. By letter and e-mail dated January 28, 2005, DKO wrote to Mr. Crawford (with copy to Francine Eichler, FLRA Inspector General) inquiring why the FLRA had not offered to resolve the dispute by Alternative Dispute Resolution. JS ¶ 61. On January 31, 2005, Ms. Thomas sent a letter (misdated as 2004), by regular mail and e-mail, to DKO advising again of the purported reassignment of the Claims to BPD. JS ¶ 62. By e-mail dated January 31, 2005, DKO wrote to Ms. Thomas, again with a copy to the FLRA Inspector General, Ms. Eichler, to protest the reassignment of its claim to the BPD. JS ¶ 63. DKO received the Crawford

Decision on January 31, 2005. JS ¶ 64. Upon receipt of the Mr. Crawford's purported COFD, DKO did not contact the BPD to inquire why they were reviewing the claim when a COFD had already been issued. DPFUF ¶ 27.

Mr. Lavezzo testified that, on February 1, 2005, DKO submitted an invoice to the FLRA for amounts due pursuant to the Crawford COFD, and that the invoice was delivered by courier to the FLRA, that the courier returned to DKO a time-stamped copy of the invoice. JS ¶ 65. DKO's invoice was never entered into the FLRA Budget and Finance Division invoice log. JS ¶ 66.

On February 18, 2005, Ms. Pryor signed contracting officer final decisions addressing the claims (the "Pryor COFDs"). JS ¶ 67. As the contract files were transmitted to the BPD before Mr. Crawford executed the purported COFD, the BPD did not receive a copy of the Crawford COFD, and was unaware of the Crawford COFD when it issued its COFDs. DPFUF ¶ 28. Ms. Pryor denied the DKO claim pertaining to the Help Desk contract, as she was unable to determine against what contract DKO was asserting its claim. DPFUF ¶ 29. The DKO claim referenced contract 8095-03-001, which was not a valid contract number, and Ms. Pryor was unable to contact Mr. Ourecky to obtain additional information. DPFUF ¶ 30. Ms. Pryor denied the DKO claim pertaining to the Oracle contract as

it was a labor hours contract, and no direct labor hours were performed during the period for which DKO sought reimbursement. DPFUF ¶ 31.

The BPD contracting officer invited Mr. Ourecky to provide additional documentation in support of his claims, and indicated that she would be willing to reconsider her decisions if Mr. Ourecky provided additional information. DPFUF ¶ 32. DKO never communicated with or provided any information to BPD concerning the claims. JS ¶ 68. The United States has not paid DKO for any of the amounts purportedly due under the Crawford COFD. JS ¶ 69.

Mr. Ourecky subsequently filed suit in the United States Court of Federal Claims, claiming to be the sole proprietor of DKO Technologies. Compl. It was only after Mr. Ourecky filed suit that the FLRA became aware of the existence of the Crawford COFD. DPFUF ¶ 33. At a status conference before this Court on December 21, 2005, Mr. Ourecky disclosed that he was not the owner of DKO Technologies, as represented in the complaint in this action. In response to this Court's Order to Show Cause, Mr. Lavezzo filed a motion to substitute himself as the real party in interest.

## SUMMARY OF THE ARGUMENT

This Court is without jurisdiction to entertain Mr. Lavezzo's claim, as there is no privity of contract between Mr. Lavezzo and the United States. The FLRA

had attempted to contract with DKO Technologies – a sole proprietorship believed to be owned by Mr. Ourecky. Mr. Ourecky did not disclose, and the contracting officer, Mr. Gary Crawford, was unaware of, the existence of an undisclosed agency relationship between Mr. Ourecky and Mr. Lavezzo. Because general agency law principles do not apply to the United States – which cannot be sued by an undisclosed principal – there is no privity of contract, and Mr. Lavezzo's complaint should be dismissed for lack of subject matter jurisdiction.

