IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 05-575 C
(Judge Wheeler)

PHILLIP J. LAVEZZO
d/b/a/ DKO TECHNOLOGIES,
Plaintiff,

v.

UNITED STATES,
Defendant.

# DEFENDANT'S APPENDIX IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS OR IN THE ALTERNATIVE FOR SUMMARY JUDGMENT

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

FRANKLIN E. WHITE JR.
Deputy Director

DAVID D'ALESSANDRIS
Trial Attorney
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tele: (202) 307-1011
Fax: (202) 514-8624

July 7, 2006

Attorneys for Defendant

# INDEX TO APPENDIX


Exhibit 1 Contract 8095-02-035, including proposal submitted by Donald K. Ourecky . . . . . 1

Exhibit 2 Memorandum from Yvonne Thomas to Gary Crawford, dated March 24, 2004 . . . . . 21

Exhibit 3 E-mail from Yvonne Thomas to David Smith concerning reassignment of claims to the BPD, dated January 13, 2005 . . . . . . 22

Exhibit 4 E-mail from Claudine Woodyard to Yvonne Thomas, concerning reassignment of claims to the BPD, dated January 13, 2005 . . . . . . 23

Exhibit 5 Transcript of deposition of Gary W. Crawford, May 15, 2006, selected pages . . . . . 24

Exhibit 6 Transcript of deposition of Phillip J. Lavezzo, May 17, 2006, selected pages . . . . . 31

Exhibit 7 Transcript of deposition of Donald K. Ourecky, May 17, 2006, selected pages . . . . . 43

Exhibit 8 Transcript of deposition of David M. Smith, May 24, 2006, selected pages . . . . . 48

Exhibit 9 Transcript of deposition of Yvonne Thomas, May 24, 2006, selected pages . . . . . 56

# AMENDMENT OF SOLICITATION/MODIFICATION OF CONTRACT

| | | | |
|---|---|---|---|
| 1. CONTRACT ID CODE | | PAGE 1 | OF PAGES 1 |
| 2. AMENDMENT/MODIFICAITON NO. 005 | 3. EFFECTIVE DATE 01/02/2004 | 4. REQUISITION/PURCHASE REQ. NO. | 5. PROJECT NO. (If applicble) |
| 6. ISSUED BY CODE<br>FLRA - Contracting Officer<br>1400 K Street NW<br>Washington, DC 20005 | | 7. ADMINISTERED BY (If other than Item 6) CODE | |

| | | |
|---|---|---|
| 8. NAME AND ADDRESS OF CONTRACTOR (No., street, county, State and ZIP Code)<br>DKO Technologies<br>601 Madsion Street<br>Suite 200<br>Alexandria VA 22314 | (X) | 9A. AMENDMENT OF SOLICIATION NO. |
| | | 9B. DATED (SEE ITEM 11) |
| | | 10A. MODIFICATION OF CONTRACT/ORDER NO. 8095-02-035 |
| CODE / FACILITY CODE | | 10B. DATED (SEE ITEM 11) 12/29/02 |

## 11. THIS ITEM ONLY APPLIES TO AMENDMENTS OF SOLICITATIONS

☐ The above numbered solicitation is amended as set forth in Item 14. The hour and date specified for receipt of Offers ☐ is extended, ☐ is not extended.

Offers must acknowledge receipt of this amendment prior to the hour and date specified in the solicitation or as amended, by one of the following methods:

(a)By completing items 8 and 15, and returning ________ copies of the amendment; (b) By acknowledging receipt of this amendment on each copy of the offer submitted; or (c) By separate letter or telegram which includes a reference to the solicitation and amendment numbers. FAILURE OF YOUR ACKNOWLEDGMENT TO BE RECEIVED AT THE PLACE DESIGNATED FOR THE RECEIPT OF OFFERS PRIOR TO THE HOUR AND DATE SPECIFIED MAY RESULT IN REJECTION OF YOUR OFFER. If by virtue of this amendment your desire to change an offer already submitted, such change may be made by telegram or letter, provided each telegram or letter makes reference to the solicitation and this amendment, and is received prior to the opening hour and date specified.

12. ACCOUNTING AND APPROPIRATION DATA (If required)

54-4-0100-9000-255A

## 13. THIS ITEM ONLY APPLIES TO MODIFICATION OF CONTRACTS/ORDERS. IT MODIFIES THE CONTRACT/ORDER NO. AS DESCRIBED IN ITEM 14.

| CHECK ONE | |
|---|---|
| | A. THIS CHANGE ORDER IS ISSUED PURSUANT TO: (Specify authority) THE CHANGES SET FORTH IN ITEM 14 ARE MADE IN THE CONTRACT ORDER NO. IN ITEM 10A. |
| | B. THE ABOVE NUMBERED CONTRACT/ORDER IS MODIFIED TO REFLECT THE ADMINISTRATIVE CHANGES (such as changes in paying office, appropriation date, etc.) SET FORTH IN ITEM 14, PURSUANT TO THE AUTHORITY OF FAR 43.103(b). |
| | C. THIS SUPPLEMENTAL AGREEMENT IS ENTERED INTO PURSUANT TO AUTHORITY OF: |
| x | D. OTHER (Specify type of modification and authority)<br>Mutual agreement of the parties. |

E. IMPORTANT: Contractor ☒ is not, ☐ is required to sign this document and return ________ copies to the issuing office.

14. DESCRIPTION OF AMENDMENT/MODIFICATION (Organized by UCF section headings, including solicitation/contract subject matter where feasible.)

Payment terms modified: 1.25% 20 days.
Net 30 days.

EFT #056001118 #07153465 SSN 228 13 6082

Except as provided herein, all terms and conditions of the document referenced in Item 9A or 10A, as heretofore changed, remains unchanged and in full force and effect.

| | | |
|---|---|---|
| 15A. NAME AND TITLE OF SIGNER (Type or print) | | 16A. NAME AND TITLE OF CONTRACTING OFFICER (Type or print)<br>Gary W. Crawford |
| 15B. CONTRACTOR/OFFEROR<br>(Signature of person authorized to sign) | 15C. DATE SIGNED | 16B. UNITED STATES OF AMERICA<br>[signature]<br>(Signature of Contracting Officer) — 16C. DATE SIGNED 02/01/04 |

NSN 7540-01-152-8070
Previous edition unusable

STANDARD FORM 30 (REV. 10-83)
Prescribed by GSA FAR (48 CFR) 53.243

# AMENDMENT OF SOLICITATION/MODIFICATION OF CONTRACT

| 1. CONTRACT ID CODE | PAGE 1 | OF PAGES 1 |
|---|---|---|

| 2. AMENDMENT/MODIFICAITON NO. | 3. EFFECTIVE DATE | 4. REQUISITION/PURCHASE REQ. NO. | 5. PROJECT NO. (If applicble) |
|---|---|---|---|
| 005 | 12/01/03 | 8095-03-035 | Help Desk |

6. ISSUED BY CODE

FLRA Contracting Officer
1400 K Street NW Suite 217
Washington, DC 20005

7. ADMINISTERED BY (If other than Item 6) CODE

IRMD
1400 K Street NW
Wasington DC 20005

8. NAME AND ADDRESS OF CONTRACTOR (No., street, county, State and ZIP Code)

DKO Tech 601 Madison St, Suite 200 Alex VA 22314

CODE | FACILITY CODE

(X) 9A. AMENDMENT OF SOLICIATION NO.

