IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| PHILLIP J. LAVEZZO d/b/a DKO TECHNOLOGIES, Plaintiff, | ) | |
| v. | ) | No. 05-575C (Judge Wheeler) |
| THE UNITED STATES, Defendant. | ) | |

DEFENDANT'S PROPOSED FINDINGS OF UNCONTROVERTED FACT

Pursuant to Rule 56(h)(1), RCFC, defendant, the United States, submits the following Defendant's Proposed Finding of Uncontroverted Fact ("DPFUFs"). These proposed findings of fact supplement the joint stipulations of fact previously filed by the parties. These DPFUFs, read in conjunction with the previously filed joint stipulations, provide a statement of the material facts upon which defendant bases its motion for summary judgment.

1. Mr. Lavezzo and FLRA contracting officer Mr. Crawford had known each other through a personal friendship for approximately 10 or 12 years. DA 25-26, 33-34.[1]

[1] "DA __" refers to that page of Defendant's Appendix filed in support of our brief. "JA Tab __" refers to the Joint Appendix to be filed by that parties during briefing.

2. Mr. Lavezzo named his sole proprietorship DKO Technologies to allow Mr. Ourecky to be the public figure for all communication with the FLRA. DA 35-36.

3. Mr. Lavezzo also owns a landscaping business and is involved with an antiques business. DA 32-33.

4 Mr. Ourecky, holds a Ph.D. in genetics, with a minor in horticulture, and also owns an antique business. DA 45-47.

5. Neither Mr. Lavezzo nor Mr. Ourecky possess any training in computer programming or database design. DA 32, 44-47.

6. Mr. Ourecky's bid did not include any information indicating that Mr. Lavezzo was his principal. DA 6-20.

7. The Help Desk Contract was a labor hours contract pursuant to FAR § 16.602, in which the FLRA provided all materials. DA 10.

8. The Help Desk Contract did not provide for a minimum number of hours. DA 6-20.

9. Mr. Ourecky's bid for the Oracle contract did not identify Mr. Lavezzo as his principal. JA Tab 28.

10. The Oracle Contract was also a labor hours contract, with no guaranteed minimum number of hours. JA Tab 28, p. 13.

11. There is no written document establishing that Mr. Ourecky was Mr. Lavezzo's agent, or granting Mr. Ourecky a power of attorney. DA 37-38.

12. Mr. Ourecky simply provided Mr. Lavezzo's Social Security Number to the FLRA, and not Mr. Lavezzo's name . DA 39.

13. In response to concerns that Mr. Crawford would not act in a fair and equitable manner in response to claims submitted by contractors, FLRA Director of the Administrative Services Division, Ms. Yvonne Thomas provided written orders, dated March 24, 2004, to Mr. Crawford requiring him to notify her in writing when he received a claim, and to take no further action until receiving further direction. DA 21, 57, 58.

14. The claims were submitted by Donald Ourecky and, once again, do not reference the existence of Mr. Lavezzo. JA Tab 45.

15. Ms. Thomas testified that she was not informed of the DKO claims until January 10, 2005. DA 59.

16. FLRA Solicitor and Acting Executive Director David Smith did not learn of the claims until several weeks after they were filed. DA 51.

17. Mr. Smith testified that the requirement that Mr. Crawford not take any action with regard to the DKO claims was to allow the FLRA to determine the

basis for the claim, and that the steps after notification would be determined at that point. DA 49-51.

18. However, the FLRA determined to reassign the DKO claim to the BPD based upon Mr. Crawford's failure to notify management of the DKO claim in a timely manner and because of problems with Mr. Crawford's resolution of other claims. DA 52.

19. Ms. Thomas' e-mail to the BPD was sent at 1:09 p.m., and the BPD confirmed the agreement at 1:15 p.m. DA 22, 23.

20. On the afternoon of January 13, 2006, Mr. Crawford had consulted with his former supervisor, Mr. Dan Funkhowser, at the Federal Mediation and Conciliation Service ("FMCS"). DA 27.

21. After meeting with Mr. Funkhowser, Mr. Crawford signed the purported COFD, before Ms. Prothro, and returned to the FLRA late in the evening, after the FLRA mailroom had closed. DA 28, 30.

22. Mr. Crawford was aware, at the time that he signed the purported COFD, that he had been instructed not take any action with the DKO claim, but he believed these instructions to be invalid. DA 29.

23. In his purported COFD, Mr. Crawford found that the FLRA had wrongly suspended work upon an implied-in-fact contract, and that the FLRA had violated it duty of good faith and fair dealing. JA Tab 50 at P-0218-20.

24. Mr. Crawford determined that DKO was entitled to general & administrative expenses, fee and overhead costs totaling 35% of the unperformed portion of the implied-in-fact contracts, totaling $81, 728, plus CDA interest from receipt of the claims. JA Tab 50 at P-0221.

25. In an e-mail, which was sent at 5:07 p.m., Mr. Crawford promised to "put his mind" to the claims, and did not indicate to Ms. Thomas that he had prepared a purported COFD. JA Tab 52.

26. In his January 14, 2005, e-mail to Ms. Thomas, Mr. Crawford did not inform Ms. Thomas of the COFD. JA Tab 56.

27. Upon receipt of the purported COFD, DKO did not contact the BPD to inquire why they were reviewing the claim when a COFD had already been issued. DA 40, 41-42.

28. As the contract files were transmitted to the BPD before Mr. Crawford executed the purported COFD, the BPD did not receive a copy of the Crawford decision, and was unaware of the Crawford decision when it issued its COFDs. DA 22, 60-61.

29. The BPD denied the DKO claim pertaining to the Help Desk contract, as they were unable to determine against what contract DKO was asserting its claim. JA Tab 67 at P-0072-73.

30. The DKO claim referenced contract 8095-03-001, which was not a valid contract number, and Ms. Pryor was unable to contact Mr. Ourecky to obtain additional information. JA Tab 67 at P-0072.

31. The BPD denied the DKO claim pertaining to the Oracle contract as it was a labor hours contract, and no direct labor hours were performed during the period for which DKO sought reimbursement. JA Tab 67 at P-0070-71.

32. The BPD contracting officer invited Mr. Ourecky to provide additional documentation in support of his claims, and indicated that she would be willing to reconsider her decisions if Mr. Ourecky provided additional information. JA Tab 67 at P-0070.

33. It was only after Mr. Ourecky filed suit that the FLRA became aware of the existence of the Crawford Decision. DA 54-55.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/ Franklin E. White, Jr.
FRANKLIN E. WHITE, JR.
Assistant Director

s/ David D'Alessandris
DAVID D'ALESSANDRIS
Trial Attorney
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tele: (202) 307-1011
Fax: (202) 514-8624

July 7, 2006 Attorneys for Defendant

CERTIFICATE OF SERVICE

I hereby certify that on July 7, 2006, a copy of the forgoing "DEFENDANT'S PROPOSED FINDINGS OF UNCONTROVERTED FACT" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ David D'Alessandris