# Tab 44

**Thomas, Yvonne**

**From:** Crawford, Gary
**Sent:** Monday, January 10, 2005 2:43 PM
**To:** Thomas, Yvonne
**Subject:** RE: ADR Agreement

The claim was received in the mail room via postage paid first-class mail Monday, December 13, 2004. Dr. Orecky called me later that week (perhaps on the 17th) to inquire whether the letter had been received. (He was concerned because whomever answered the door stated that she did not work in mail room, but would ensure that the document was delivered to me.) At that time I had not yet seen the claim -- but got it later that day in my ASD mail box. Dr. Orecky faxed another (unsigned) copy to me. I made several photocopies of that fax, including the one given to you.

-----Original Message-----
**From:** Thomas, Yvonne
**Sent:** Monday, January 10, 2005 1:53 PM
**To:** Crawford, Gary
**Subject:** RE: ADR Agreement

Gary,

When did you receive this claim (electronically, I assume)? Please provide me with an electronic copy. Thanks.

-----Original Message-----
**From:** Crawford, Gary
**Sent:** Monday, January 10, 2005 11:54 AM
**To:** Thomas, Yvonne
**Subject:** RE: ADR Agreement

Please note that a hard copy of both claims has been provided as requested.

-----Original Message-----
**From:** Thomas, Yvonne
**Sent:** Monday, January 10, 2005 12:26 PM
**To:** Crawford, Gary
**Subject:** RE: ADR Agreement

Gary,

Did you receive a copy of the claim and if so would you please provide me with a copy? Thanks.

-----Original Message-----
**From:** Crawford, Gary
**Sent:** Monday, January 10, 2005 10:46 AM
**To:** Thomas, Yvonne
**Subject:** RE: ADR Agreement

Pursuant to the Contract Disputes Act of 1978, Dr. Donald K. Orecky, Vice President & CEO, DKO Technologies, Alexandria, VA has submitted a claim arising from and related to contract numbers FLRA 8095-02-035 and FLRA 8095-03-001.

-----Original Message-----
**From:** Thomas, Yvonne
**Sent:** Wednesday, June 30, 2004 11:23 AM
**To:** Crawford, Gary
**Cc:** Smith, David
**Subject:** RE: ADR Agreement



EXHIBIT
PENGAD 800-631-6989
Thomas 5
5/24/06 SL

GOV-04943

Gary,

If any claims are submitted by any contractors, including DKO, you are hereby instructed not to take any action whatsoever, with the exception of notifying David and I that you have received such. This includes not notifying the contractor of acceptance of the claim.

-----Original Message-----
**From:** Crawford, Gary
**Sent:** Tuesday, June 29, 2004 4:13 PM
**To:** Smith, David
**Cc:** Thomas, Yvonne
**Subject:** FW: ADR Agreement

Attached:

-----Original Message-----
**From:** Crawford, Gary
**Sent:** Tuesday, June 29, 2004 4:11 PM
**To:** Smith, David; Thomas, Yvonne
**Subject:** ADR Agreement

It is likely that a claim under the Contract Disputes Act (CDA) will be submitted to me within the next week or two. The potential claimant is DKO Technologies, Alexandria, VA. Although the precise amount is not known to me, the contractor has indicated the claim "would not require certification under 33.207." (That means less than $100,000).

Please read the attached letter of agreement. It is a standard composition used by other agencies to explain ADR and to document the agreement between agency and claimant under the Contract Disputes Act, as implemented by FAR 33.204 and FAR 33.214.

Please recommend any changes you deem necessary, as soon as possible. Also, provide any other suggestions too, especially
any comments concerning the ADR process itself.

Thanks. -- GWC

<< File: ADR Agreement.wpd >>

# Tab 45

DKO TECHNOLOGIES
Alexandria, VA 22314

2004 DEC 13 AM 10:09
FLRA
MAIL DISTRIBUTION CENTER

December 9, 2004

Mr. Gary W. Crawford
Contracting Officer
Federal Labor Relations Authority
Suite 217
1400 K Street, NW
Washington, DC 20005

Dear Mr. Crawford:

In accordance with the provisions of FAR 33.201, Disputes Clause, the undersigned officer of DKO Technologies, Alexandria, Virginia, hereby submits the enclosed claim for $57,408.00 arising from and related to breach of FLRA Contract 8095-03-001. As required, a final written decision of the contracting officer is hereby requested from you within sixty days.

Sincerely,

Donald K. Ourecky

Dr. Donald K. Ourecky

EXHIBIT
Thomas 6
5/24/06 SU
PENGAD 800-631-6989

## ASSERTION OF CLAIM

Federal Labor Relations Authority (FLRA) constructively exercised its first option term under contract 8095-03-001 and thereafter wrongfully interfered with performance, suspended work, and abused official discretion. FLRA breached its duty of fair dealing through improper contract administration and lack of cooperation. FLRA breached its duty of good faith through wrongful action to obstruct the claims process.

## FACTS

On April 3,2003, following negotiations related to a request for proposal, FLRA and DKO executed a contract for an initial term extending April 1, 2003 through October 30, 2003. The contract also provided four successive option years covering FY-2004, FY-2005, FY-2006, and FY-2007. On July 15, 2003, the contract was modified for $12,000.00 to provide Oracle 9i Database tasks. On December 3, 2003, the contract was again modified for $12,000 to provide additional Oracle 9i database tasks.

Gary W. Crawford, contracting officer, executed the contract for the United States of America, and designated Eunice Kuykendall the contracting officer's technical representative (COTR). The option years were subject to the usual determination of the contracting officer set forth in FAR 52.217-9 and the availability of funds for each fiscal year.

## CONTRACTOR'S PERFORMANCE

Work under the contract commenced and continued without exception or deviation. All assigned database and web development tasks were satisfactorily and timely delivered. Regular monthly progress reports and associated invoices were submitted by DKO and timely paid by the government. (Tasks under the second Oracle 9i modification issued 12/03/2003 have not been performed because the agency breached the contract).

