IN THE UNITED STATES COURT OF FEDERAL CLAIMS

---

No. 05-575C
(Judge Wheeler)

---

PHILLIP J. LAVEZZO
d/b/a DKO TECHNOLOGIES,
Plaintiff,

v.

THE UNITED STATES,
Defendant.

---

# PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS OR IN THE ALTERNATIVE FOR SUMMARY JUDGMENT AND PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT

---

DAVID M. KNASEL
CLARK & COLLINS, P.C.
Market Station
108-E South Street, S.E.
Leesburg, Virginia 20175

Telephone: (703) 443-1083
Facsimile: (703) 443-1081

Attorney for Plaintiff

August 8, 2006

TABLE OF CONTENTS

INDEX TO APPENDIX . . . . . . . . . . . . . . . . . . . . iii

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . iv

PLAINTIFF'S BRIEF . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE ISSUES . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . 2

I. Procedural History . . . . . . . . . . . . . . . . . . 2

II. Statement of Facts . . . . . . . . . . . . . . . . . . 2

SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . 7

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . 8

I. This Court Possesses Subject Matter Jurisdiction to Entertain this Case. . . . 8

A. Introduction and Standard of Review. . . . . . . . . . . . . 8

B. Plaintiff Is Entitled to Maintain this Suit. . . . . . . . . . . 8

1. Plaintiff Is in Privity of Contract with the United States. . . . . 9

2. Plaintiff Was Not an "Undisclosed Principal." . . . . . . . 10

II. Plaintiff Is Entitled to Summary Judgment as a Matter of Law. . . . . . . 12

A. Introduction and Standard of Review. . . . . . . . . . . . . 12

B. The Contracting Officer Issued a Final Decision in Favor of Plaintiff. . 12

C. The Crawford Decision Was Not *Ultra Vires*. . . . . . . . . . 13

1. The Crawford Decision Was Well Within Mr. Crawford's Authority. . . . . . . . . . . . . . . 14

2. The Purported Reassignment of the DKO Claims Does Not Make the Crawford Decision Unauthorized. . . . 16

D. The Government Cannot and Did Not Rescind the Crawford Decision. . 18

1. The Crawford Decision Could Not Be Rescinded Lawfully. . . . 18

2. The Pryor Decision Was Untimely and Void. . . . . . . . 19

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . 20

INDEX TO APPENDIX

| Tab # | Description of Item |
|---|---|
| 1 | Defendant's Response to Plaintiff's First Request for Admissions |
| 2 | Deposition of Yvonne Thomas (selected pages and exhibits) |
| 3 | Deposition of David Smith (selected pages) |
| 4 | Deposition of Francine Eichler (selected pages) |
| 5 | Declaration of Gary Crawford (with selected attachments) |

# TABLE OF AUTHORITIES

I. Cases

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). . . . . . . . . . 12

*Buck Kreihs Co. v. United States*, 462 F.2d 234, 239 (5th Cir. 1972). . . . . . . . 19

*Carlson v. Secretary of the Dept. of HHS*, 23 Cl. Ct. 788, 792 (1991). . . . . . . . 19-20

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). . . . . . . . . . . . 12

*CEMS, Inc. v. United States*, 65 Fed. Cl. 473, 479 (2005). . . . . . . . . . 16, 19

*Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). . . . . . . . . . . . . . 9

*Daniels & Shanklin Constr. Co.*, ASBCA No. 37102,
89-3 BCA ¶ 22,060 (May 23, 1989). . . . . . . . . . . . . . 18

*Del-Rio Drilling Programs, Inc. v. United States*,
146 F.3d 1358, 1362 (Fed. Cir. 1998). . . . . . . . . . . . . 14

*Escote Mfg. Co. v. United States*, 144 Ct. Cl. 452 (1959). . . . . . . . . . . 10

*Jacob Schlesinger, Inc. v. United States*, 94 Ct. Cl. 289 (1941). . . . . . . . . 15-16

*John A. Johnson Contacting Corp. v. United States*,
132 Ct. Cl. 645, 132 F. Supp. 698, 705-06 (1955). . . . . . . . . . 16

*Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 701-02 (1949). . . . 14

*New York Shipbuilding Corp. v. United States*,
180 Ct. Cl. 446, 460, 385 F.2d 427 (1967). . . . . . . . . . . . . 16, 17

*Pacific Architects & Eng'rs, Inc. v. United States*,
203 Ct. Cl. 499, 518, 491 F.2d 734, 744 (1974). . . . . . . . . . . 16, 19

*Scope Enterprises, Ltd. v. United States*, 18 Cl. Ct. 875 (1989). . . . . . . . . 11

*W.L. Gore & Assocs., Inc. v. Garlock, Inc.*, 842 F.2d 1275, 1278-79 (Fed. Cir. 1988). . 9

*Ysasi v. Rivkind*, 856 F.2d 1520 (Fed. Cir. 1988). . . . . . . . . . . . . 10

II. Statutes and Regulations

41 U.S.C. § 15 . . . . . . . . . . . . . . . . . . . . . . . . . 12

Contract Disputes Act, 41 U.S.C. § 601 *et seq.* . . . . . . . . . . . . . . passim