Even assuming that privity of contract exists between Mr. Lavezzo and the United States, the United States is entitled to summary judgment because Mr. Lavezzo may not enforce the purported COFD by Gary Crawford, as that COFD was an ultra vires act issued in violation of direct written orders. Moreover, authority to resolve the DKO Technologies claim had already been reassigned to the BPD before Mr. Crawford issued his COFD. Finally, to the extent that the Crawford COFD may have been lawfully issued, it was constructively withdrawn by the FLRA with the issuance of a valid COFD by the BPD.

# ARGUMENT

## I. Standard Of Review

This Court must grant a motion to dismiss for lack of subject matter jurisdiction pursuant to RCFC 12(b)(1) when, in view of the record presented, "'it appears beyond doubt that the plaintiff can prove no set of facts in support of his [or her] claim which would entitle him [or her] to relief.'" McCauley v. United States, 38 Fed. Cl. 250, 262-63 (1997) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)), aff'd, 152 F.3d 948 (Fed. Cir.) (table). Moreover, although the non-jurisdictional factual allegations, as pled, must be presumed true and viewed in the light most favorable to the plaintiff, the burden of establishing the Court's jurisdiction falls squarely upon the plaintiff. See McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 189 (1936); Alder Terrace, Inc. v. United States, 161 F.3d 1372, 1377 (Fed. Cir. 1998); Trauma Serv. Group v. United States, 104 F.3d 1321, 1324 (Fed. Cir. 1997); Bowen v. United States, 49 Fed. Cl. 673, 675 (2001) (noting that the plaintiff bears the burden of proof upon a motion to dismiss for lack of jurisdiction), aff'd, 292 F.3d 1383 (Fed. Cir. 2002); Schweiger Constr. Co. v. United States, 49 Fed. Cl. 188, 205 (2001); McCauley, 38 Fed. Cl. at 262-63; Rice v. United States, 31 Fed. Cl. 156, 161 (1994), aff'd, 48 F.3d 1236 (Fed. Cir. 1995) (table).

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. RCFC 56; Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986); Golden Pacific Bancorp v. United States, 15 F.3d 1066, 1070 (Fed. Cir. 1994); Mingus Constructors, Inc. v. United States, 812 F.2d 1387, 1390 (Fed. Cir. 1987); Maki v. United States, 13 Cl. Ct. 779, 781 (1987), aff'd, 852 F.2d 1293 (Fed. Cir.) (table). Rule 56 should be liberally construed to preserve a defendant's right to demonstrate, before incurring the burden and expense of trial, that plaintiffs' claim is without merit. Celotex, 477 U.S. at 327. Summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322.

For the United States to prevail upon its motion for summary judgment, we must only demonstrate our entitlement to judgment as a matter of law, and identify those portions of the record that demonstrate the absence of a genuine issue of material fact. See Anderson, 477 U.S. at 248. Mr. Lavezzo must then present sufficient evidence to establish that there is a genuine dispute, which would enable him to prevail at trial. See Anderson, 477 U.S. at 247-48; Sweats Fashions, Inc. v. Pannill Knitting Co., Inc., 833 F.2d 1560, 1562-63 (Fed. Cir. 1987). As

demonstrated below, and assuming that the Court possesses jurisdiction, there is no genuine dispute between the parties regarding any material fact, and upon the undisputed facts of record, the United States is entitled to judgment as a matter of law.

## II. Mr. Lavezzo's Claim Must Be Dismissed As There Is No Privity Of Contract

As noted in the statement of facts, Phillip Lavezzo's ownership of DKO Technologies was not disclosed to the FLRA. Mr. Lavezzo did not sign the contracts or any modifications to the contracts. JS ¶ 23, 30. Mr. Lavezzo did not sign the claims. DPFUF ¶ 14. Moreover, Mr. Lavezzo's ownership of DKO Technologies was not disclosed in the complaint in this action. In fact, the complaint falsely represents that Donald K. Ourecky is the "sole proprietor" of DKO Technologies. Gary Crawford, the contracting officer, was unaware at all relevant times that Mr. Lavezzo was the true owner of DKO technologies. JS ¶ 35.