9B. DATED (SEE ITEM 11)

10A. MODIFICATION OF CONTRACT/ORDER NO.
8095-03-035

10B. DATED (SEE ITEM 11)
12/29/02

## 11. THIS ITEM ONLY APPLIES TO AMENDMENTS OF SOLICITATIONS

☐ The above numbered solicitation is amended as set forth in Item 14. The hour and date specified for receipt of Offers ☐ is extended, ☐ is not extended.

Offers must acknowledge receipt of this amendment prior to the hour and date specified in the solicitation or as amended, by one of the following methods:

(a)By completing items 8 and 15, and returning ________ copies of the amendment; (b) By acknowledging receipt of this amendment on each copy of the offer submitted; or (c) By separate letter or telegram which includes a reference to the solicitation and amendment numbers. FAILURE OF YOUR ACKNOWLEDGMENT TO BE RECEIVED AT THE PLACE DESIGNATED FOR THE RECEIPT OF OFFERS PRIOR TO THE HOUR AND DATE SPECIFIED MAY RESULT IN REJECTION OF YOUR OFFER. If by virtue of this amendment your desire to change an offer already submitted, such change may be made by telegram or letter, provided each telegram or letter makes reference to the solicitation and this amendment, and is received prior to the opening hour and date specified.

12. ACCOUNTING AND APPROPIRATION DATA (If required)
54-4-0100-9000-255A

## 13. THIS ITEM ONLY APPLIES TO MODIFICATION OF CONTRACTS/ORDERS. IT MODIFIES THE CONTRACT/ORDER NO. AS DESCRIBED IN ITEM 14.

| CHECK ONE | |
|---|---|
| | A. THIS CHANGE ORDER IS ISSUED PURSUANT TO: (Specify authority) THE CHANGES SET FORTH IN ITEM 14 ARE MADE IN THE CONTRACT ORDER NO. IN ITEM 10A.<br>FAR 52-243-01 |
| | B. THE ABOVE NUMBERED CONTRACT/ORDER IS MODIFIED TO REFLECT THE ADMINISTRATIVE CHANGES (such as changes in paying office, appropriation date, etc.) SET FORTH IN ITEM 14, PURSUANT TO THE AUTHORITY OF FAR 43.103(b). |
| | C. THIS SUPPLEMENTAL AGREEMENT IS ENTERED INTO PURSUANT TO AUTHORITY OF: |
| | D. OTHER (Specify type of modification and authority) |

E. IMPORTANT: Contractor [X] is not, ☐ is required to sign this document and return ______ copies to the issuing office.

14. DESCRIPTION OF AMENDMENT/MODIFICATION (Organized by UCF section headings, including solicitation/contract subject matter where feasible.)

The period of performance for work under this contract is extended to 12/31/2003.

Total consideration under this extension shall not exceed $9,944.00

Except as provided herein, all terms and conditions of the document referenced in Item 9A or 10A, as heretofore changed, remains unchanged and in full force and effect.

| 15A. NAME AND TITLE OF SIGNER (Type or print) | | 16A. NAME AND TITLE OF CONTRACTING OFFICER (Type or print)<br>Gary W. Crawford | |
|---|---|---|---|
| 15B. CONTRACTOR/OFFEROR<br>(Signature of person authorized to sign) | 15C. DATE SIGNED | 16B. UNITED STATES OF AMERICA<br>[signature]<br>(Signature of Contracting Officer) | 16C. DATE SIGNED<br>12/01/03 |

NSN 7540-01-152-8070
Previous edition unusable

STANDARD FORM 30 (REV. 10-83)
Prescribed by GSA FAR (48 CFR) 53.243



GOV-01671

# AMENDMENT OF SOLICITATION/MODIFICATION OF CONTRACT

1. CONTRACT ID CODE

PAGE 1 OF PAGES 1

| 2. AMENDMENT/MODIFICAITON NO. | 3. EFFECTIVE DATE | 4. REQUISITION/PURCHASE REQ. NO. | 5. PROJECT NO. (If applicble) |
|---|---|---|---|
| 004 | 11/28/03 | 8095-03-035 | Help Desk |

| 6. ISSUED BY CODE | 7. ADMINISTERED BY (If other than Item 6) CODE |
|---|---|
| Federal Labor Relations Authority<br>1400 K Street NW - Suite 217<br>Washington, DC 20005 | FLRA-IRMD<br>1400 K Street, NW<br>Washington, DC 20005 |

8. NAME AND ADDRESS OF CONTRACTOR (No., street, county, State and ZIP Code)

DKO Technologies, Attention: Dr. Donald Ourecky

601 Madison Street, Suite 200, Alexandria, VA 22314

CODE FACILITY CODE

(X) 9A. AMENDMENT OF SOLICIATION NO.

9B. DATED (SEE ITEM 11)

10A. MODIFICATION OF CONTRACT/ORDER NO.
8095-03-035

10B. DATED (SEE ITEM 11)
12/29/02

## 11. THIS ITEM ONLY APPLIES TO AMENDMENTS OF SOLICITATIONS

☐ The above numbered solicitation is amended as set forth in Item 14. The hour and date specified for receipt of Offers ☐ is extended, ☐ is not extended.

Offers must acknowledge receipt of this amendment prior to the hour and date specified in the solicitation or as amended, by one of the following methods:

(a)By completing items 8 and 15, and returning ______ copies of the amendment; (b) By acknowledging receipt of this amendment on each copy of the offer submitted; or (c) By separate letter or telegram which includes a reference to the solicitation and amendment numbers. FAILURE OF YOUR ACKNOWLEDGMENT TO BE RECEIVED AT THE PLACE DESIGNATED FOR THE RECEIPT OF OFFERS PRIOR TO THE HOUR AND DATE SPECIFIED MAY RESULT IN REJECTION OF YOUR OFFER. If by virtue of this amendment your desire to change an offer already submitted, such change may be made by telegram or letter, provided each telegram or letter makes reference to the solicitation and this amendment, and is received prior to the opening hour and date specified.