## GOVERNMENT'S ADMINISTRATION

1.

On July 6, 2003, the contracting officer orally informed DKO that all work under the contract had been "satisfactory." He further stated "pending the likely determination the work should continue through next (fiscal) year" that the first option would be exercised. The contracting officer stated that positive input from "Kennedy and Kuykendall" (FLRA, Director of Information Resources Division, and COTR, respectively) satisfied such

determination. The availability of funds was not specifically mentioned, but implicit as an ordinary requirement.

2.

On July 17, 2003, Eunice Kuykendall, COTR, in written notice to the contracting officer, wrongfully interfered with his discretion to exercise the option by demanding extra-contractual reporting requirements "to ensure we are getting what we paid for" and "performance measures" to justify "what value they (DKO) have added to the organization".

3.

On July 17, 2003, Eunice Kuykendall, COTR, in written notice to the contracting officer, abused discretion by demanding future control over payment of all invoices and expenditure of any funds under the contract.

4.

On September 30, 2003, notwithstanding a written D& F from the contracting officer to exercise the first twelve-month option, the contract was extended for a shorter term ending January 30, 2004. Stephen G. Smith, contracting officer, executed an obligation of $87.360.00.

5.

On November 12, 2003, Yvonne Thomas, Director of Administrative Services, improperly and without authority directed DKO to implement unilateral modifications impacting administration of the contract, and interfering with DKO's independent management and control of its onsite personnel. (Mrs. Thomas was not the contracting officer or contracting officer's technical representative.)

6.

On January 30, 2004, Gary W. Crawford, contracting officer, extended the term of the contract through April 30, 2004, and executed an obligation of $80,000.00.

7.

On April 30, 2004, the contracting officer informed DKO that all work under the contract was suspended effective that date. Upon request, neither official explanation for suspending work nor results of the required A-76 determination were available.

8.

June 10, 2004, DKO orally advised the contracting officer that the firm contemplated filing a claim under the Disputes Clause. FLRA senior management wrongfully took action against the contracting officer to obstruct the timely adjudication of such claim.

Conclusion

The overall maladroit administration of this contract exemplifies FLRA's failure to exercise administrative processes necessary to ensure that the government's contractual needs were met. The agency breached its duty to foster cooperative relations with the claimant, and thus frustrated the essential purpose of the agreement. Through its failure to cooperate or foster teamwork, unity of purpose, and open communication among members of the acquisition team, the conduct of FLRA officials breached the duty of good faith in performance and fair dealing in administration.

Work wrongfully suspended for the first option year under this contract (May 1, 2004 through September 30, 2004) amounts to 800 hours at the fully burdened rate of $169.00 DKO hereby requests equitable settlement at fifteen percent for General & Administrative, nine percent Fee (profit), and fifteen percent Overhead, plus accumulated interest. (800 hours x $169.00 = $135,200.00 x 29% = $39,208.00). In addition, DKO requests equitable settlement at fifteen percent for General & Administrative, nine percent Fee (profit), and fifteen percent Overhead, plus accumulated interest for $12,000 wholly breached under Oracle 9i modification (12/03/2003).

1. 800 hrs x $169.00 = $135,200.00 x 39% = $52,728.00

2. 80 hrs x $150.00 = $12,000.00 x 39% = $4,680.00

3. Total = $57,408.00

Finally, to the best of my knowledge and belief it is hereby certified that this claim is made in good faith, that supporting documentation is full and accurate, and that the amount requested is an adjustment for which FLRA is liable.

DKO TECHNOLOGIES
Alexandria, VA 22314

2004 DEC 13 AM 10: 09
MAIL DISTRIBUTION CENTER

December 9, 2004

Mr. Gary W. Crawford
Contracting Officer
Federal Labor Relations Authority
Suite 217
1400 K Street, NW
Washington, DC 20005

Dear Mr. Crawford:

In accordance with the provisions of FAR 33.201, Disputes Clause, the undersigned officer of DKO Technologies, Alexandria, Virginia, hereby submits the enclosed claim for $28,704.00 (twenty-eight thousand seven-hundred-four dollars) arising from and related to breach of FLRA Contract 8095-02-035. As required, a final written decision of the contracting officer is hereby requested from you within sixty days.

Sincerely,

Dr. Donald K. Ourecky

Enclosure

EXHIBIT
PENGAD 800-631-6989
Thomas 7
5/24/06 CU

## ASSERTION OF CLAIM

Federal Labor Relations Authority (FLRA) constructively exercised its first option term under contract 8095-03-001, and thereafter wrongfully interfered with performance, suspended work, and abused official discretion. FLRA breached its duty of fair dealing through improper contract administration and lack of cooperation. FLRA breached its duty of good faith through wrongful action to obstruct the claims process.

## FACTS

On December 29, 2002, following negotiations related to a request for proposal, FLRA and DKO executed a contract for an initial term extending January 1, 2003 through September 30, 2003. The contract also provided successive option years covering FY-2004, FY-2005, and FY-2006.

Gary W. Crawford, contracting officer, executed the contract for the United States of America, and designated Ronald J. Kennedy as the contracting officer's technical representative (COTR). Mr. Kennedy was replaced by Eunice Kuykendall effective 11/28/2003. The option years were subject to the usual determination of the contracting officer set forth in FAR 52.217-9 and the availability of funds for each fiscal year.

## CONTRACTOR'S PERFORMANCE

Work under the contract commenced and continued without exception or deviation. All assigned database and web development tasks were satisfactorily and timely delivered. Regular monthly progress reports and associated invoices were submitted by DKO and timely paid by the government.

## GOVERNMENT'S ADMINISTRATION

1.

On July 6, 2003, the contracting officer orally informed DKO that all work under the contract had been "satisfactory." He further stated "pending the likely determination the work should continue through next (fiscal) year" that the first option would be exercised. The contracting officer stated that input from "Kennedy and Kuykendall" (FLRA Director of Information Resources Division and COTR, respectively) would satisfy such determination. The availability of funds was not specifically mentioned, but implicit as an ordinary requirement.