FAR § 1.601(b) . . . . . . . . . . . . . . . . . . . . . . . . 18

FAR § 1.602-1(a) . . . . . . . . . . . . . . . . . . . . . . . 15

FAR § 1.603-3(a) . . . . . . . . . . . . . . . . . . . . . . . 15

FAR § 1.603-4 . . . . . . . . . . . . . . . . . . . . . . . . 15

FAR § 4.101 . . . . . . . . . . . . . . . . . . . . . . . . . 10

FAR § 4.102(e) . . . . . . . . . . . . . . . . . . . . . . . . 10

41 CFR § 33.210 . . . . . . . . . . . . . . . . . . . . . . . . 15

41 CFR §33.211(h) . . . . . . . . . . . . . . . . . . . . . . . 13

III. Miscellaneous

John Cibinic, Jr. & Ralph C. Nash, Jr.,
*Formation of Government Contracts* 241 (3d ed.). . . . . . . . . . . . 10

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| PHILLIP J. LAVEZZO<br>d/b/a DKO TECHNOLOGIES,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | ) | No. 05-575C<br>(Judge Wheeler) |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS OR IN THE ALTERNATIVE FOR SUMMARY JUDGMENT AND PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT**

Plaintiff, Phillip J. Lavezzo d/b/a DKO Technologies ("DKO"), by his undersigned counsel, and pursuant to RCFC 5.2 and 56, hereby submits Plaintiff's Opposition to Defendant's Motion to Dismiss or in the Alternative for Summary Judgment and Plaintiff's Cross-Motion for Summary Judgment and respectfully requests that this honorable Court deny Defendant's motion and enter summary judgment in favor of Plaintiff. As is demonstrated below, there is no genuine issue of material fact and, Plaintiff is entitled to judgment as a matter of law. In support of this opposition and cross-motion, Plaintiff relies on the pleadings, the Joint Stipulations of Fact and Joint Appendix filed by the parties, and the attached Plaintiff's Appendix.

## PLAINTIFF'S BRIEF

### STATEMENT OF THE ISSUES

I. Whether this Court possesses subject matter jurisdiction to entertain this case, because Plaintiff, a contractor who entered into a valid and binding contract with the government, is in privity of contract with the United States and is the real party in interest.

II. Whether Plaintiff is entitled to summary judgment because, as a government contractor who received a valid final decision from the contracting officer, Plaintiff is entitled to payment from the government of the amounts awarded in that final decision.

## STATEMENT OF THE CASE

### I. **Procedural History**

DKO, a sole proprietorship who entered into two (2) contracts with the Federal Labor Relations Authority ("FLRA"), filed this suit seeking payment from the government of the amounts awarded to it in a final decision issued by the contracting officer. While this case was initially filed *pro se* in the mistaken belief that it could be maintained and pursued by the Vice President and Authorized Agent of DKO, once Plaintiff retained counsel that mistake was corrected. Specifically, Plaintiff filed a motion seeking to be substituted as plaintiff as the real party in interest. Defendant did not oppose that motion, and the Court entered an order granting the motion. Following discovery, the parties filed their Joint Stipulations of Fact. This case now comes before the Court on Defendant's motion to dismiss and the parties' cross-motions for summary judgment.

### II. **Statement of the Facts**

In late 2002 or early 2003, Plaintiff began business as a sole proprietorship under the name DKO Technologies, in response to a business opportunity to contract with the Federal Labor Relations Authority ("FLRA"). JS ¶ 10.[1] Mr. Lavezzo was and is the sole owner of DKO. Mr. Lavezzo has at all times been the sole proprietor of DKO. JS ¶ 12. Mr. Lavezzo

[1] Citations to the Joint Stipulation of Facts filed by the parties on June 9, 2006, are in the form "JS ¶ ___"; citations to the tabbed exhibits contained in the Joint Appendix filed by the parties pursuant to the Court's July 31, 2006 Order, are in the form "JA Tab ___"; citations to the Plaintiff's Appendix filed herewith are in the form "PA Tab ___"; and citations to the exhibits contained in Defendant's Appendix in Support of Defendant's Motion to Dismiss or in the Alternative for Summary Judgment are in the form "DA Exh. ___."

appointed Donald K. Ourecky and Dr. Ourecky agreed to serve as the Vice President of DKO. Dr. Ourecky is the Vice President of DKO. JS ¶ 14. Dr. Ourecky was authorized by Mr. Lavezzo to, *inter alia*, execute documents, sign checks, communicate with the FLRA, and interview potential subcontractors on behalf of DKO. JS ¶ 15.

In late 2002, the FLRA solicited bids for a contract to provide staffing for a FLRA computer help desk. JS ¶ 18. DKO submitted a bid in response to the solicitation. JS ¶ 19. The contracting officer for the FLRA was Gary Crawford. JS ¶ 2. Mr. Crawford, as FLRA contracting officer, awarded the help desk contract to DKO. JS ¶ 20. On December 29, 2002, Defendant entered into Contract Number 8095-02-035, also identified upon multiple documents as Contract Number 8095-03-035, with DKO (the "Help Desk Contract"). JS ¶ 21; DA Exh. 1. The Help Desk Contract was signed on behalf of the United States by Mr. Crawford, as contracting officer, and on behalf of DKO by Dr. Ourecky. JS ¶ 22-23.

On or about February 24, 2003, the FLRA solicited bids for a contract to provide Oracle database programming services to the FLRA. JS ¶ 25. DKO submitted a bid in response to the solicitation. JS ¶ 26. Mr. Crawford, as FLRA contracting officer, awarded the Oracle contract to DKO. JS ¶ 27. On April 3, 2003, Defendant entered into Contract Number 8095-03-001 with DKO (the "Oracle Contract"). JS ¶ 28; JA Tab 28. The Oracle Contract was signed upon behalf of the United States by Mr. Crawford, as contracting officer, and on behalf of DKO by Dr. Ourecky. JS ¶ 29; JA Tab 28.