To the extent that Mr. Lavezzo may allege that Mr. Ourecky was his authorized agent, it is clear that Mr. Ourecky executed the contracts pursuant to an undisclosed agency relationship. See 75 A.L.R. 3d 1184 § 1[a]. The FLRA contracting officer, and in fact the rest of the FLRA, was unaware that Mr. Ourecky was acting as the agent of an undisclosed principal. The FAR requires that a contract with an individual doing business as a firm be signed by

that individual, followed by "an individual doing business as ___." FAR § 4.102(a). The FAR does provide for signature by an agent rather than by the sole proprietor; however, the FAR is very specific that the "agent's authorization to bind the principal must be established . . . ." FAR § 4.102(e). The Help Desk and Oracle contracts were signed by Donald K. Ourecky and were not signed by Phillip Lavezzo. Moreover, no evidence was submitted to the FLRA establishing that Mr. Ourecky was the agent of Mr. Lavezzo. In fact, Mr. Lavezzo admitted that he named his sole proprietorship DKO Technologies to allow Mr. Ourecky to be the public figure for all communication with the FLRA. DPFUF ¶ 2.

This Court is without jurisdiction to entertain Mr. Lavezzo's claim, as there is no privity of contract between Mr. Lavezzo and the United States. The United States cannot be bound to a contract with an undisclosed principal.[3] All contracts with the United States are covered by the Anti-Assignment Act, 41 U.S.C. § 15, which provides that any transfer, such as that from an agent entering into a contract

---

[3] As a general proposition of agency law, an agent may make a contract for the principal, and may contract as if he or she were the principal. Scope Enterprises, Ltd. v. United States, 18 Cl. Ct. 875, 879 (1989). The agent may even conceal the fact that he is an agent. See 3 Am. Jur. 2d Agency § 316. As a general proposition, the undisclosed principal may appear at any time and claim the benefits of the contract, executed by his agent, from the other party. Id. However, the presence of an anti-assignment clause in a contract may preclude enforcement by an undisclosed principal. See 75 A.L.R. 3d 1184.

upon their own behalf to an undisclosed principal, "shall cause the annulment of the contract or order transferred, so far as the United States is concerned." 41 U.S.C. §15(a). Moreover, a plaintiff must be in direct privity of contract with the United States to bring suit. Scope Enterprises, Ltd. v. United States, 18 Cl. Ct. 875, 879 (1989) (citing Erickson Air Crane Co. v. United States, 731 F.2d 810, 813 (Fed. Cir. 1984)).

In Scope this Court held that no express or implied contract can exist between an undisclosed principal and the United States, because there is no privity of contract. Scope, 18 Cl. Ct. at 880. The agency relationship in Scope was similar to the present case, in that the Government agents were not aware of the existence of the undisclosed principal plaintiff, and the agents did not indicate that they were acting for anyone other than themselves, until after the contract was purportedly formed. Scope, 18 Cl. Ct. at 880. As in Scope, this Court must dismiss Mr. Lavezzo's claim for lack of jurisdiction, as there is no privity of contract between Mr. Lavezzo and the United States.

## III. The Crawford COFD Is Ultra Vires And Is Not Binding Upon The United States

The document issued on January 14, 2005, by FLRA contracting officer Gary W. Crawford which purports to be a COFD is invalid as it was an ultra vires act. As set forth in more detail in the statement of facts, Mr. Crawford was notified

in writing upon at least three occasions before he signed the purported COFD that he was not to take any action upon any claim which may be submitted by DKO Technologies without first receiving internal guidance. Specifically, Mr. Crawford was informed by a memo from Ms. Thomas, dated March 24, 2004, and e-mails from Ms. Thomas on or about June 30, 2004, and January 11, 2005, that he should take no action upon a DKO Claim. DPFUF ¶ 13; JS ¶¶ 44, 47. Mr. Crawford testified that he was aware of these instructions when he issued the purported COFD. DPFUF ¶ 22. Although Mr. Crawford believed that he was not bound by these instructions, such is not the case.