12. ACCOUNTING AND APPROPIRATION DATA (If required)

54401009000255A

## 13. THIS ITEM ONLY APPLIES TO MODIFICATION OF CONTRACTS/ORDERS. IT MODIFIES THE CONTRACT/ORDER NO. AS DESCRIBED IN ITEM 14.

| CHECK ONE | |
|---|---|
| | A. THIS CHANGE ORDER IS ISSUED PURSUANT TO: (Specify authority) THE CHANGES SET FORTH IN ITEM 14 ARE MADE IN THE CONTRACT ORDER NO. IN ITEM 10A. |
| X | B. THE ABOVE NUMBERED CONTRACT/ORDER IS MODIFIED TO REFLECT THE ADMINISTRATIVE CHANGES (such as changes in paying office, appropriation date, etc.) SET FORTH IN ITEM 14, PURSUANT TO THE AUTHORITY OF FAR 43.103(b). |
| | C. THIS SUPPLEMENTAL AGREEMENT IS ENTERED INTO PURSUANT TO AUTHORITY OF: |
| | D. OTHER (Specify type of modification and authority) |

E. IMPORTANT: Contractor ☒ is not, ☐ is required to sign this document and return ______ copies to the issuing office.

14. DESCRIPTION OF AMENDMENT/MODIFICATION (Organized by UCF section headings, including solicitation/contract subject matter where feasible.)

Eunice Kuykendall, CIO, and Acting Director of IRMD, (ekuykendall@flra.gov) is hereby designated Contractor Officer's Technical Representative for this contract. Telephone 202-218-7980.

Except as provided herein, all terms and conditions of the document referenced in Item 9A or 10A, as heretofore changed, remains unchanged and in full force and effect.

| 15A. NAME AND TITLE OF SIGNER (Type or print) | | 16A. NAME AND TITLE OF CONTRACTING OFFICER (Type or print) | |
|---|---|---|---|
| | | Gary W. Crawford | |
| 15B. CONTRACTOR/OFFEROR | 15C. DATE SIGNED | 16B. UNITED STATES OF AMERICA | 16C. DATE SIGNED |
| (Signature of person authorized to sign) | | (Signature of Contracting Officer) | 11/28/03 |

NSN 7540-01-152-8070
Previous edition unusable

STANDARD FORM 30 (REV. 10-83)
Prescribed by GSA FAR (48 CFR) 53.243



GOV-01672

## CERTIFICATE OF APPOINTMENT

Eunice Kuykendall
Contracting Officer's Technical Representative

In accordance with the authority set forth in Federal Acquisition Regulation Part 2.101, you are hereby designated the contracting officer's technical representative for FLRA Contract 8095-03-035, DKO Technologies, 601 Madison Street, Alexandria, VA 22314, as modified. The principal responsibilities as the contracting officer's technical representative include:

- ❑ Inspecting, accepting, and rejecting work performed by the contractor; certifying invoices submitted by contractor and verifying the accuracy of hours worked. It is important to inform the contracting officer in writing whenever work performed fails to comply with performance standards of the contract. Do not advise the contractor how to resolve performance deficiencies or supervise ongoing tasks.
- ❑ Representing the agency in technical phases of the work by explaining or clarifying performance standards, expected progress, and final objectives.
- ❑ Interpreting administrative or technical directives having a bearing on the contractor's performance, and monitoring the contractor's Quality Control Plan.

As contracting officer's technical representative you are not authorized to execute any contract award, modification, or notice of intent; interpret contract terms; obligate the payment of money by the agency; terminate, for any cause, the contractor's right to proceed; or direct the contractor to proceed while seeking additional funding for expired obligations.

Gary W. Crawford
Contracting Officer

# AMENDMENT OF SOLICITATION/MODIFICATION OF CONTRACT

1. CONTRACT ID CODE | PAGE 1 OF PAGES 1

| 2. AMENDMENT/MODIFICAITON NO. | 3. EFFECTIVE DATE | 4. REQUISITION/PURCHASE REQ. NO. | 5. PROJECT NO. (If applicble) |
|---|---|---|---|
| 003 | 10/01/03 | 8095-04-016 | |

6. ISSUED BY CODE

**Federal Labor Relations Authority**
**1400 K Street NW**
**Washington, DC 20005**

7. ADMINISTERED BY (If other than Item 6) CODE

8. NAME AND ADDRESS OF CONTRACTOR (No., street, county, State and ZIP Code)

**DKO Technologies**
**601 Madison Street**
**Suite 200**
**Alexandria VA 22314**

CODE | FACILITY CODE

(X) 9A. AMENDMENT OF SOLICIATION NO.

9B. DATED (SEE ITEM 11)

10A. MODIFICATION OF CONTRACT/ORDER NO.
8095-03-035

10B. DATED (SEE ITEM 11)
12/29/02

## 11. THIS ITEM ONLY APPLIES TO AMENDMENTS OF SOLICITATIONS

☐ The above numbered solicitation is amended as set forth in Item 14. The hour and date specified for receipt of Offers ☐ is extended, ☐ is not extended.

Offers must acknowledge receipt of this amendment prior to the hour and date specified in the solicitation or as amended, by one of the following methods:

(a)By completing items 8 and 15, and returning ______ copies of the amendment; (b) By acknowledging receipt of this amendment on each copy of the offer submitted; or (c) By separate letter or telegram which includes a reference to the solicitation and amendment numbers. FAILURE OF YOUR ACKNOWLEDGMENT TO BE RECEIVED AT THE PLACE DESIGNATED FOR THE RECEIPT OF OFFERS PRIOR TO THE HOUR AND DATE SPECIFIED MAY RESULT IN REJECTION OF YOUR OFFER. If by virtue of this amendment your desire to change an offer already submitted, such change may be made by telegram or letter, provided each telegram or letter makes reference to the solicitation and this amendment, and is received prior to the opening hour and date specified.

12. ACCOUNTING AND APPROPIRATION DATA (If required)
544010090002 55A

## 13. THIS ITEM ONLY APPLIES TO MODIFICATION OF CONTRACTS/ORDERS. IT MODIFIES THE CONTRACT/ORDER NO. AS DESCRIBED IN ITEM 14.

| CHECK ONE | |
|---|---|
| | A. THIS CHANGE ORDER IS ISSUED PURSUANT TO: (Specify authority) THE CHANGES SET FORTH IN ITEM 14 ARE MADE IN THE CONTRACT ORDER NO. IN ITEM 10A. |
| | B. THE ABOVE NUMBERED CONTRACT/ORDER IS MODIFIED TO REFLECT THE ADMINISTRATIVE CHANGES (such as changes in paying office, appropriation date, etc.) SET FORTH IN ITEM 14, PURSUANT TO THE AUTHORITY OF FAR 43.103(b). |
| | C. THIS SUPPLEMENTAL AGREEMENT IS ENTERED INTO PURSUANT TO AUTHORITY OF: |
| | D. OTHER (Specify type of modification and authority) **FAR 52.243-01** |

E. IMPORTANT: Contractor ☒ is not, ☐ is required to sign this document and return ______ copies to the issuing office.

14. DESCRIPTION OF AMENDMENT/MODIFICATION (Organized by UCF section headings, including solicitation/contract subject matter where feasible.)