2.

On July 17, 2003, Eunice Kuykendall, FLRA, CIO (subsequently COTR), in written notice to the contracting officer, wrongfully interfered with his discretion to exercise the option by demanding extra-contractual reporting requirements "to ensure we are getting what we paid for" and "performance measures" to justify "what value they (DKO) have added to the organization".

3.

On July 17, 2003, Eunice Kuykendall, FLRA, CIO, (subsequently COTR), in written notice to the contracting officer, abused discretion by demanding future control over payment of all invoices and expenditure of any funds under the contract.

4.

On September 30, 2003, notwithstanding written D & F from the contracting officer to exercise the first twelve-month option, the contract was extended for a shorter term ending November 30, 2003. An obligation of $18,645.00 was executed.

5.

On November 12, 2003, Yvonne Thomas, Director of Administrative Services, improperly and without authority directed DKO to implement unilateral modifications impacting administration of the contract, and interfering with DKO's independent management and control of its onsite personnel. (Mrs. Thomas was not the contracting officer or contracting officer's technical representative).

6.

On January 30, 2004, the contract was extended for a term ending April 30, 2004. An obligation of $80,000.00 was executed. Gary W. Crawford, contracting officer, executed this extension.

7.

On November 25, 2003, Eunice Kuykendall, FLRA, CIO (subsequently COTR), by written notice improperly and without authority directed the contractor "not to report to work on Monday, December 1, 2003" because the contract with FLRA had "ended." This notice was issued two days before the 60-day extension ended. Nevertheless, without explanation the contracting officer issued another extension thorough December 31, 2003, obligating an additional $9,944.00.

8.

June 10, 2004, DKO orally advised the contracting officer that the firm contemplated filing a claim under the Disputes Clause. FLRA senior management wrongfully took action against the contracting officer to obstruct the timely adjudication of such claim.

## Conclusion

The maladroit administration of this contract exemplifies FLRA's failure to exercise administrative processes necessary to ensure that the government's contractual needs were met. The agency breached its duty to foster cooperative relations with the claimant, and thus frustrated the essential purpose of the agreement. Through its failure to cooperate or foster teamwork, unity of purpose, and open communication among members of the acquisition team, the conduct of FLRA officials breached the duty of good faith in performance and fair dealing in administration.

Work wrongfully suspended for the first option year under this contract (February 1, 2004 through September 30, 2004) amounts to 1280 hours at the fully burdened rate of $57.50. DKO hereby requests equitable settlement at fifteen percent for General & Administrative, nine percent for Fee (profit), and fifteen percent for Overhead, plus accumulated interest. (1280 hours x $57.50 = $73,600.00 x 29% = $28,704.00).

Finally, to the best of my knowledge and belief it is hereby certified that this claim is made in good faith, that supporting documentation is full and accurate, and that the amount requested is an adjustment for which FLRA is liable.

# Tab 50

JANUARY 13, 2005

IN THE DISPUTE PURSUANT TO 41 U.S.C. § 605(a) INVOLVING :

DKO TECHNOLOGIES
THE CLAIMANT
FLRA CONTRACT NOS. 8095-02-035 AND 8095-03-001

AND

FEDERAL LABOR RELATIONS AUTHORITY
THE AGENCY

BEFORE :

GARY W. CRAWFORD
CONTRACTING OFFICER
THE UNITED STATES OF AMERICA

Certificate of Service:

DKO Technologies
Donald K. Ourecky, Ph.D.
January 13, 2005

EXHIBIT

P-0205

I. AUTHORITY

All claims by a contractor against the Government relating to a contract must be in writing and submitted to the Contracting Officer for a decision. 41 U.S.C. § 605. Breach of contract is a cause of action relating to the subject contracts and, therefore, determined to be within the scope of the statutory disputes process. 702 F.2d. 998 (Fed. Cir. 1983); 29 Fed. Cl. 396 (1993).

II. BACKGROUND

On December 29, 2002, following competitive negotiations, the Federal Labor Relations Authority, (hereinafter FLRA), and DKO Technologies, (hereinafter the Claimant), executed Contract No. 8095-02-035 to provide information technology services for an initial term extending January 1, 2003 through September 30, 2003. The contract provided for option years covering FY-2004, FY-2005, and FY-2006.

Gary W. Crawford, Contracting Officer, executed the agreement for the United States of America, and designated Ronald J. Kennedy, Director, Information Resources Division, contracting officer's technical representative (COTR). Mr. Kennedy was succeeded in that role by Eunice Kuykendall, Chief Information Officer (CIO), effective 11/28/2003. The exercise of options was subject to the requirements of FAR 17.207(c). Dr. Donald K. Ourecky, Vice President, DKO Technologies, executed the agreement for the Claimant.

On April 3, 2003, following competitive negotiations, FLRA and the Claimant executed Contract No. 8095-003-001 to provide information technology services for an initial term extending April 1, 2003 through October 30, 2003. The contract provided for option years covering FY-2004, FY-2005, FY-2006, and FY-2007.

On July 15, 2003, the contract was modified for $12,000.00 to provide Oracle 9i Database tasks. On December 3, 2003, the contract was again modified for $12,000 to provide additional Oracle 9i database tasks [1]

Gary W. Crawford, Contracting Officer, executed the agreement for the United States of America, and designated Eunice Kuykendall, CIO, contracting officer's technical representative (COTR). The exercise of options was subject to the requirements of FAR 17.207(c). Dr. Donald K. Ourecky, Vice President, DKO Technologies, executed the agreement for the Claimant.

Performance under the statements of work for both contracts commenced and continued satisfactorily; however, no work commenced under the second contract modification, dated December 3, 2003, because FLRA failed to deliver necessary hardware. All other tasks were timely delivered by the Claimant. Regular monthly progress reports and associated invoices were submitted by the Claimant and timely paid by FLRA.