Prior to the award and thereafter during the performance of the contracts, the FLRA never requested from DKO any information specifically establishing that Dr. Ourecky was the agent of Mr. Lavezzo or that that Mr. Lavezzo was the owner of DKO. JS ¶¶ 32-33. At the time of

award, and during the performance of the contracts, Mr. Crawford believed that Dr. Ourecky was authorized to execute the contracts and modifications on behalf of DKO, although he was uncertain what type of entity DKO was or who was its owner(s). JS ¶ 35-37.

DKO successfully performed the Help Desk and Oracle Contracts. JS ¶ 39. Those contracts contained additional option terms following their intial terms. JS ¶ 24 & 30. These option terms provided for increased hourly rates over the intial terms. DA Exh. 1 & JA Tab 28. Although the FLRA never formally executed any option period, the Help Desk and Oracle Contracts were modified by the FLRA on multiple occasions to extend the performance period with additional hours to be provided at the same hourly rates as the initial terms of each contract. JS ¶ 40. The Help Desk Contract was terminated by the FLRA on January 31, 2004, and the Oracle Contract was terminated by the FLRA on April 30, 2004. JS ¶ 41 & 43.

On or about December 9, 2004, DKO submitted claims concerning the Help Desk and Oracle Contracts to Mr. Crawford as the contracting officer (the "DKO Claims"). JS ¶ 45. The DKO Claims were received in the FLRA mailroom on December 13, 2004. JS ¶ 46. In the DKO Claims, DKO asserted, *inter alia*, that the FLRA had constructively exercised option terms on the contracts. JA Tab 45. Mr. Crawford prepared and, on January 13, 2005, signed a final decision addressing the DKO Claims (the "Crawford Decision"). JS ¶ 50; JA Tab 50. In the Crawford Decision, Mr. Crawford determined, *inter alia*, that the government had breached the contracts and constructively exercised the option periods and that, therefore, DKO was entitled to payment from the government in the amount of $81,728.00. JA Tab 50.

On January 14, 2005, Mr. Crawford mailed the Crawford Decision to DKO. JS ¶ 56. DKO received the Crawford Decision on January 31, 2005. JS ¶ 64. The next day, on February

1, 2005, DKO submitted an invoice to the FLRA for amounts due pursuant to the Crawford Decision. The invoice was delivered by courier to the FLRA, and was time-stamped as received in the FLRA mailroom on February 1, 2005.[2] JS ¶ 65; JA Tab 65. The United States has not paid DKO for any of the amounts due under the Crawford Decision. JS ¶ 69.

Throughout the relevant time period, FLRA management, particularly Yvonne Thomas and David Smith[3], sought to prevent Mr. Crawford from exercising his lawful authority as contracting officer to decide claims in an independent and timely manner. These efforts took two principal forms: instructions given to Mr. Crawford in an attempt to interfere with and control the claims-handling process and the attempted reassignment of the DKO Claims to another contracting officer at another agency. These efforts were undertaken because FLRA management believed that Mr. Crawford would render a decision in favor of the contractor and adverse to the agency, which they sought to prevent. *See* PA Tab 2 (Thomas Depo. at 30-31 & 37-39) & 3 (Smith Depo. at 20-22 & 25-27).

[2] Although it does not appear to be material, it bears noting that Defendant has argued that the FLRA never received the invoice and, in support, filed a declaration by Yvonne Thomas stating that "FLRA management has interviewed every Administrative Services Division employee who had access to the mail room, and each employee states that he or she did not receive a hand-delivered invoice from Mr. Ourecky." Defendant's Motion for an RCFC 56(f) Continuance and attached Declaration of Yvonne M. Thomas, filed on August 26, 2005, at ¶ 5. That declaration is false, as is conclusively demonstrated by Defendant's Response to Plaintiff's First Request for Admissions. PA Tab 1. Consequently, the credibility of Ms. Thomas and, indeed, the FLRA as a whole is suspect. To the extent that Defendant relies solely on the testimony of Ms. Thomas or FLRA management, summary judgment for Defendant would be inappropriate as the Court should be afforded an opportunity to make credibility determinations. Nevertheless, as demonstrated in this brief, Defendant is entitled to summary judgment, notwithstanding their testimony.

[3] Ms. Thomas was, at all relevant times, the Director of the FLRA's Adminstrative Services Division, and Mr. Crawford's immediate supervisor. Mr. Smith was, at all relevant times, Acting Executive Director of the FLRA (who also served as Solicitor of the FLRA), and Ms. Thomas' immediate supervisor.

In contravention of the clear statutory commands of the Contract Disputes Act, FLRA management repeatedly instructed Mr. Crawford not to take any action on claims that might be or were filed by DKO, until he could be given guidance by FLRA management. JS ¶ 44, 47 & 53; JA Tab 44 & 53. While Mr. Smith testified that the purpose of these instructions was solely to provide the FLRA with notification that a claim had been filed, PA Tab 3 (Smith Depo. at 20-22), that claim is belied by the very text of the instructions which went well beyond notification to directing the contracting officer to ***take no action*** and the await ***guidance*** from FLRA management. JS ¶ 44, 47 & 53; JA Tab 44 & 53.

On or before January 13, 2005, Ms. Thomas and Mr. Smith decided to transfer the DKO Claims to a contracting officer at the Department of the Treasury, Bureau of Public Debt ("BPD"); Mr. Crawford, however, was not informed of that decision at that time. JS ¶ 48.[4] Further, while Mr. Smith testified that he had concerns about Mr. Crawford's ability to render an impartial decision, he further testified that those concerns were specific to another contractor (Cicatrix). PA Tab 3 (Smith Depo. at 25-27 & 39). Thus, these concerns did not justify reassigning the DKO Claims to another contracting officer.