Contracting officers possess a great deal of independence; however, they are subject to certain limitations and oversight by the employing agency. The Court of Claims has long recognized that a contracting officer may properly submit a proposed final decision for review and "approval." See Jacob Schlesinger, Inc. v. United States, 94 Ct. Cl. 289, 307 (1941). Moreover, many agencies require that contracting officers submit proposed final decisions to their superiors for review. John Cibinic, Jr. and Ralph C. Nash, Jr., Administration of Government Contracts, 3rd Ed. 1303 (1995).

The requirement that proposed final decisions be reviewed was addressed by the Interior Board of Contract Appeals in Appeal of Systems Technology

Associates, Inc., IBCA 1108-4-76, 81-1 BCA ¶ 14,934 (Fed. 19, 1981) aff'd, 699 F.2d 1383 (Fed. Cir. 1983). In language instructive to this case, the board stated:

> The fact that decisions involving substantial amounts of money are required to be reviewed by superiors or by a review committee does not make the decision that of the higher authority approving it. Such reviews are required to assure that contracting officers have complied with the policy and regulations of the agency.

Systems Technology, 81-1 BCA ¶ 14,934. Indeed, consistent with Systems Technology, FLRA Solicitor and Acting Executive Director David Smith testified that the requirement that Mr. Crawford not take any action with regard to the DKO claims was to allow the FLRA to determine the basis for the claim, and that the steps after notification would be determined at that point. DPFUF ¶ 17. However, the FLRA determined to reassign the DKO claim to the BPD based upon Mr. Crawford's failure to notify management of the DKO claim in a timely manner and because of problems with Mr. Crawford's resolution of other claims. DPFUF ¶ 18.

The FLRA was permitted to impose restrictions upon a contracting officer to ensure compliance with agency policy and regulations. The fact that Mr. Crawford issued the purported COFD in direct violation of written instructions, makes his actions ultra vires and do not bind the United States. In fact, Mr. Crawford's action are all the more egregious when it is considered that he admits he was aware

of these instructions when he issued the purported COFD. DPFUF ¶ 22. Moreover, Mr. Crawford was less than forthcoming in his dealings with the FLRA. Despite numerous opportunities, Mr. Crawford never disclosed that he had issued a COFD in response to the DKO claims to his superiors. In fact, Ms. Thomas and Mr. Smith were unaware of the existence of Crawford's COFD until this litigation was instituted. DPFUF ¶ 32. Mr. Crawford's COFD was not contained in the agency contract file.

## IV. The DKO Technologies Claim Was Reassigned To The BPD Before Mr. Crawford Issued The Purported COFD

Even if Mr. Crawford's decision to ignore the direct written instructions of his superior, Ms. Thomas, that he take no action upon the DKO Technologies claim without first seeking internal guidance was not ultra vires, the purported COFD was still without authority, as the purported COFD was issued after the claims had been re-assigned to the Bureau of Public Debt. Thus, Mr. Crawford was without authority to resolve the DKO Technologies claim at the time that he issued his purported COFD.

As noted in more detail in the statement of facts, Ms. Thomas and Mr. Smith decided to transfer the DKO Claims to a contracting officer at the BPD for a final decision on or before January 13, 2005. Ms. Thomas requested that the BPD modify the contracting agreement between the BPD and the FLRA to include a