**Term of the contract is extended until 11/30/2003**

**330 hours x $56.50 = $18,645.00**

Except as provided herein, all terms and conditions of the document referenced in Item 9A or 10A, as heretofore changed, remains unchanged and in full force and effect.

| 15A. NAME AND TITLE OF SIGNER (Type or print) | | 16A. NAME AND TITLE OF CONTRACTING OFFICER (Type or print) | |
|---|---|---|---|
| | | Gary W. Crawford | |
| 15B. CONTRACTOR/OFFEROR | 15C. DATE SIGNED | 16B. UNITED STATES OF AMERICA | 16C. DATE SIGNED |
| (Signature of person authorized to sign) | | [signature] (Signature of Contracting Officer) | 9/30/03 |

NSN 7540-01-152-8070
Previous edition unusable

STANDARD FORM 30 (REV. 10-83)
Prescribed by GSA FAR (48 CFR) 53.243

**FEDERAL LABOR RELATIONS AUTHORITY**
**INFORMATION RESOURCES MANAGEMENT DIVISION**

**STATEMENT OF WORK**

To provide the following:

Information Technology

LAN Specialist Support
Senior LAN Specialist Support (See Option Years)

**1. OBJECTIVE**

The Federal Labor Relations Authority (FLRA) has a requirement for Local Area Network (LAN) Specialist and Help Desk support services. Such services involve operational and administrative support of the Wide Area Network (WAN), LAN, and client computers with their related peripherals. The work will generally be conducted at 607 14th Street, N.W., Washington, DC 20424-0001, until about March 1, 2003; thereafter at 1400 K Street, N.W., Washington, DC 20005-2403.

**2. DESCRIPTION OF SERVICE**

The contracted LAN Specialist operates in a team environment as a member of the Information Resources Management Division (IRMD) Operations Team staff. The technician handles assigned intermediate-level LAN and WAN problems, and monitors the server backup process to ensure that tapes or other media are created successfully and stored off-site, and that intermediate-level problem conditions are resolved. While intermediate-level problems and backup problems vary in nature, (e.g., troubleshooting, hardware/software testing, configuration management), thorough research and troubleshooting of all aspects of the LAN and WAN is required and advice is provided as to problem resolution, proper configuration of software, and related policies and procedures and interfaces with customers.

The LAN Specialist is also responsible for answering incoming inquiries by telephone, resolving customer WAN/LAN and client computing problems, adding and removing employees from the existing body of authorized users of the FLRA network, documentation of some standardized processes on the Intranet, modifying and creating macros, modifying and creating automated downloads, modifying and creating disk images for client computers, participation in technical discussions and presentations, and performing other duties related to the support of the FLRA computing infrastructure.

Call Center duties require monitoring network traffic and server event logs, handling requests for services from walk-in and incoming telephone calls. Appropriate responses (Tier 1 - over phone, Tier 2 - on-site, and Tier 3 - solution research/development) are provided using FLRA-furnished resources.

Responses to customer reported problems include the logging of all reported problems, troubleshooting and diagnosing a solution, and problem resolution over the phone according to industry best practices, established Service Level Agreements (SLA), and FLRA Information Resources Management Division (IRMD) policy and procedures. The contracted technician coordinates with Operations staff to respond to all requests for information or assistance that arrive by telephone, facsimile, walk-in, letter or electronic mail. The contracted technician assists with sign-on problems, providing basic support in maintaining and using all software in use within the agency, network anomalies, hardware malfunctions, repair, replacement and relocation.

The contracted technician is required to perform duties using Windows 9x/NT/2000 operating system software and Microsoft Exchange electronic mail software and Windows 2000 Active Directory. The LAN Specialist is also required to be knowledgeable in the agency's backup and retrieval software (currently ArcServe 2000). During the period of performance, the contracted technician may be required travel to regional offices to perform duties.

The contractor shall perform work on government premises during the agency normal workweek without using overtime except when it is necessary to meet urgent program needs (FAR 22.103). No work shall be required and no consideration provided on official Federal Government holidays unless directed by the contracting officer's technical representative to meet delivery of essential services or resolve delays beyond the control and without the fault or negligence of the contractor (FAR 22.103-4). The contractor shall remain reasonably available and on the premises to assist agency personnel during the normal workweek.

Senior LAN Specialist

If a Senior LAN Specialist is provided under this contract, the following additional duties will be performed: Technical advice and staff work related to complex LAN and WAN configuration, troubleshooting and hardware/software testing. The Senior LAN Specialist provides expert advice and guidance in

**I. Management Consulting and Training**

DKO, Inc. provides workshops and training services to develop workplace team building. Our workshops facilitate communication, decision-making, and team collaboration. The focus of our inter-active training applied communication and conflict management. These skills are especially useful in a high-tech service oriented environment.

**II. Database and Web Development Services**

DKO, Inc. develops custom desktop, client-server, and Web-based systems using Microsoft Access, Visual Basic, SQL Server, ASP, XML, and Java. Our management training and IT systems services improve work-place communication, business systems efficiencies, and customer service. Our communication skills and emphasis on team collaboration enhances system design, system development, installation, technical documentation, customer/users follow-up, and systems maintenance.

DKO, Inc. shall provide the FLRA a full-time, **Senior LAN Specialist / Help Desk Support** professional with unique experience with the Windows 9x/NT/2000 operating system software, Microsoft Exchange electronic mail software, Windows 2000 Active Directory, and ArcServe 2000 backup software. Services shall include operational and administrative support of the Wide Area Network (WAN), LAN, and client computers with their related peripherals.

The proposed specialist has demonstrated experience working in a team environment as a member of the Information Resources Management Division (IRMD) Operations Team staff. The specialist offers the agency a continuity of extensive experience solving complex LAN and WAN operational problems and monitoring server backup processes. The proposed specialist has also provided technical advice and staff support to resolve complex LAN and WAN configuration, troubleshooting and hardware/software testing.

DKO, Inc. shall provide one (1) LAN Specialist to work full-time at the customer's designated work site with infrequent deployment to FLRA regional locations as needed. If the LAN Specialist is absent from work more than five successive business days, DKO, Inc. shall provide a qualified temporary replacement.

It is understood and agreed that FLRA shall provide on-the-job training sufficient to provide technicians with a familiarity with hardware, software and procedures in use at FLRA. DKO, Inc. shall provide off-site training, as necessary, to provide basic technology skills required to perform the described duties. These essential technology skills include Windows NT 4 and Windows 2000 server administration, and basic administration of a Microsoft Exchange 5.5 electronic mail system and ArcServe 2000 software.

This statement of work shall result in a labor-hour contract (FAR 16.602). The contracted specialist will be required to document the actual hours worked and submit monthly invoices for certification by the contracting officer's technical representative. Payment shall be made in accordance with FAR 13.301 and FAR 32.1102 as required by the Prompt Payment Act.

server backup storage and retrieval software (currently ArcServe 2000).