The issues in dispute arose near the conclusion of the initial term for each contract when circumstances surrounding the exercise of the first option terms were contested. The Claimant contends that FLRA exercised its first option term under both contracts, and then wrongfully interfered with performance, suspended work, and abused official discretion. Thereafter, FLRA breached its duty of fair dealing through improper contract administration, and breached its duty of good faith through wrongful acts obstructing the claims process.

On December 13, 2004, Dr. Ourecky, representing the Claimant, submitted two properly executed claims to the Contracting Officer, and requested written final decisions. The Claimant has agreed to consolidate both claims, and certifies that statements of fact are essentially the same for the purpose of adjudication. Accordingly, this decision applies to matters in dispute relating to FLRA Contract 8095-03-001 and FLRA Contact 8095-02-035.

## III. CLAIMANT'S ALLEGATIONS

¶ First

*On July 6, 2003, the contracting officer orally informed DKO that all work under the contracts had been "satisfactory." He further stated "pending the likely determination the work should continue through next (fiscal) year" that the first options would be exercised. The contracting officer stated that input from "Kennedy and Kuykendall" (FLRA Director of Information Resources Division and FLRA CIO, respectively) would satisfy such determination. The availability of funds was not specifically mentioned, but implicitly understood as required.*

Factual Areas of Agreement & Disagreement:

During two telephone conversations in late June and early July (2003) the Contracting Officer informed the Claimant that conditions for exercising the first options were favorable. The only unsettled contingency was receipt by the Contracting Officer of the necessary written verification from Eunice Kuykendall, FLRA, Chief Information Officer (CIO) and Ronald J. Kennedy, Director of IRMA (COTR) that they both supported exercising the options. It was understood that the Agency anticipated funding under a Continuing Resolution.

The "favorable conditions" referred to by the Contracting Officer concerned his authority to exercise options only after determining that: funds were available; the requirement covered by the options satisfied an existing Government need; and the exercise of the options was the most advantageous method of fulfilling the Government's need, price and other factor considered. FAR 17.207(c)(1) through (3).

¶ Second

*On July 17, 2003, Eunice Kuykendall, FLRA, CIO (subsequently COTR), in written notice to the contracting officer, wrongfully interfered with his discretion to exercise the options by demanding extra-contractual reporting requirements "to ensure we are getting what we paid for" and "performance measures" to justify "what value they DKO) have added to the organization".*



P-0208

Factual Areas of Agreement & Disagreement:

The email cited by the Claimant is quoted out of context, and does not substantiate the assertion that CIO "wrongfully interfered with his [the Contracting Officer's ] discretion to exercise the option." Actually, the pertinent sentence in the email from CIO only reiterated her concern that quality assurance should be better documented and more systematic in future interaction with the Claimant. CIO never attempted to impose unilateral performance measures as "extra-contractual" conditions for exercising the option.

CIO unequivocally stated that work contemplated in the option year was desirable, and consistent with ongoing support for baseline operations. CIO favored exercising the option, but forcefully stated that improvement was needed in all ongoing contract administration. (Exhibit A).

On August 29, 2003, the Contracting Officer executed the required determination & Findings (D&F) authorizing the first option terms (September 1, 2003 - October 30, 2004) for Contract Nos. 8095-02-035 and 8095-03-001.(Exhibit B). The Contracting Officer forwarded electronic copies of the positive D&F to Eunice Kuykendall, Chief Information Officer; Ronald J. Kennedy, Director of Information Resource Management; and Yvonne Thomas, Director of Administrative Services, the contracting officer's immediate supervisor. (Exhibit C).

¶ Third

*On July 17, 2003, Eunice Kuykendall, FLRA, CIO, (subsequently COTR), in written notice to the contracting officer, abused discretion by demanding future control over payment of all invoices and expenditure of any funds under the contracts.*

Factual Areas of Agreement & Disagreement:

The email cited is quoted out of context by the Claimant, and does not substantiate the assertion that CIO "abused discretion by demanding future control over payment of all invoices." CIO was interacting with the Contracting Officer in her role as the agency manager responsible for overall IT strategic planning. She was not the contracting officer's representative at this time. (Kuykendall did not succeed Kennedy as COTR until November 28, 2003).

Abuse of discretion is erroneously inferred by the Claimant from fragmentary quotations extracted from one written communication between CIO and the Contracting Officer, but no evidence of breach can be adduced from any communications. (Exhibit D).

While it is legally correct that only the Contracting Officer may obligate funds under a contract, in this instance the CIO properly asserted control over the payment of invoices. Indeed, the CIO was required to personally ascertain the contractor's performance was satisfactory, and that only proper invoices were approved for payment.

¶ Fourth

*On September 29, 2003, notwithstanding the advisory notice of the positive D&F to the Contracting Officer's immediate supervisor, copies of the final D&F to the Chief Information Officer and the Director of Information Resource Management, and full compliance with regulatory certification as prescribed in FAR 17.207, the Agency's management refused to certify funds available for Fiscal Year 2004.*

Factual Areas of Agreement & Disagreement:

The D&F was properly executed based upon "the availability of funds" under a Continuing Resolution; the requirement covered by the options fulfilled an existing Government need; and the exercise of the options was the most advantageous method of fulfilling the Government's need, price and other factor considered. FAR 17.207(c)(1) through (3). The agency would be operating under a Continuing Resolution which would have funded the contract activity as an ongoing operation, not exceeding the prior year's appropriation. (Exhibit E).

¶ Fifth

*On September 30, 2003, notwithstanding written D & F from the contracting officer to exercise the first twelve-month option, Contract No. 8095-02-035 was extended for a shorter term ending November 30, 2003. An obligation of $18,645.00 was executed. On the same date, notwithstanding a written D& F from the contracting officer to exercise the first twelve-month option Contract No. 8095-03-001 was extended for a shorter term ending January 30, 2004. Stephen G. Smith, contracting officer, executed an obligation of $87.360.00.*

Factual Areas of Agreement & Disagreement:

No oral or written explanatión was given to the Claimant by FLRA to explain why the agency refused to fund the entire option year. FLRA stated only that the Claimant was required to "extend performance" under both contracts at rates provided in the base fiscal year (2003). The contracts were modified to extend the term to November 30, 2003. (Exhibit F).