On January 13, 2005, Ms. Thomas requested that the BPD modify the contracting agreement between the BPD and the FLRA to include a review and decision on the DKO Claims, and sent a package of documents from the FLRA contract file(s) to BPD. JS ¶ 49. It was

[4] FLRA management had previously reassigned pending claims to the BPD and otherwise interfered with Mr. Crawford's handling of claims, in the case of a contractor called Cicatrix. The Inspector General of the FLRA conducted an investigation into this matter and found that actions by FLRA management were improper. The Inspector General's report contained several recommendations which were never implemented or even responded to by FLRA management, as is evidenced by the events that transpired in this case. PA Tab 4 (Eichler Depo. at 6-12, 18-20 & 23-24).

necessary to enter into such a modification to permit the BPD contracting officer to handle the DKO Claims; but that contract modification was not executed into until January 26, 2005. PA Tab 2 (Thomas Depo. 55-57 & Exh. 14). On or about January 18, 2005, the Claims were purportedly assigned to Linda Pryor, a contracting officer with BPD. JS ¶ 59. On February 18, 2005, Ms. Pryor signed documents purporting to be written decisions addressing the claims (the "Pryor Decisions"). JS ¶ 67.

At all relevant times, Gary Crawford was a contracting officer for the FLRA. JS ¶ 2. According to his position description, Mr. Crawford had "complete authority over all phases of the contracting process" including "disposition of claims" and, although his "supervisor [was] available for consultation," he was delegated "unlimited authority to independently plan and carry out al contractual activities." JS ¶ 3; JA Tab 3. In connection with his position, Mr. Crawford had a Certification of Appointment (also known as a warrant) appointing him as a contracting officer for the United States of America. JS ¶ 4 & 7; JA Tab 7. Mr. Crawford's warrant remained in effect until terminated by Mr. Smith on April 26, 2005, in anticipation of Mr. Crawford's retirement. JS ¶ 8. Mr. Crawford retired from the FLRA on April 30, 2005. JS ¶ 9.

## SUMMARY OF ARGUMENT

As the foregoing recitation of facts make clear, FLRA management sought to prevent the contracting officer from rendering a decision on Plaintiff's claims. As is shown below, these efforts were legally ineffective. The contracting officer's decision was authorized, valid, and binding. In an attempt to avoid this plain fact, Defendant raises several arguments which essentially amount to an assertion that a government agency may control the decision-making

process on contract claims submitted against the agency. In addition to being blatantly unfair, Defendant's position is contrary to the governing law.

As is explained below, Plaintiff's motion to dismiss for lack of subject matter jurisdiction is without merit and should be denied. Privity of contract clearly exists between Plaintiff and the United States. The contracts at issue were in the name of DKO and were signed on behalf of DKO. Therefore, this Court possesses jurisdiction to entertain this case, and Plaintiff is entitled to maintain this suit.

Further, there is no genuine issue of material fact, and Plaintiff is entitled to judgment as a matter of law. The contracting officer issued a valid and binding final decision in favor of Plaintiff, and, therefore, Plaintiff is entitled to payment. Contrary to Defendant's assertion, the contracting officer's final decision was not *ultra vires* because it was well within the statutory authorization conferred upon the contracting officer – notwithstanding any instructions given to the contracting officer by his superiors or the purported reassignment of the claims to another contracting officer. Nor was the contracting officer's final decision constructively rescinded. Rather, it was "final and conclusive" as a matter of law. Accordingly, this Court should deny Defendant's motion for summary judgment, grant Plaintiff's cross-motion for summary judgment, and enter summary judgment in favor of Plaintiff.

## ARGUMENT

### I. This Court Possesses Subject Matter Jurisdiction to Entertain this Case.

#### A. Introduction and Standard of Review.

Defendant's motion to dismiss Plaintiff's complaint for lack of subject matter jurisdiction is without merit and should be denied. A complaint may only be dismissed for lack of subject matter jurisdiction if "it appears beyond doubt that the plaintiff can prove no set of facts in

support of his claim which would entitled him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). As is demonstrated below, Plaintiff can prove facts in support of his claim entitling him to relief. Therefore, this Court plainly possesses subject matter jurisdiction over this case.

B. **Plaintiff Is Entitled to Maintain this Suit.**

Defendant's sole argument in support of its motion to dismiss is the unfounded contention that there is no privity of contract between Plaintiff and the United States. Defendant's argument is without merit: Plaintiff is clearly in privity of contract with the government.[5]

1. **Plaintiff Is in Privity of Contract with the United States.**

Based upon the record before the Court, it is plain that Plaintiff is in privity of contract with the United States. The contracts themselves clearly identify "DKO Technologies" as the contracting party, and it is undisputed that DKO Technologies is a sole proprietorship owned by Plaintiff. Therefore, privity of contract exists between Plaintiff and the government.