review and decision upon the claims, by e-mail sent on January 13, 2005, at 1:09 p.m. The BPD confirmed the agreement to administer Mr. Ourecky's claims that same day at 1:15 p.m. DPFUF ¶ 19. That same day, Ms. Thomas also sent a package of documents from the FLRA contract files to the BPD. JS ¶ 49. Significantly, Ms. Thomas' e-mail confirming the reassignment of the DKO Technologies claim was sent before Mr. Crawford signed and mailed the purported COFD. Mr. Crawford signed the purported COFD before a notary at the FMCS on January 13, 2005, following an afternoon meeting with Mr. Dan Funkhowser, his former supervisor. DPFUF ¶ 20; JS ¶ 51. After signing the purported COFD, Mr. Crawford returned to the FLRA and sent an e-mail to Ms. Thomas. That e-mail was sent at 5:07 p.m. – nearly four hours after the claim had been reassigned to the BPD. DPFUF ¶ 19, 25.

It well settled that an agency may reassign the adjudication of a claim to another contracting officer, absent specific contractual language to the contrary. See New York Shipbuilding Corp. v. United States, 180 Ct. Cl. 446, 457 (1967); John Cibinic, Jr. and Ralph C. Nash, Jr., Administration of Government Contracts, 3rd Ed. 1299 (1995). Here, the FLRA properly determined to transfer responsibility for resolving the DKO Technologies claim to another contracting

officer due to concerns regarding Mr. Crawford's independence and lack of cooperation. DPFUF ¶¶ 13, 18.

V. The Crawford COFD Was Constructively Rescinded

Mr. Crawford's purported COFD was signed on January 13, 2005, and mailed on January 14, 2005. To the extent that the Crawford COFD could be valid, despite the fact that it was issued in direct contravention of his superior's orders, and was issued after the claim was reassigned to the BPD, the claim was constructively rescinded by the FLRA by the issuance of the COFDs by the BPD. A contracting officer may withdraw or rescind a final decision before the expiration of the appeals period. See General Dynamics Corp., ASBCA No. 39866, 91-2 BCA ¶ 24,017 (May 10, 1991); Daniels & Shanklin Constr. Co., ASBCA No. 37102, 89-3 BCA ¶ 22,060 (May 23, 1989). The BPD contracting officer, and the FLRA, were unaware of Crawford's COFD. DPFUF ¶¶ 32, 33. In this situation, the BPD's issuance of its COFDs, constituted a constructive rescission of the Crawford COFD. As the board recognized in Daniels & Shanklin, the contracting officer has the right and an obligation to correct an erroneous COFD. Daniels & Shanklin Constr. Co., 89-3 BCA ¶ 22,060. In this case, the Crawford COFD is clearly an erroneous decision as it awards overhead and lost profits upon a labor hours contract with no guaranteed minimum number of hours.

Even assuming that the option periods of the contracts were exercised, there is no entitlement to lost profits or overhead costs, as there was no guaranteed minimum number of hours.

Thus, as the BPD COFDs correctly noted, Mr. Lavezzo is not entitled to any relief. As the BPD COFDs were issued within the period set out in the CDA for contesting the decision, no finality could have attached to the Crawford decision, and it was constructively rescinded by the BPD. This constructive rescission is appropriate as Mr. Crawford, and Mr. Lavezzo were less than forthcoming regarding the issuance, and existence of the Crawford decision. This deprived the FLRA of the opportunity to provide guidance to Mr. Crawford so that he would be able to issue a COFD in compliance with applicable laws and regulations.

## CONCLUSION

For the forgoing reasons, the Court should dismiss the complaint for lack of subject matter jurisdiction, or in the alternative, enter summary judgment in favor of the United States and dismiss the complaint.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/ Franklin E. White, Jr.
FRANKLIN E. WHITE, JR.
Assistant Director

s/ David D'Alessandris
DAVID D'ALESSANDRIS
Trial Attorney
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tele: (202) 307-1011
Fax: (202) 514-8624

July 7, 2006

Attorneys for Defendant

CERTIFICATE OF SERVICE

I hereby certify that on July 7, 2006, a copy of the forgoing "DEFENDANT'S MOTION TO DISMISS OR IN THE ALTERNATIVE FOR SUMMARY JUDGMENT" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ David D'Alessandris