**3. DELIVERABLES**

Contractor will provide deliverables on a daily and monthly basis:

- Daily report of unresolved tickets in tracking system. This report is provided to the Operations Team leader.
- Monthly LAN Specialist and Help Desk Support Services Activity Report, which provides a written description of daily activities. This report is provided to the Operations Team leader, COTR and Chief Information Officer.

**4. PERFORMANCE MEASURES**

LAN Specialist:

1. Intermediate-level LAN and WAN problems are researched thoroughly and problems are resolved as expeditiously as possible and to the customer's satisfaction. Maintaining a customer's unique settings on a personal computer and preventing data loss are always a paramount consideration.
2. Server backup process monitoring is completed daily, media is valid, properly labeled and properly stored off-site. Intermediate-level problems are researched thoroughly and problems are resolved as expeditiously as possible and to the COTR's satisfaction.
3. All aspects of problem logging, testing, troubleshooting, configuration management, policy and procedure issues and enforcement are thorough, consistent with laws, regulations, and existing office policies and handled to the customer's and COTR's satisfaction.
4. Ongoing responsibilities, such as adding new users, documenting on the Intranet of some standardized processes, modifying and creating automated downloads and disk images, and handling other support-related duties, are performed in a timely and professional manner and to the COTR's satisfaction.
5. The LAN and WAN experiences excellent availability because of the careful and thorough monitoring of network traffic, server event

logs and other regularly assigned preventive maintenance activities.

Senior LAN Specialist:

In addition to the performance measures above, complex LAN and WAN configuration, troubleshooting, hardware/software testing, and expert advice and guidance related to server backup storage and retrieval software consider all available options and are tailored to the specific needs and requirements of the FLRA network environment and FLRA management. These assignments are performed in a timely and professional manner and to the COTR's satisfaction.

**5. PERSONNEL**

The contractor shall provide one (1) LAN Specialist to work full-time at the designated base work site with occasional assignments at any of FLRA's geographic locations during the Period of Performance. If the contracted LAN Specialist is absent from work more than five successive business days, the contractor must provide a qualified replacement.

The FLRA shall provide on-the-job training sufficient to provide technicians with a familiarity with hardware, software and procedures in use at FLRA. The contractor shall provide off-site training, as necessary, to provide basic technology skills required to perform the described duties. These basic technology skills include Windows NT 4 and Windows 2000 server administration, and basic administration of a Microsoft Exchange 5.5 electronic mail system and ArcServe 2000 software.

Training is to be provided off-site by the contractor at the contractor's expense at a mutually agreed upon time during the period of performance. If this training is not completed during the period of performance, the FLRA may elect to replace the assigned contractor technician.

**6. TASK ORDER TYPE**

This statement of work shall result in a labor-hour contract (FAR 16.602). The contractor technician will be required to document the actual hours worked and submit monthly invoices for certification by the contracting officers technical representative. Payment shall be made in accordance with FAR

**IV. Periods of Performance**

| | | |
|---|---|---|
| Initial Term | (FY-2003) | 01/01/2003 through 9/30/2003 |
| OPTION TERM I: | (FY-2004) | 10/01/2003 through 9/30/2004 |
| Option Term II: | (FY-2005) | 10/01/2004 through 9/30/2005 |
| Option Term III: | (FY-2006) | 10/01/2005 through 9/30/2006 |
| Option term IV: | (FY-2007) | 10/01/2006 through 9/30/2007 |

It understood that executing an award for the Initial Term does not obligate the government to subsequent Option Terms. The contracting officer shall provide not less than 60 days notice prior to the end of any period of performance whether the agency intends to exercise its option in accordance with FAR 17.207.

**V. Key Personnel**

**Gurdev Singh Bajwa**

B.S. Computer Networking
Strayer University
Manassas, Va

Microsoft Certified Systems Administrator: Windows 2000
Microsoft Certified Professional: Windows NT 4.0

**See attached resume for skills, technical training, and professional experience.**

13.301 and FAR 32.1102 as required by the Prompt Payment Act.

**7. PERIOD OF PERFORMANCE**

INITIAL TERM: (FY-2003) 01/01/2003-9/30/2003

OPTION TERM I: (FY-2004) 10/01/2003-9/30/2004

OPTION TERM II: (FY-2005) 10/01/2004-9/30/2005

OPTION TERM III: (FY-2006) 10/01/2005-9/30/2006

Executing an award for the Initial Term does not obligate subsequent Option Terms. The contracting officer shall notify the contractor not less than 60 days before the end of any period of performance whether the government intends to exercise an option in accordance with FAR 17.207.

**8. DESIGNATED BASE WORK SITE**

The designated base work site is the Federal Labor Relations Authority headquarters office located at 607 14th Street, N.W., Washington, D.C. 20424-0001 until approximately March 1, 2003, and thereafter at 1400 K Street, N.W., Washington, DC 20005-2403. The contracted technician may occasionally be required to travel to the FLRA Regional Offices and satellite offices located throughout the United States to perform duties. The contractor is responsible for arranging the technician's travel expenses to cover trips to regional offices and invoicing the FLRA for the expenses.

**9. GOVERNMENT-FURNISHED RESOURCES**

The Federal Labor Relations Authority will provide the contracted technician with appropriate workspace and access to the required systems, hardware and software.

**10. SECURITY REQUIREMENTS**

The contractor will abide by all Federal Labor Relations Authority security regulations, practices and procedures and will only utilize United States citizens to perform work under this contract. The contractor will provide a background security check on each employee provided to the FLRA COTR. The

COTR will interview proposed candidates. Candidates must provide evidence of a proficiency of knowledge, skills and abilities suitable for the identified help desk tasks. FLRA has the right to accept or decline acceptance of any individual being offered.

**11. GOVERNMENT PROJECT MANAGER**

Mr. Ronald J. Kennedy
Director
Information Resources Management Division
Federal Labor Relations Authority
607 - 14th Street, N.W., Suite 320
Washington, DC 20424-0001
Telephone: (202) 482-6695, extension 347

*H:\Operations\help desk contract\SOW – LAN Specialist -final.doc*

**VI. Cost Proposal**

| | | | |
|---|---|---|---|
| Initial Term | (FY-2003) | 01/01/2003-9/30/2003 | $56.50 per hour |
| Option Term I: | (FY-2004) | 10/01/2003-9/30/2004 | $57.50 per hour |
| Option Term II: | (FY-2005) | 10/01/2004-9/30/2005 | $58.50 per hour |
| Option Term III: | (FY-2006) | 10/01/2005-9/30/2006 | $59.50 per hour |

**Gurdev Singh Bajwa**
5902 Spruce Run Court
Centreville, VA 20121
(703) 803-8405
gbajwa@flra.gov

Microsoft CERTIFIED Systems Administrator

## *Objective:*

Seeking an opportunity to join a progressive organization that will challenge as well as utilize my extensive Computer Specialist skills and expertise to positively impact company performance and profitability while providing professional growth.