¶ Sixth

*On November 12, 2003, Yvonne Thomas, Director of Administrative Services, improperly and without authority directed DKO to implement unilateral modifications impacting administration of both contracts, and interfering with DKO's independent management and control of its onsite personnel. (Mrs. Thomas was not the contracting officer or contracting officer's technical representative).*

Factual Areas of Agreement & Disagreement:

On November 12, 2003, Yvonne Thomas, Director of Administrative Services, in writing directed the Claimant to implement unilateral modifications to certain administrative aspects of the contract concerning invoicing and payment procedures. She also directed the Claimant to take specified actions with regard to scheduling the work of its subcontractors.

Thomas informed the Claimant that the Contracting Officer would be out of the office for an extended time. The Claimant assumed the aforementioned directions from Thomas were necessitated by the Contracting Officer's absence. No further explanation was provided, no collaboration was sought, and no authority for the unilateral order was stated. Although Thomas was the Contracting Officer's immediate supervisor, she was neither a contracting officer, nor contracting officer's designated representative. (Exhibit G).

¶ Seventh

*On November 25, 2003, Eunice Kuykendall, FLRA, CIO (subsequently COTR), by written notice improperly and without authority directed the contractor "not to report to work on Monday, December 1, 2003" because Contract No. 8095-02-035 with FLRA had "ended." This notice was issued two days before the 60-day extension ended. Nevertheless, without oral or written explanation the Contracting Officer issued another extension thorough December 31, 2003, obligating an additional $9,944.00.*

Factual Areas of Agreement & Disagreement:

These events occurred while the Contracting Officer remained on extended medical absence. CIO had unsuccessfully tried to secure approval from FLRA to extend the contract for the remaining term of the fiscal year. Apparently, the decision communicated to CIO was not the same decision communicated to the Contracting Officer at his residence. While the order from CIO "not to report to work on Monday" technically exceeded her authority as COTR, the clear motive for that direction was to avoid unauthorized work.

Abuse of discretion cannot be found because CIO did, in fact, email the Contracting Officer at his residence to apprize him of the situation. The Contracting Officer's subsequent email served as clarification, or ratification, as appropriate.

¶ Eighth

*On January 30, 2004, Contract No. 8095-03-001 was extended for a term ending April 30, 2004. An obligation of $80,000.00 was executed. Gary W. Crawford, Contracting Officer, executed this extension.*

Factual Areas of Agreement & Disagreement:

As with each previous "extension" to the contract, no oral written explanation was given by FLRA to explain why the agency would not fund the entire option year. FLRA ordered the Claimant to continue performance at hourly rates provided in the base year (2003), again ignoring the higher rates agreed to in the contract for this term. The contract was modified to extend the term to April 30, 2004. (Exhibit H).

¶ Ninth

*On April 30, 2004, the Contracting Officer informed the Claimant that all work under Contract No. 8095-03-001 was suspended effective that date. This action was taken ten minutes before the end of the final day of the extension. Upon request from the Claimant, neither official explanation for suspending work, nor results of the required A-76 determination were provided.*

Factual Areas of Agreement & Disagreement:

No oral or written explanation was given by FLRA to explain why all work was abruptly suspended. In fact, FLRA did not prepare the required out-sourcing determination under OMB Circular A-76. (Exhibit I).

¶ Tenth

*June 10, 2004, the Claimant orally advised the Contracting Officer that a claim and request for alternative dispute resolution (ADR) under the Disputes Clause would be filed. FLRA senior management thereupon immediately, wrongfully, and surreptitiously acted to obstruct the timely settlement of the claim.*

Factual Areas of Agreement & Disagreement:

On June 29, 2004, following a telephone conversation with the Claimant, the Contracting Officer, in writing, informed David Smith, FLRA, Acting Executive Director, that the Claimant would likely submit claims under CDA. The Contracting Officer sought guidance from Smith, provided him a recommended ARD agreement, and invited his assistance and comments. Smith did not reply to the Contracting Officer's request for guidance. [2] (Exhibit J).

On June 30, 2004, Yvonne Thomas, the Contracting Officer's immediate supervisor, clearly acting with Smith's knowledge, directed the Contracting Officer regarding claims from the Claimant, or any other contractor, "not to take any action whatsoever including not notifying the contractor of acceptance of the claim." [3] (Emphasis in the original). (Exhibit K).



P-0213

The Contracting Officer immediately objected in writing to the direction of his supervisor. Thomas orally reiterated to him that all claims submitted to the Contracting Officer for settlement must be promptly given to "the (FLRA) lawyers for handling." [4]

The Contracting Officer noted in his personal journal that this direction was identical to management acts challenged by him in a previous CDA proceeding. During that incident the Contracting Officer was "admonished" to take no action on a contemplated claim, and refer it instead to the agency's chief legal officer for disposition.

At that time, the Contracting Officer filed a written complaint with FLRA Inspector General (IG). Following an investigation, the IG found, *inter alia* , that FLRA had "obstructed" and "breached" that previous Claimant's right to settle its claim under alternative disputes resolution. (Exhibit L).

On December 27, 2003, Yvonne Thomas directed the Contracting Officer to provide her copies of both claims submitted to him by the Claimant. The Contracting Officer complied. The next day Thomas removed from the central file room all other documents relating to the claims, and secured them in her locked office. The Contracting Officer objected and made written inquiry as to reasons for such action. Thomas did not provide reasons for her actions as requested by the Contracting Officer. She retained exclusive custody of the pertinent files. [5]

IV. ANALYSIS

¶ Standard of Review

Waiver of Sovereign Immunity:

The unanimous opinion in *Franconia Associates* joins the ranks of recent Supreme Court decisions such as *Winstar* and *Mobil Oil Exploration* in holding that when the United States Government chooses to do business with its citizens, it must do so under ordinary principles of law. 240 F.3d 1358. Writing for the High Court, Justice Ruth Bader Ginsburg, stated, "Once the United States waives its immunity and does business with its citizens, it does so much as a party never cloaked with immunity." A waiver of the sovereign immunity of the United States cannot be implied, but it may be "unequivocally expressed" as here when the Agency executed contracts with the Claimant. *United States v. King*, 395 U. S. 1,4 (1969). "When the United States enters into contract relations, its rights and duties therein are governed generally by the law applicable to contracts between private individuals." *Mobil Oil Exploration & Producing Southeast, Inc. v. United States*, 530 U. S. 604, 607 (2000).