[5] Initially, Defendant's position is contrary to the position it took earlier in the case as well as to the ruling of the Court on Plaintiff's motion to substitute the real party in interest. When this case was being pursued *pro se*, Defendant took the position that DKO, the party to the contracts at issue, was a corporation and could not, therefore, proceed *pro se*. *See* Transcript of Hearing on December 21, 2005. In response, Plaintiff retained counsel, presented evidence that DKO was in fact a sole proprietorship, and moved to substitute the real party in interest, Phillip J. Lavezzo d/b/a DKO Technologies, as the plaintiff in this case. Defendant did not oppose this motion. The Court granted the motion ruling that Phillip J. Lavezzo d/b/a DKO Technologies was the real party in interest – i.e., the party to the contracts at issue. Defendant now attempts to argue that Dr. Ourecky individually, and not Plaintiff, contracted with the government by signing the subject contracts. This argument is contradicted by its earlier position in this case. If Dr. Ourecky entered into the relevant contracts in his own name, then he would have been permitted to proceed *pro se*. By taking the position that Dr. Ourecky was not entitled to maintain this suit *pro se*, Defendant recognized and conceded the obvious fact that the contracts were entered into by, and signed by Dr. Ourecky on behalf of, DKO Technologies (which it argued was a corporation). Defendant cannot now take a contrary position simply because it suits its purposes in its motion to dismiss. More importantly, the Court's ruling that Plaintiff is the real party in interest is binding as the law of this case. That ruling precludes a finding that Plaintiff is not in privity with the United States. *See W.L. Gore & Assocs., Inc. v. Garlock, Inc.*, 842 F.2d 1275, 1278-79 (Fed. Cir. 1988).

In the face of this unmistakable fact, Defendant attempts to confuse the issue by pointing to purported irregularities in the signature of the contracts. Defendant's argument in this regard is completely unavailing.

Initially, it should be sufficient to dispose of Defendant's argument to note that ***the government*** prepared the contract documents. Consequently, Defendant had the duty to ensure that any technicalities were observed and must bear responsibility for any failure to do so. Indeed, the subpart of the Federal Acquisition Regulation (FAR) upon which Defendant relies specifically provides that "[t]he ***contracting officer shall ensure*** that the signer(s) have authority to bind the contractor (see specific requirements in 4.102 of this subpart [addressing format of signatures, etc.])." FAR § 4.101 (emphasis added). Importantly, the FAR does not provide for any consequence if the signature requirements are not met. Defendant has not cited (because it cannot) to any authority that would be permit the government to avoid its obligations based upon its own failure to comply with the technical requirements of the FAR. Indeed, it is well-settled that a government contract need not even be signed at all. John Cibinic, Jr. & Ralph C. Nash, Jr., *Formation of Government Contracts* 241 (3d ed.) (citing *Escote Mfg. Co. v. United States*, 144 Ct. Cl. 452 (1959)). *See also Ysasi v. Rivkind*, 856 F.2d 1520 (Fed. Cir. 1988) (holding that the Court of Federal Claims has jurisdiction over claims based upon implied-in-fact contracts).

2. **Plaintiff Was Not an "Undisclosed Principal."**

Moreover, as Defendant acknowledges, a contract may be signed by an agent on behalf of his principal. FAR § 4.102(e). This is precisely what happened in the instant case: the contracts were signed on behalf of DKO by Dr. Ourecky as the authorized agent of DKO. JS ¶ 15, 23 & 30. DKO was not, however, an "undisclosed principal." The bid proposals and contracts were in the name of DKO. JA Tab 23 & 30. The contracting officer knew that he was contracting with

DKO, although he was unsure of what type of entity it was. JS ¶ 35-36. Importantly, neither the contracting officer nor anyone else at the FLRA inquired as to what type of business entity DKO was, or who its owner was, or about Dr. Ourecky's authority to sign the contracts on behalf of DKO. JS ¶ 32-33. Under FAR § 4.102(e), an agent's authorization to bind the principal need only "be established by evidence satisfactory to the contracting officer." Obviously, Mr. Crawford, the contracting officer, was satisfied the Dr. Ourecky was authorized to sign the contracts on behalf of DKO, JS ¶ 37, and, in any event, it is incumbent on the contracting officer (the government's agent) to request any additional information needed to satisfy himself of this fact. Thus, at all times, the government intended to and knew that it was contracting with DKO, and the government bears the responsibility for its failure to inquire further into the ownership of DKO and/or Dr. Ourecky's authority to bind DKO.

The sole case relied upon by Defendant, *Scope Enterprises, Ltd. v. United States*, 18 Cl. Ct. 875 (1989), is completely inapposite. In that case, as part of a government sting operation, certain individuals entered into an "agreement" with government agents to purchase arms for illegal export. The plaintiff corporation alleged that the individuals were its agents and that it was, therefore, entitled to the return of the money paid in the arms transaction. The court found that the government agents were unaware of the corporation's existence and that the individuals never intimated that they were acting for anyone but themselves individually. On these unusual facts, the court held that there was no privity of contract between the plaintiff corporation and the government. *Id.* at 880.

The instant case is readily distinguishable. Here, the government was aware of DKO: the contracts were in the name of DKO. Dr. Ourecky purported to act, and signed the contracts, on behalf of DKO. Therefore, unlike the plaintiff in *Scope*, Plaintiff was not an undisclosed

principal. In this connection, Defendant's citation to the Anti-Assignment Act, 41 U.S.C. § 15, is telling. Defendant cites this statute for the principle that an agent may not assign a government contract to an undisclosed principal. That principle has no application here. Dr. Ourecky did not enter into the contracts in his own name and later attempt to assign them to a principal. Here, the contracts were entered into by and in the name of DKO from the beginning. Therefore, there is no need for any assignment that might violate the Anti-Assignment Act. As this Court confirmed in its earlier ruling, Plaintiff was not an undisclosed principal, but rather has been the real party in interest all along.

Accordingly, privity of contract exists between Plaintiff and the United States, and this Court possesses subject matter jurisdiction over this case. Defendant's attempt to use the government's own failures (to format the contract signatures correctly, to inquire into the ownership of DKO, etc.) to avoid its legal and contractual obligations and to deny Plaintiff a hearing on the merits before this Court is both wholly without merit and patently unfair. This Court should not countenance Defendant's meritless arguments, but rather should deny Defendant's motion to dismiss for lack of jurisdiction.