## *Strengths:*

- Well organized, quick learner and works well under stress
- Self motivated, creative and diligent
- Team player and also works well independently

## *Education:*

- **B.S.** in **Computer Networking,** Strayer University, Manassas VA
- **Microsoft Certified System Administrator (MCSA)** in Windows 2000
- **Microsoft Certified Professional (MCP)** in Windows NT 4.0

## *Skills:*

**Software:**
CheckPoint Firewall 4.1 for NT ▪ SuperScout SMTP Email Filter ▪ SuperScout Web Filter for FW-1 ▪ Microsoft Office 2000 Premium ▪ Windows 98, Me, NT 4.0 Workstation, 2000 Professional, XP Professional ▪ MS Windows NT 4.0 Server ▪ MS Windows 2000 Server and Advanced Server Editions ▪ MS Internet Information Server 4.0 ▪ MS Exchange 5.5 Server ▪ MS Internet Explorer 5.5 and 6.0 ▪ MS Outlook 98, 2000, XP ▪ Corel 8 Office Suite and 2002 Office Suite ▪ Symantec Ghost 6.5 ▪ ArcServeIT 6.61 Backup Software ▪ ArcServe 2000 Backup Software ▪ InoculateIT 6.0 Virus Scan and Exchange Agent ▪ ArcServe Exchange 5.5 Backup Agent ▪ ArcServe Oracle Backup Agent ▪ ArcServe Backup Agent for Open Files ▪ Microsoft Service Pack ▪ among others

**Hardware:**
Cisco 2620 Series routers ▪ Cisco 3524XL PWR Enterprise Managed Switches ▪ Micron Desktop and laptop computers ▪ HP E60, LC2, LC3, LC2000, LH3000 U3 Netservers ▪ HP VL800 desktops and OmniBook XE3 laptops ▪ Linksys Personal Router and mini-switches ▪ Modems ▪ HP Scanners ▪ Cable Testers ▪ Equinox RAS System 32 modem racks ▪ HP Printers ▪ Quantum Snap Server 1000 and 4100 ▪ IDS PDS 5000 ▪ HP SureStore Tape Autoloader ▪ HP SureStore DLT80 ▪ among others

## *Technical Training:*

- Windows NT Server Enterprise
- Supporting Windows NT Server
- Network Security
- Internet Information Server
- Network Essentials
- TCP/IP for Windows NT
- Supporting Windows NT Workstation
- UNIX Operating System
- MS Access Database Programming
- PC Hardware troubleshooting

**Gurdev Singh Bajwa**
5902 Spruce Run Court
Centreville, VA 20121
(703) 803-8405
gbajwa@flra.gov

Microsoft CERTIFIED Systems Administrator

---

## *Professional Experience:*

**Computer Specialist**
**Independent Consultant, Washington DC** **May. 01-Present**
The enterprise network I support is a homogenous Microsoft NT 4 network with 23 servers and 250 nodes. The network includes a wide-area component established with seven regional offices and is a part of our main Headquarters network communicating through an FTS 2001 frame relay cloud. My duties include providing technical and administrative lifecycle support of the 8 domain controllers, 8 MS Exchange mail servers, routers, switches, RAS and VPN services, firewall, and DHCP server support, centralized backup services, virus and intrusion detection, and client system capabilities.

I am also tasked to assess potential and realized internal and external risk and identifying and implementing safeguards for information resources. Routine safeguards that I am responsible for include installation of the latest service packs for our server and client systems and daily backups in the event we need to perform disaster recovery.

**Troubleshooting Specialist**
**Covad Communication, Manassas VA,** **Aug.'99-Feb.'2001**
As a troubleshooting specialist I helped in driving customer orders through installation. Ensured Due Dates were received from ILECs within specified time frames. Followed up on the ordering/provisioning of lines with Telcos. Opened Trouble Tickets with the ILECs and followed up on deliverables from various sources. Entered all required database entries and updates to reflect current status of order activity. Performed all steps necessary to ensure proper escalation if needed. Followed up and worked with the ILECs regarding commitment dates/times

**Technical Intern**
**EDS (Electronic Data Systems)**
**Herndon, VA** **Jan.'98-Jun.'98**
Supported the senior network administrator with installing, and configuring NT Workstations and Servers. Also assisted in creating and setting up user accounts, including system policies and share permissions. Was also responsible for maintaining a Defects database using Microsoft Access.

***References*:** Will be furnished upon request.

# BUSINESS CONSULTANT AGREEMENT

This agreement dated December 23, 2002, is made by and between DKO Technologies Inc. whose principle place of business is located in Alexandria, Virginia, referred to hereafter as "the company", and Gurdev Singh Bajwa, whose address is 5902 Spruce Run Court, Centreville, VA 20121, referred to as "the consultant."

1. **Consultation Services.** The company hereby employs the consultant to perform professional services in accordance with the terms and conditions set forth in this agreement: The consultant will provide professional and technical advice to the officers and employees of the company and provide direct assistance to the United States of America in accordance with the terms of FLRA Contract 8090-03-035 incorporated herein by reference as the Statement of Work (SOW) for this engagement.

2. **Term of Agreement.** This agreement will begin January 1, 2003 and conclude September 30, 2003. Provided, however, the consultant agrees to continue performance during the subsequent term of four (4) option years specific in the SOW if such options are exercised by the United States of America under the terms of FLRA Contract 8090-03-035. Either party may cancel this agreement upon ninety (90) days notice to the other party in writing by certified mail or personal delivery.

3. **Time Devoted by Consultant.** It is anticipated the consultant will spend approximately 2000 hours per year in fulfilling obligations under this contract. The actual amount of time may vary from day to day or week to week. The consultant shall devote a minimum of forty hours per week to duties in accordance with this agreement. Consultant shall be considered in pay status on Federal holidays and fully compensated. The consultant may schedule an uncompensated leave of absence not to exceed ten (10) consecutive business days.

4. **Place Where Services Will Be Rendered.** The consultant will perform most services in accordance with this contract at the headquarters of the Federal Labor Relations Authority in Washington, DC. In addition the consultant will perform services on the telephone and at such other places designated by the company to perform these services in accordance with this agreement.

5. **Payment to Consultant.** In consideration for services provided the consultant will be paid $76,204 per year ($36.55 x 2080 hours = $6335 per month). Work in excess of eight hours per day or forty hours per week shall be compensated at the rate of 1.5 percent. The consultant shall receive increased compensation of 3.5% upon exercise of each option term beginning: January 1, 2004; January 1, 2005; January 1, 2006; and January 1, 2007. The consultant will submit a monthly statement setting forth the time devoted and services rendered, whereupon the company will tender to consultant the agreed monthly payment within ten (10) business days of receipt of such statement.