¶ Implied Duty of Good Faith and Fair Dealing

Cooperation and Good Faith:

Cooperation during contract administration is mandated by common sense and good business, but it is also a legal requirement. FLRA's right to insist upon strict contract performance and to enforce the Claimant's contractual obligations did not relive the Government from its common law duty to cooperate. Nash and Cibinic. *Administration of Government Contracts.* (pp.3).

Active Interference:

It is implicit that this contract imposed upon both parties the duty of good faith and fair dealing. This obligation extended to the performance, termination, and settlement of contract claims. FLRA's willful failure to provide alternative dispute resolution, deliberate obstruction in prosecuting the claim, and wrongful action to obstruct the dispute process violated this duty. *Restatement, Second, Contracts* 205.

Lack of Cooperation:

The Claimant's action under CDA triggered both the running of interest and the time for the Contracting Officer's final decision. Therefore it was contrary to public policy to obstruct the Claimant's statutory right to timely final decision of the Contracting Officer. FLRA had a dual responsibility to mitigate the Governments monetary liability and to respect the Claimant's right to pursue the claim. It is particularly untoward that FLRA's lack of cooperation appeared designed to keep the Claimant uninformed of the Government's intention.

FLRA's failure to timely give notice of its intent to exercise options, or extend the term of the contracts, breached its duty to cooperate. No reasonable explanation could excuse delaying notice about performance until the last hour of the final day of the extension. Failure to cooperate is found because FLRA's egregious conduct during contract performance was unreasonable. *Hardie-Tynes Mfg. Co.*, ASBCA 20582, 76-2 BCA ¶ 11,972; Oak Cliff Realty, Inc., VABCA 3232, 91-1 BCA ¶ 23,481.

The Contracting Officer was required to make "personal and independent" judgements on the merit of the claims, but he was also entitled to the opinions and advice of technical and legal advisors in arriving at final decisions under the CDA. Nash & Cibinic, *Administration of Government Contracts* , pp. 1298-1300.

FLRA failed in its duty to advise and assist the Contracting Officer in forming his independent and personal final decision. This is most apparent in Smith's failure to comment on the Contracting Officer's recommended alternative resolution agreement. This willful failure to assist the Contracting Officer substantially impaired the Claimant's due process right to meaningful alternative dispute resolution.

Abuse of Discretion:

CIO's forceful assertion of responsibility as the agency's Principle IT strategic planner may have been misapprehended by the Claimant as evidence of abused discretion. But nothing stated or apparent in the record sustains that view.



P-0216

The primary question addressed by CIO in the email dated July 17, 2003, was whether she wanted the Contracting Officer to exercise the option for continued performance. And that answer was unambiguously affirmative. The email does not document wrongful interference from the CIO with the Contracting Officer's sole discretion to take that action. It actually supports continuation of the contract, but urged improved progress reporting and quality assurance.

CIO was an active and assertive member of the Acquisition Team. But to the extent specific authority for certain actions appeared abusive or ambiguous, it must be noted that FLRA management did not always empower decision-making within her area of responsibility.

Improper Contract Administration:

It was <u>not</u> the duty of the Contracting Officer to defend the interests of the agency against assertions by the Claimant. Instead, he was supposed to impartially settle the dispute, and not act as the representative of either party, but as an impartial and unbiased judge. Nash & Cibinic. *Administration of Government Contracts*. pp. 1264. See also 116 Ct. Cl. 550, 89 F. Supp. 545, *aff'd,* 340 U.S. 898 (1950).

FLRA compromised the impartially of the claims process through its effort to obstruct the exclusive jurisdiction of the Contracting Officer. This unexplained act was more than a frolicsome lapse of judgment, it was troublesome breach of good faith.

The Claimant had the legal right to have its claim settled by the Contracting Officer. The United States Claims Court has declared that insistence on a decision by the original contractual official is not "hypertechnical or unrealistic."

That court also found "it may be that, in some instances, the 'reality' is that the designated individual merely rubber-stamps a subordinate's or superior's findings, but we must presume that the parties intend otherwise--that they desire that in the end he put his own mind to the problems and render his own decisions.



P-0217

That has been the consistent teaching of this court in the past, and we shall not sanction an erosion of responsibility by holding that it makes no difference whether or not the chosen officer does his work." (" *New York Shipbuilding Corp. v. U. S* 385 F.2d 427).

V. FINDINGS

¶ Implied Contract

FLRA's multiple, unilateral, extensions of work reaching five months into the first option term were prejudicial and unfair to the Claimant. The unexplained extensions required the Claimant to continue performing at an hourly rate lower than that agreed for work during this term. The uncertainty created by the multiple short-term "extensions" barred the Claimant from making alternative business decisions about using incumbent personnel to staff other opportunities. FLRA's self-serving administration of extensions, and its wrongful failure to communicate the Government's true requirements allowed the Claimant to only infer the actual status of options.

It is axiomatic that the Claimant could not discerned the agency's intention by probing the mind of its managers. But a reasonable contractual party in the ordinary course of business rightly intends the consequences of his actions. Without explanation, FLRA insisted on continued performance far into the term of the first option, but its unexplained mandate created uncertainty about the term of the agreement, which must be construed against the agency. The Claimant was effectively abandoned by its government partner in this contract, and left only with its own best guess about the agency's requirements.