## II. Plaintiff Is Entitled to Summary Judgment as a Matter of Law.

### A. Introduction and Standard of Review.

Plaintiff is entitled to summary judgment in his favor, against Defendant. It is well-settled that summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. RCFC 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). As is demonstrated below, there are no genuine issues of material fact, and Plaintiff is

entitled to judgment as a matter of law. Accordingly, Plaintiff's motion for summary judgment should be granted, and Defendant's denied.

B. **The Contracting Officer Issued a Final Decision in Favor of Plaintiff.**

The Contract Disputes Act (CDA), 41 U.S.C. § 601 *et seq.*, provides a comprehensive framework for the resolution of claims under government contracts. Under the CDA, a contractor must submit all claims relating "to a contract to the contracting officer for a decision" and "[t]he contracting officer shall issue his decision[]." 41 U.S.C. § 605(a). The CDA confers exclusive and extensive authority on the contracting officer for handling and deciding claims. When, as here, a claim is for less than $100,000, the "contracting officer shall issue a decision . . . within sixty days." 41 U.S.C. § 605(c)(1).

Moreover, once the contracting officer has issued a decision on a claim, that decision "shall be ***final and conclusive and not subject to review*** by any forum, tribunal, or Government agency, unless an appeal or suit is timely commenced as authorized by [the CDA]." 41 U.S.C. § 605(b) (emphasis added). Importantly, the CDA does not provide any right or procedure for the government to appeal or otherwise challenge a contracting officer's decision. *See* 41 U.S.C. §§ 606 & 609 (providing only that a ***contractor*** may appeal decision to board of contract appeal or file suit in the Court of Federal Claims). Therefore, once a contracting officer has issued a final decision determining that a contractor is entitled to an amount from the government, the government is required by law to pay that amount promptly to the contractor. 41 CFR §33.211(h) ("The amount determined payable under the decision, less any portion already paid, should be paid, if otherwise proper, without awaiting contractor action concerning appeal.").

In the instant case, the undisputed facts show that: DKO submitted claims to the contracting officer, JS ¶ 45 & JA Tab 45; the contracting officer considered those claims and

issued a decision – the Crawford Decision, JS ¶ 50 & JA Tab 50; the contracting officer mailed his decision to DKO, JS ¶ 54; and DKO received the contracting officer's decision. JS ¶ 64. Since there was no appeal, the Crawford Decision is "final and conclusive and not subject to review." 41 U.S.C. § 605(b). Thus, Plaintiff has a clear legal entitlement, pursuant to the CDA and its implementing regulations, to payment of the amounts determined payable under the Crawford Decision. As demonstrated below, all of Defendant's arguments to the contrary are without merit. Accordingly, there is no genuine issue of material fact, and Plaintiff is entitled to judgment as a matter of law.

### C. The Crawford Decision Was Not *Ultra Vires*.

In an effort to avoid the final and conclusive effect of the Crawford Decision and deny Plaintiff the amounts determined to be owed to him, Defendant contends that the Crawford Decision was *ultra vires*. This contention lacks any merit. In order for the act of a government agent to be *ultra vires*, it must be beyond the scope of his statutory authority. *See Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 701-02 (1949). Mere failure to follow the instructions of a manager or superior is not enough. Indeed, even illegal conduct may be within the scope of the agent's statutory authority (even though no government agent is authorized to violate the law) so as to preclude a finding that the act was *ultra vires*. *See id.*; *Del-Rio Drilling Programs, Inc. v. United States*, 146 F.3d 1358, 1362 (Fed. Cir. 1998). Especially in light of this extreme threshold, it is clear that the Crawford Decision was not *ultra vires*.

#### 1. The Crawford Decision Was Well Within Mr. Crawford's Authority.

Under the CDA and implementing regulations, a contracting officer has extensive authority and broad discretion for handling and deciding claims. Under the FAR, "contracting officers have authority to enter into, administer, or terminate contracts and make related

determinations and findings." FAR § 1.602-1(a). And, specifically, with respect to claims, "contracting officers are authorized, within any specific limitations of their warrants, to decide or resolve all claims arising under or relating to a contract subject to the [CDA]." 41 CFR § 33.210.

As the applicable regulations make clear, contracting officers obtain their authority by being appointed as contracting officers in writing, through a Certificate of Appointment (also known as a warrant). FAR § 1.603-3(a). Furthermore, a contracting officer's warrant "shall state any limitations on the scope of authority to be exercised, other than limitations contained in applicable law or regulation." *Id.* Therefore, the only limitations on a contracting officer's authority are those contained in law or regulation or stated on his warrant. Moreover, while a contracting officer's appointment may be terminated, "[n]o termination shall operate retroactively." FAR § 1.603-4.

Here, it is undisputed that Mr. Crawford was appointed as a Contracting Officer of the United States, and that his warrant remained in effect at all relevant times until it was terminated at the time of his retirement. JS ¶ 7-8. The only limitation on Mr. Crawford's authority contained in his warrant, was a limitation to matters less than $200,000, far more than the amount at issue here. JA Tab 7. Defendant fails to (because it cannot) point to any limitation in Mr. Crawford's warrant or in any law or regulation that Mr. Crawford exceeded in issuing the Crawford Decision. Therefore, as a matter of law, Mr. Crawford possessed the authority (and the duty) to issue his decision on the DKO Claims.