6. **Independent Contractor.** Both the company and the consultant agree that the consultant will act as an independent contractor in the performance of its duties under this contract. Accordingly, the consultant shall be responsible for payment of all taxes including Federal, State and local taxes arising out of this engagement in accordance with this contract, including but not limited to Federal and State income tax, Social Security tax, Unemployment Insurance taxes, and any other taxes or business license fee as required.

7. **Confidential Information.** The consultant agrees that any information received by the consultant during any furtherance of the consultant's obligations in accordance with this contract, which concerns the personal, financial or other affairs of the company will be treated by the consultant in full confidence and will not be revealed to any other persons, firms or organizations.

8. **Employment of Others**. The company may from time to time request that the consultant arrange for the services of others. The company will pay all costs to the consultant for those services. In no event, however, shall the consultant employ others without the prior authorization of the company.

9. **Certification.** The consultant hereby certifies that he is a citizen of the United States of America.

10. **Signatures.** The company and the consultant agree to the above contract.

DKO Technologies, Inc.
Donald Ourecky, Ph.D. ______________________
Vice President

Gurdev Singh Bajwa ______________________
Consultant

# BUSINESS CONSULTANT AGREEMENT

This agreement dated December 23, 2002, is made by and between DKO Technologies Inc. whose principle place of business is located in Alexandria, Virginia, referred to hereafter as "the company", and Gurdev Singh Bajwa, whose address is 5902 Spruce Run Court, Centreville, VA 20121, referred to as "the consultant."

1. **Consultation Services.** The company hereby employs the consultant to perform professional services in accordance with the terms and conditions set forth in this agreement: The consultant will provide professional and technical advice to the officers and employees of the company and provide direct assistance to the United States of America in accordance with the terms of FLRA Contract 8090-03-035 incorporated herein by reference as the Statement of Work (SOW) for this engagement.

2. **Term of Agreement.** This agreement will begin January 1, 2003 and conclude September 30, 2003. Provided, however, the consultant agrees to continue performance during the subsequent term of four (4) option years specific in the SOW if such options are exercised by the United States of America under the terms of FLRA Contract 8090-03-035. Either party may cancel this agreement upon ninety (90) days notice to the other party in writing by certified mail or personal delivery.

3. **Time Devoted by Consultant.** It is anticipated the consultant will spend approximately 2000 hours per year in fulfilling obligations under this contract. The actual amount of time may vary from day to day or week to week. The consultant shall devote a minimum of forty hours per week to duties in accordance with this agreement. Consultant shall be considered in pay status on Federal holidays and fully compensated. The consultant may schedule an uncompensated leave of absence not to exceed ten (10) consecutive business days.

4. **Place Where Services Will Be Rendered.** The consultant will perform most services in accordance with this contract at the headquarters of the Federal Labor Relations Authority in Washington, DC. In addition the consultant will perform services on the telephone and at such other places designated by the company to perform these services in accordance with this agreement.

5. **Payment to Consultant.** In consideration for services provided the consultant will be paid $76,204 per year ($36.55 x 2080 hours = $6335 per month). Work in excess of eight hours per day or forty hours per week shall be compensated at the rate of 1.5 percent. The consultant shall receive increased compensation of 3.5% upon exercise of each option term beginning: January 1, 2004; January 1, 2005; January 1, 2006; and January 1, 2007. The consultant will submit a monthly statement setting forth the time devoted and services rendered, whereupon the company will tender to consultant the agreed monthly payment within ten (10) business days of receipt of such statement.

6. **Independent Contractor.** Both the company and the consultant agree that the consultant will act as an independent contractor in the performance of its duties under this contract. Accordingly, the consultant shall be responsible for payment of all taxes including Federal, State and local taxes arising out of this engagement in accordance with this contract, including but not limited to Federal and State income tax, Social Security tax, Unemployment Insurance taxes, and any other taxes or business license fee as required.

7. **Confidential Information.** The consultant agrees that any information received by the consultant during any furtherance of the consultant's obligations in accordance with this contract, which concerns the personal, financial or other affairs of the company will be treated by the consultant in full confidence and will not be revealed to any other persons, firms or organizations.

8. **Employment of Others.** The company may from time to time request that the consultant arrange for the services of others. The company will pay all costs to the consultant for those services. In no event, however, shall the consultant employ others without the prior authorization of the company.

9. **Certification.** The consultant hereby certifies that he is a citizen of the United States of America.

10. **Signatures.** The company and the consultant agree to the above contract.

DKO Technologies, Inc.
Donald Ourecky, Ph.D. ____________________
Vice President

Gurdev Singh Bajwa ____________________
Consultant

UNITED STATES OF AMERICA
**FEDERAL LABOR RELATIONS AUTHORITY**
WASHINGTON, D.C. 20424-0001

March 24, 2004

**ADMINISTRATIVE SERVICES DIVISION**

**MEMORANDUM**

TO: Gary Crawford
Stephen Smith
Administrative Services Division

FROM: Yvonne Thomas, Director
Administrative Services Division

SUBJECT: Communications on Contract Matters

The purpose of the guidance provided in this memorandum is to ensure that there are communications between us regarding matters that involve the contracting officer functions that you each perform. To this end and effective immediately, before taking any action on any contractual matter in your role as contracting officer, please notify me in writing via e-mail concerning the details of the matter, and await further directions from me. In my absence, please e-mail these communications to David Smith in his role of Acting Executive Director and "cc" me. If you are unable to send email because the email system is down, please deliver a written briefing to me, or to David Smith in my absence, and leave a voice mail message on my direct number advising me of such action.

In giving you these directions, it is not my intent to impair in any way your ability to exercise the personal and independent judgment that is required of you regarding any matter on which you have been authorized to act as contracting officers.

If you have any questions or concerns regarding the instructions contained in this memorandum, please advise me immediately.

EXHIBIT



[redacted]

**Shewchuk, David M.**

**From:** Thomas, Yvonne
**Sent:** Thursday, January 13, 2005 12:04 PM
**To:** Shewchuk, David M.
**Subject:** FW: BPD Agreement

FYI

-----Original Message-----
**From:** Thomas, Yvonne
**Sent:** Thursday, January 13, 2005 11:03 AM
**To:** Smith, David
**Subject:** BPD Agreement

David,

BPD is going to modify the agreement showing that we are using $10,000.00 for CO services for the claim. Therefore, the only thing I need to send them is an e-mail indicating that they should move forward with the modification. I plan to do that within the next 10 minutes and will send the package off to them tonight.

EXHIBIT
PENGAD 800-631-6989
Thomas 13
5/24/06 SL



GOV-03974

Tammie, We actually received this claim on the 17th or so The CO believes we did. He also said it could have been Monday the 20th

**Thomas, Yvonne**

**From:** Claudine.Woodyard@bpd.treas.gov
**Sent:** Thursday, January 13, 2005 1:15 PM
**To:** Thomas, Yvonne
**Cc:** Smith, David; Tammie.Johnson@bpd.treas.gov
**Subject:** Re: Modification of Agreement

Thanks Yvonne. I will prepare the modification and forward it to you for signature.