This unsettled situation, wholly caused by FLRA's unwillingness to cooperate, supports the finding that an agreement covering the first option term existed between the parties as a tacit understanding. While these contract extensions did not exist by explicit agreement, they should be inferred as a matter of reason and justice. Cibinic and Nash, *Formation of Government Contracts* (3rd ed. 1998). chap. 2, Sec. II. Boyd, *Implied-in-Fact Contract Contract Recovery Against Government Without Express Agreement*, 21 Pub. Con. L.J.84 (1991).



P-0218

¶ Improper Suspension of Work

Beginning with negotiation of the original agreement, and through final close-out of the resulting contract, both parties were bound by the implied covenant of good faith and fair dealing. *Hughes Communications Galaxy, Inc. v. United States*, 26 Cl Ct. 123, 140 (1992). *Solar Turbines, Inc. v. United States*, 23 Cl. Ct. 142, 156 (1991).

An unique responsibility, however, devolved upon FLRA because it possessed sole discretion to exercise the options with the Claimant, thus determining the term of performance. In view of that unilateral power, the covenant of good faith and fair dealing mandated that the exercise of such discretion be reasonable. *Boone v. Kerr-McGee Oil Industries*, 217 F. 2d 63, (10th Cir. 1954).

FLRA's failure to regularly and candidly communicate with the acquisition team concerning work requirements was unreasonable. The abrupt unexplained termination of work without notice was arbitrary. Terminating satisfactory performance, ignoring the availability of proper budget authority, and neglecting required determinations under OMB Circular A-76 (thus breaching its duty to maximize the use of commercial activities) justify a finding of improper suspension of work.

¶ Breach of Good Faith

The court has found that a wrongful act which violates generally accepted notions of fair-dealing, decency, or reasonableness cannot be excused based upon its "bare legality". Moreover, when Government officials act improperly, a mirror image of the presumption of regularity exists. "That is, it is to be presumed that an action taken by Government officials that on its face appears irregular was taken for an improper motive." United States v. Roses, Inc. 706 F.2d 1563, 1567. (Fed. Cir. 1983).

This dispute alleges substantial injustice. The Claimant prevailed with persuasive evidence that Thomas, Director of Administrative Services, "wrongfully and surreptitiously acted to obstruct the timely conduct of the mediation and adjudication of the claim." That allegation is sustained by the facts, and the facts manifest official misconduct.



P-0219

Thomas was specifically identified in the claim as a party to the dispute. It was unethical for her to attempt imposition in the choice of forums for settling the issue. Thomas abused her authority, obstructed the disputes process, and frustrated the express intention of the contractual parties. Such prepossessed decision-making is at war with the principle of fairness, and adduces the presumption of breach. [6]

¶. Contract Administration

Contract administration empowers members of the acquisition team to make decisions within areas of responsibility, including selection, negotiation, and administration of contracts. In particular, the Contracting Officer must have authority to the maximum extent practical and consistent with law, to determine applicable of rules, regulations, and policies, on a specific contract. Decision-making authority and accountability should be delegated to the lowest level of the acquisition system, consistent with law. FAR 1.102-4.

The maladroit management of these contracts, however, shows that FLRA failed to exercise the fundamental administrative processes necessary to ensure that the Government's contractual needs were met. FLRA breached its duty to foster cooperative relations, and thus frustrated the essential purpose of the agreement between the Government and the Claimant.

FLRA's management should have allowed officers of the budget and procurement divisions to make funding decisions. Timely budget decisions would have avoided uncertainty about the Government's work requirements under the contract options. FLRA should have provided equitable consideration, consistent with hourly rates for the first option term. Instead, the agency inexplicably required the Claimant's continued performance at hourly rates applicable to the expired initial term.

These findings underlie the final decision of the contracting officer which follows:

VI. FINAL DECISION OF THE CONTRACTING OFFICER

¶ Equitable Adjustment

FLRA CONTRACT NO. 8095-02-035:

FLRA breached its duty under the contract by wrongfully suspending work during the first option term of this contract, February 1, 2004 through September 30, 2004, equaling 1360 hours at the fully burdened rate of $57.50.

The Claimant is granted an equitable adjustment at fourteen percent for General & Administrative, twelve percent for Fee, and nine percent for Overhead (Total 35%).[7]

❒ 1360 hours x $57.50 = $78,200.00 x 35% ....... $27,370.00.

FLRA CONTRACT NO. 8095-03-001:

FLRA breached its duty under the contract by wrongfully suspending work during the first option term of FLRA Contract No. 8095-03-001, May 1, 2004 through September 30, 2004, equaling 848 hours at the fully burdened rate of $169.00.

FLRA CONTRACT NO. 8095-03-001, Modification No. 002:

FLRA wrongfully repudiated its obligation under the contract by wrongfully suspending work in its entirety under Modification No. 002, dated 12/03/2003, $12,000.00.

The Claimant is granted equitable adjustment at fourteen percent for General & Administrative, twelve percent for Fee, and nine percent for Overhead (Total 35%).[7]

❒ 848 hours x $169.00 = $143,312.00 x 35% ....... $50,158.00.

❒ Modification No. 002 = $12,000.00 x 35% ....... $4,200.00.

❒ Total, plus interest from December 14, 2004,... $81,728.00.



P-0221

This decision is final, conclusive, and not subject to review by any forum, tribunal, or Government agency, unless appealed by you to the board of contract appeals, within ninety days after receipt of the decision, or to the Court of Federal Claims within twelve months following receipt of the decision. 41 U.S.C. 605 (b) and 41 U.S.C. 609(a).

Gary W. Crawford
Contracting Officer
The United States of America

Sworn to before me and subscribed in my presence this 13th day of January, 2005.

MARY F. PROTHRO
Notary Public
District of Columbia
My Commission Expires March 14, 2006

Notes

1. This second contract modification, executed December 3, 2003, provided that the Claimant would be paid $12,000 for delivering special Oracle 9i Database services. The Claimant engaged the assistance of a subcontractor deemed highly qualified by FLRA CIO. However, the tasks were never assigned solely because FLRA failed to make available the necessary hardware to commence work. This wholly caused government delay was never explained to the Claimant, despite numerous telephone calls to the contracting officer asking when the work could commence.