The authorities cited by Defendant all stand for the uncontroversial proposition that a contracting officer may permissibly seek input and advice from others, while still rendering an independent decision of his own, as he is required to do by law. *See, e.g.*, *Jacob Schlesinger,*

*Inc. v. United States*, 94 Ct. Cl. 289 (1941). Defendant has not cited any case holding that the mere failure to follow the instructions of a supervisor renders the acts of the contracting officer *ultra vires*. As explained above, mere failure to follow a superior's instructions do not make an act *ultra vires*. This is especially true as applied to a contracting officer because it is well-settled that a contracting officer must "put his own mind to the problems and render his own decision." *Pacific Architects & Eng'rs, Inc. v. United States*, 203 Ct. Cl. 499, 518, 491 F.2d 734, 744 (1974) (quoting *New York Shipbuilding Corp. v. United States*, 180 Ct. Cl. 446, 460, 385 F.2d 427 (1967)); *CEMS, Inc. v. United States*, 65 Fed. Cl. 473, 479 (2005). Moreover, a contracting officer may not defer to his superior in a decision. *John A. Johnson Contacting Corp. v. United States*, 132 Ct. Cl. 645, 132 F. Supp. 698, 705-06 (1955). Because Mr. Crawford was acting well within the scope of his statutory authority, the Crawford Decision was authorized and not *ultra vires*.[6]

### 2. The Purported Reassignment of the DKO Claims Does Not Make the Crawford Decision Unauthorized.

Next, Defendant asserts that the DKO Claims were reassigned to another contracting officer, depriving Mr. Crawford of the authority to issue his decision. This argument too must fail. Plaintiff does not dispute that the government can in an appropriate case (e.g., the

---

[6] Indeed, the instructions from his superiors that Mr. Crawford supposedly violated were part of an improper attempt by FLRA management to control the handling of claims and direct the decision-making process of the contracting officer. While Defendant alleges that FLRA management was concerned about the contracting officer's ability to do his job, there are lawful means to deal with legitimate concerns. The agency head could limit the contracting officers authority through an express limitation on his warrant or terminate his appointment as a contracting officer. FAR §§ 1.603-3 & 1.603-4 (e.g., permitting termination for unsatisfactory performance). Neither of these lawful measures was taken in this case. The FLRA's efforts to subvert the contracting officer's role in resolving claims were improper. Nevertheless, this Court need not address the propriety of FLRA management's instruction to Mr. Crawford because, even if they were proper, the Crawford Decision was not *ultra vires*, and Plaintiff is entitled to judgment as a matter of law.

retirement or death of a contracting officer) reassign pending contract claims to another contracting officer. Ironically, in the only case cited by Defendant, *New York Shipbuilding*, *supra*, the court held that the government could ***not*** unilaterally substitute another official to decide contract claims. There is no authority for the proposition that a government agency may at any time, for any reason unilaterally reassign a pending contract claim to another contracting officer and thereby deprive the first contracting officer of authority to decide the claim.[7]

Moreover, even if one were to accept Defendant's outlandish argument, such a principle would have no application here because the undisputed facts show the DKO Claims were not reassigned prior to the issuance of the Crawford Decision. The Crawford Decision was issued on January 14, 2005. While FLRA management may have decided, on January 13, 2005, that they wished to reassign the DKO Claims, JS ¶ 48, any actual reassignment was not accomplished until after the Crawford Decision was issued.

First, while FLRA management sought to reassign the DKO Claims to the BPD, the actual contracting officer at BPD was not assigned to handle the claims until January 18, 2005, at the earliest. JS ¶ 59. Because only a contracting officer is legally authorized to decide a contractor's claim, 41 U.S.C. § 605, claims cannot be assigned to an agency, as a whole, for decision, but must be assigned to a contracting officer. Therefore, any reassignment of the DKO Claims only occurred when they were assigned to a specific contracting officer. As shown in an e-mail as well as Yvonne Thomas' deposition testimony, Linda Pryor was designated as the contracting officer on January 18, 2005. PA Tab 2 (Thomas Depo. at 64 & Exh. 19). This is the

---

[7] This is especially true where, as here, the government agency in question sought to reassign the claims because it believed that the contracting officer would render a decision unfavorable to the agency. Again, however, this Court need not address the propriety of FLRA management's attempt to reassign the DKO Claims to another contracting officer because, even if it was not improper, Mr. Crawford was not deprived of his authority to issue the Crawford Decision, and Plaintiff is entitled to judgment as a matter of law.

earliest that a reassignment of the DKO Claims could have been effective. This is especially true because Mr. Crawford, the existing contracting officer, was not advised of the purported reassignment prior to issuing his decision. JS ¶ 48.

Second, while contracting functions may be assigned from one agency to another, it must be accomplished by the ***mutual agreement*** of the relevant ***agency heads***. FAR § 1.601(b). There is no evidence in the record that the head of the BPD agreed to the reassignment of the DKO Claims prior to the issuance of the Crawford Decision on January 14, 2005. Indeed, Yvonne Thomas testified that it was necessary to enter into a modification to an agreement between the FLRA and the BPD to permit the BPD contracting officer to handle the DKO Claims. PA Tab 2 (Thomas Depo. at 55-56); DA Exh. 3 & 4. This contract modification was not signed until January 26, 2005. PA Tab 2 (Thomas Depo. at 55-57 & Exh. 14). Therefore, as a matter of law, the purported reassignment of the DKO Claims could not have been effective until January 26, 2005, well after the issuance of the Crawford Decision. Accordingly, Mr. Crawford had the lawful authority to issue the Crawford Decision, and that decision was not *ultra vires*.

D. **The Government Cannot and Did Not Rescind the Crawford Decision.**

Finally, Defendant contends that the Crawford Decision was constructively rescinded by the subsequent issuance of purported final decisions by Ms. Pryor – the Pryor Decision. This argument fails for at least two reasons.