Thank you,
Claudine Woodyard
Administrative Resource Center - Franchise Services
Phone: 304-480-7228
Fax: 304-480-7161

**"Thomas, Yvonne" <YThomas@flra.gov>**

01/13/2005 01:09 PM

To "'Claudine.Woodyard@bpd.treas.gov'" <Claudine.Woodyard@bpd.treas.gov>
cc Tammie.Johnson@bpd.treas.gov, "Smith, David" <DSmith@flra.gov>
Subject Modification of Agreement

Claudine,

Please proceed with modifying the contracting agreement to include a review and decision for two claims which I will FedEx to Tammie Johnson this evening. Per our telephone conversation the cost will be $10,000.00 ($5,000.00 per claim), which will be deducted from the $22,000.00 remaining in the contracting agreement. We do understand and agree that use of this funding will decrease the scope of the procurement review. The modification should be mailed directly to me at:

Federal Labor Relations Authority
Attn: Yvonne Thomas
Administrative Services Division
1400 K Street, NW, Ste 200
Washington, DC 20424

(202) 218-7764

Thanks for your assistance.

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

- - - - - - - - - - - - - - - - - - - - -x

DONALD K. OURECKY, sole proprietor, :

D.B.A. DKO TECHNOLOGIES, : No. 05-575C

Plaintiff, :

vs. :

UNITED STATES OF AMERICA, :

Defendant. :

- - - - - - - - - - - - - - - - - - - - -x

Washington, D.C.

Monday, May 15, 2006

Deposition of GARY W. CRAWFORD, a witness herein, called for examination by counsel for Defendant in the above-entitled matter, pursuant to notice, the witness being duly sworn by KAREN YOUNG, a Notary Public in and for the District of Columbia, taken at the offices of the U.S. Department of Justice, Civil Division, Commercial Litigation Branch, 1100 L Street, Northwest, Washington, D.C., at 10:08 a.m. on Monday, May 15, 2006, and the proceedings being taken down by Stenotype by KAREN YOUNG, and transcribed under her direction.

24

Q. Okay. Did you have any contact with him between this technology forum and the solicitation of these contracts?

A. I don't think so.

Q. Okay. Did you have any contact with him outside of your administration of the contracts?

A. Well, I'm trying to -- I recall seeing him once or twice at an antique show.

Q. Okay.

A. He owns an antique business.

Q. Oh.

A. And he had a concession at an antique show.

Q. Uh-huh.

A. And we chatted. We may have even had lunch that day.

Q. Okay.

A. And that would have been before this -- these contracts were awarded but after the administrative forum contract.

Q. Okay. What about Mr. Lavezzo? When did you first meet Mr. Lavezzo?

A. About ten years ago.

Q. Okay. And in what context?

A. Oh, I would say personal friend, neighbor.

Q. So you were neighbors?
A. I would say friends.
Q. Okay.
A. Yeah.
Q. Who were -- who recommended Dr. Ourecky to you for this technology forum? Do you recall?
A. I don't recall.
Q. Do you recall if it was Mr. Lavezzo?
A. I don't recall.
Q. Don't recall? Okay. What was the -- how did you come to meet Mr. Lavezzo?
A. We met years ago in D.C. I think -- well, in D.C. I know. We actually met in a bar, to be quite honest with you.
Q. Okay.
A. He was a waiter or a bartender.
Q. Uh-huh.
A. This would have been over ten years ago.
Q. Okay. And what type of contact have you had with Mr. Lavezzo over that ten-year period? Someone you occasionally ran into or were you good friends?
A. I would say good friends.
Q. Talk to each other a couple times a year, monthly?

Q. Okay. Who did you meet with at the FMCS?

A. I met with Dan Funkhouser, who is the contracting officer of FMCS and had been my former supervisor at FMCS.

Q. Uh-huh. And what advice did Mr. Funkhouser give you?

A. I read him -- as I recall, I explained the facts to him --

Q. Uh-huh.

A. -- and all the circumstances. I probably read him the entire final decision, and Dan had no recommendations to change it. He said something to the effect this sounds fine to me, Gary.

Q. Uh-huh.

A. You know this stuff better than I do, I would have relied upon your advice when you were here, something to that effect. There were no substantive recommendations with Mr. Funkhouser.

Q. Uh-huh.

A. He essentially demurred to my expertise.

Q. You said you read him the final decision, so you didn't give him a copy of the final decision?

A. No.

Q. You just read it orally to him?

A. Yes, and his secretary --

Q. Uh-huh.
A. After I read it and he essentially said sounds fine to me --
Q. Uh-huh.
A. She notarized it.
Q. Okay. And did you tell anyone about the final -- the purported final decision when you got back to the FLRA?
A. I don't think -- I don't believe so. No one was there.
Q. Okay.
A. I think I was -- when I got back, it was late in the evening, I recall. I mentioned it to Stephen Smith --
Q. Uh-huh.
A. -- the following week. I think I was on annual leave the whole next week, the week before Christmas.
Q. Uh-huh.
A. I may have mentioned it to -- I mentioned it to Stephen Smith, but it was probably after Christmas.
Q. But this is January 13. I'm asking about the January 13 --
A. I'm sorry. January 13, I probably

officer at the agency, and the Inspector General.

Q. Okay. But you didn't tell David Smith then.

A. I was told not to tell David Smith. Mrs. Thomas instructed me --

Q. Uh-huh.

A. -- to communicate to David Smith through her.

Q. Okay. And you were aware when you -- when you issued the final decision of Exhibit 1 where it said that you were not to take any action on any claims?

A. Yes, I was aware of it, and three times in writing explained to Mrs. Thomas that I was going to disregard those instructions and asked her for the specific written statutory authority for her orders.

Q. Okay. Do you recall when you mailed the January 13 final decision?

A. On Friday January 14th late in the afternoon, I personally deposited the contracting officer's final decision in the mail room.

Q. Okay. Why did you wait until the afternoon of the 14th instead of mailing it on the 13th or the morning of the 14th?

A. I don't recall.

Q. Okay. Do you know whether or not --
A. Well, the mail room was probably locked. See, I was locked out of the mail room the same way I was locked out of the contracts office.
Q. Uh-huh.
A. So at 6:00 on January 13th, I didn't have access to the mail room.
Q. Okay. Was this mailed before or after the claim had been reassigned to the Bureau of Public Debt?
A. I don't know.
Q. Okay. Were you aware when you mailed the claim -- I'm sorry. When you mailed the January 13th final decision, were you aware that the claim had been reassigned to the Bureau of Public Debt?
A. I was not. I suspected she might because she had done the same thing on the Cicatrix contract.
Q. Uh-huh.
A. But I was not aware of it.
Q. So you had a suspicion that they would -- that they might reassign the claim.
A. I had a suspicion that they were going to interfere with my exclusive jurisdiction as contracting officer.