2. On March 12, 2003, Dale Cabannis, FLRA, Chairman, upon vacancy in the position of FLRA Executive Director, appointed David S. Smith, FLRA Solicitor, to perform those duties, presumably in an interim capacity. That decision authorized Smith to act as the agency's chief procurement executive. But as the incumbent FLRA Solicitor, he was also the agency's principle legal officer (duties which he continued to perform after being designated acting Executive Director), supervising the very attorneys who provided advice concerning any procurement actions directed by him, or by his subordinates, at his direction. Moreover, Smith simultaneously served as FLRA Ethics Officer, solidifying unbridled control over all aspects of procurement policy.

3. Thomas erred regarding the implementing regulations. The Federal Acquisition Streamlining Act (FASA), the Federal Acquisition Regulation (FAR), BCA decisions, and Claims Court judgments are unambiguous: the contractor's submission of a claim starts the running of interest, and the requirement for the contracting officer to issue a final decision within sixty days. Thomas erroneously opined that the agency may "accept" (thus, presumably "reject") claims properly submitted under CDA. Thomas's position apparently led the already disgruntled claimant to mistake her factual error to be deliberate confrontation. Moreover, Thomas's direction to the contracting officer concerning "acceptance" of the claim risked a "deem denied" result, if critical timing of the claim's receipt had been miscalculated. However, it is true that nothing prevented the contracting officer from requesting additional information concerning the claim, and nothing prevented the parties from engaging in negotiations, and agreeing to more time, in an effort to settle the claim.

4. Thomas later orally clarified with the contracting officer that she had inferred from the FLRA Solicitor's Office that DKO's claim may not even be valid because "no payments had been refused at the time DKO submitted their letter". Whomever may have stated the principle was mistaken about the current law. *Dawco Construction, Inc.* [illegible] *States*, 930 F.2d 872 (Fed. Cir. 1991) did require contract[illegible] submit an invoice, and then file a claim <u>after</u> the Government [illegible]

P-0223

the request for payment, or failed to act on it. However, in a decision issued on July 26, 1995, *Reflectone, Incorporated v. Dalton*, the U.S. Court of Appeals for the Federal Circuit held that the initial submission of a request for equitable adjustment under a federal contract qualifies as a "claim" under the Contract Disputes Act. The claim must merely be a written demand seeking as a matter of right the payment of money in a sum certain. There is no requirement for a pre-existing dispute over entitlement, or the amount of the claimed. The Court specifically overruled its prior decision to the contrary in *Dawco*. The only exception is for a routine request for payment that is not in dispute when submitted. For example, if the contractor submits a monthly invoice for a progress payment, that invoice is not a claim. Such an invoice can be converted to a claim only by written notice to the contracting officer, if the invoice is disputed either as to liability or amount, or is not acted upon in a reasonable time. *Reflectone* specifically holds, however, that a request for equitable adjustment is "anything but" a routine request for payment.

5. Francine Eichler, FLRA, Inspector General, investigated similar circumstances involving the contested handling of another CDA action submitted to the contracting officer. In that matter, Thomas similarly would not provide a reason to the contracting officer explaining the agency's "admonishment" to suspend alternative dispute resolution of a claim submitted to him. Eichler's investigation determined, however, that certain information which Thomas did, in fact, privately provide to the agency's senior management concerning the contracting officer was incorrect. Memorandum from Francine Eichler to Gary Crawford, July 26, 2004.

6. Joseph Schimansky, Executive Director, Federal Service Impasses Panel, evaluated testimony during the conduct of an unrelated formal grievance filed by the contracting officer against Thomas alleging "unfair discipline." Schimansky found evidence that "Thomas's decision-making process appears to reflect a degree of unfairness." The neutral fact-finder, concluded that Thomas had disciplined the contracting officer "presumably before she had an opportunity to conduct a full investigation of all the circumstances." The fact-finder's report also established that Thomas issued a letter of reprimand without ever discussing the matter with the disciplined employee. Although that decision was "technically" permissible because FLRA policy did not require discussions, Schimansky noted that "the concept of fairness, however, involves more than mere conformance with technical requirements." In the Matter of the Grievance Involving: Gary W. Crawford and Federal Labor Relations Authority, Fact-finder's Report of Findings and Recommendations, pp. 15, June 13, 2004.

7. General & Administrative (G&A) costs are any management, financial, or other expenses incurred in the overall operation of a business. G&A is expressed as a percentage of the sum of all other expenses (labor, burden, direct costs, and overhead). G&A costs typically range from 12%

P-0224

to 15%. Fee is the dollar amount over and above any allowable costs paid to a contractor. Fee for a small business is typically 12%. Overhead (OH) includes all other indirect costs that cannot be applied to a specific cost category. Overhead for a small business is typically 15%. Source: United States Army Acquisition Corps. Army Contracting Agency Independent Government Cost Estimate.

# CERTIFICATION OF APPOINTMENT

Under authority vested in the undersigned and in conformance with
Subpart 1.6 of the Federal Acquisition Regulation

**GARY CRAWFORD**

is appointed

## Contracting Officer

for the

## United States of America

Subject to the limitations contained in the Federal Acquisition Regulation and to the following:

**THIS WARRANT APPLIES TO ALL CONTRACTS NOT EXCEEDING $200,000.**

Unless sooner terminated, this appointment is effective as long as the appointee is assigned to:

**ADMINISTRATIVE SERVICES DIVISION**
*(Organization)*

**FEDERAL LABOR RELATIONS AUTHORITY**
*(Agency/Department)*

**DAVID M. SMITH, ACTING EXECUTIVE DIRECTOR**
*(Signature and Title)*

**MARCH 25, 2004**
*(Date)*

**10**
*(No.)*

P-226

152-5812

STANDARD FORM 1402 (10 83)
Prescribed by GSA - FAR (48 CFR) 53.201-1