1. **The Crawford Decision Could Not Be Rescinded Lawfully.**

First, the authorities relied upon by Defendant stand for the proposition that a contracting officer may rescind his own final decision to correct an erroneous decision. *See, e.g.*, *Daniels & Shanklin Constr. Co.*, ASBCA No. 37102, 89-3 BCA ¶ 22,060 (May 23, 1989). They do not

hold that a contracting officer's final decision can be rescinded by the management of an agency or by another contracting officer selected by the agency management. This common sense distinction makes perfect sense in light of a contracting officer's duty to "put his ***own*** mind to the problems and render his ***own*** decision." *Pacific Architects*, 203 Ct. Cl. at 518 (emphasis added); *CEMS*, 65 Fed. Cl. at 479. In the cases cited by Defendant, rescission furthers the objective of having the contracting officer render a decision using his own independent judgment. In the instant case, Defendant seeks to use a purported constructive rescission to displace the contracting officer's independent judgment and obtain another (more favorable) decision from another decision-maker. There is no authority that would permit that type of "rescission," and Defendant's authorities do not even come close to so holding.

If one were to accept Defendant's argument, the government could rescind a contracting officer's final decision any time it received an adverse ruling. Not only would such a result be grossly unfair, it would directly contravene the statutory framework enacted by Congress. As described above, the CDA provides that: a contracting officer shall decide claims submitted to him; the contracting officer's decision is final and conclusive and not subject to review by any government agency, unless appealed; and the government has no right of appeal from a final decision. 41 U.S.C. §§ 605, 606 & 609. Permitting a final decision to be rescinded in a case such as this one would be tantamount to providing the government with the right to appeal a contracting officer's decision where Congress elected not to confer such a right. What is worse, it would be a right of appeal to the government's hand-picked decision-maker.

It is not the proper function of this or any court to radically upset the legislative judgments embodied in the CDA and substitute its own judgments in their place. *See Buck Kreihs Co. v. United States*, 462 F.2d 234, 239 (5th Cir. 1972); *Carlson v. Secretary of the Dept.*

*of HHS*, 23 Cl. Ct. 788, 792 (1991). This is what Defendant requests of this Court, and this Court should flatly reject Defendant's entreaty. Accordingly, the Crawford Decision was not, and could not lawfully be, constructively rescinded as contended by Defendant.

2. **The Pryor Decision Was Untimely and Void.**

Second, even assuming, *arguendo*, that a contracting officer's final decision could be rescinded in the manner suggested by Defendant, the undisputed facts show that the Pryor Decision was untimely and, therefore, void. Under the CDA, a contracting officer must issue a decision on a claim for $100,000 or less (like the DKO Claims) within 60 days. 41 U.S.C. § 605(c)(1). The DKO Claims were submitted on December 9, 2004, and received in the FLRA mailroom on December 13, 2004. JS ¶ 45-46; JA Tab 45. The Pryor Decision was issued on February 18, 2005, more than 60 days after the DKO Claims were received by the FLRA. JS ¶ 67. Thus, the Pryor Decision was clearly untimely. As such, the Pryor Decision was void and could not, therefore, have effected a rescission of the earlier, timely Crawford Decision. To permit a rescission of the Crawford Decision under these circumstances would make a mockery of CDA's provisions governing the disposition of contract claims by contracting officers. For this additional reason, the Crawford Decision was not rescinded.

## CONCLUSION

In sum, Plaintiff is legally entitled to payment of the amounts determined to be owed to it by the government in a valid and binding contracting officer's final decision. To avoid this straightforward fact, Defendant has raised several arguments, each of which is without merit.

- Privity of contract clearly exists between Plaintiff and the United States and, thus, this Court does have subject matter jurisdiction to hear this case.

- The Crawford Decision was not an *ultra vires* act because Crawford acted well within the authority conferred upon him by his contracting officer's warrant as well as by law and regulation, even if he failed to follow instruction from his superiors; nor did the purported reassignment of the DKO Claims deprive Mr. Crawford of the authority to issue his Decision.

- The Crawford Decision was not, and could not lawfully be, rescinded by the Pryor Decision.

This Court can and should reject Defendant's position in its entirety. To accept Defendant's position would mean that a government agency could reassign claims submitted by a contractor to a hand-picked decision-maker, any time it feared that the designated contracting officer would render a decision adverse to the agency (or for any other improper purpose), or after an adverse decision was rendered, in order to have that decision rescinded.[8] Such an absurd and obviously unjust result should not be countenanced by this Court. As demonstrated above, there are no genuine issues of material fact, and Plaintiff is entitled to judgment as a matter of law.

WHEREFORE, for all of the reasons explicated above, Plaintiff respectfully requests that this honorable Court deny Defendant's motion to dismiss or in the alternative for summary judgment, grant Plaintiff's motion for summary judgment, and enter judgment in favor of Plaintiff and against Defendant in the amount of $81,728.00, plus interest and attorneys' fees and costs.

[8] Indeed, the record convincingly suggests that this is precisely what the FLRA attempted to do in this case.

Respectfully submitted,

_____/s/ David M. Knasel_____

David M. Knasel, Esq.
Clark & Collins, P.C.
Market Station
108-E South Street, S.E.
Leesburg, Virginia 20175
Telephone: (703) 443-1083
Facsimile: (703) 443-1081

Counsel for Plaintiff

**CERTIFICATE OF SERVICE**

I hereby certify that on the 8th day of August, 2006, a true and correct copy of the foregoing was filed electronically through the U.S. Court of Federal Claims Case Management - Electronic Case Files system. I understand that notice of this filing will be sent to all parties/counsel of record by the Court's electronic filing system and that they may access this filing through that system.

_____/s/ David M. Knasel_____