IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| PHILLIP J. LAVEZZO<br>d/b/a DKO TECHNOLOGIES,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 05-575C<br>(Judge Wheeler) |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S PROPOSED FINDINGS OF UNCONTROVERTED FACT**

Plaintiff, Phillip J. Lavezzo d/b/a DKO Technologies, by his undersigned counsel, and pursuant to RCFC 56(h), hereby submits his Response to Defendant's Proposed Findings of Uncontroverted Fact. Plaintiff's agreement to any fact set forth below is for purposes of the parties' cross-motions for summary judgment only, and, by so agreeing, Plaintiff does not concede that any proposed finding is material or relevant or is true for any other purpose.

1. Mr. Lavezzo and FLRA contracting officer Mr. Crawford had known each other through a personal friendship for approximately 10 or 12 years. DA 25-26, 33-34.

AGREE.

2. Mr. Lavezzo named his sole proprietorship DKO Technologies to allow Mr. Ourecky to be the public figure for all communication with the FLRA. DA 35-36.

DISAGREE because the cited testimony does not support this. DA 35-36.

PROPOSED REVISION: Mr. Lavezzo granted authority to Dr. Ourecky to be the public figure for all communication with the FLRA. DA 35-36.

3. Mr. Lavezzo also owns a landscaping business and is involved with an antiques business. DA 32-33.

AGREE.

4. Mr. Ourecky, holds a Ph.D. in genetics, with a minor in horticulture, and also owns an antique business. DA 45-47.

AGREE.

5. Neither Mr. Lavezzo nor Mr. Ourecky possess any training in computer programming or database design. DA 32, 44-47.

DISAGREE to the extent training includes informal training, on the job experience and the like. DA 32, 44-47.

PROPOSED REVISION: Neither Mr. Lavezzo nor Mr. Ourecky possess any formal training in computer programming or database design. DA 32, 44-47.

6. Mr. Ourecky's bid did not include any information indicating that Mr. Lavezzo was his principal. DA 6-20.

DISAGREE because the bids were those of and submitted in the name of DKO Technologies and it is undisputed that Mr. Lavezzo is the sole proprietor of DKO. DA 6-20; JS ¶ 12.

PROPOSED REVISION: DKO's bid did not specifically state that Mr. Lavezzo was the sole proprietor of DKO. DA 6-20.

7. The Help Desk Contract was a labor hours contract pursuant to FAR § 16.602, in which the FLRA provided all materials. DA 10.

DISAGREE to the extent that it implies that the FLRA did in fact provide all materials. DA 10.

PROPOSED REVISION: The Help Desk Contract was a labor hours contract pursuant to FAR § 16.602, in which the FLRA was supposed to provide all materials. DA 10.

8. The Help Desk Contract did not provide for a minimum number of hours. DA 6-20.

AGREE.

9. Mr. Ourecky's bid for the Oracle contract did not identify Mr. Lavezzo as his principal. JA Tab 28.

DISAGREE because the bids were those of and submitted in the name of DKO Technologies and it is undisputed that Mr. Lavezzo is the sole proprietor of DKO. JA Tab 28; JS ¶ 12.

PROPOSED REVISION: DKO's bid did not specifically state that Mr. Lavezzo was the sole proprietor of DKO. JA Tab 28.

10. The Oracle Contract was also a labor hours contract, with no guaranteed minimum number of hours. JA Tab 28, p. 13.

AGREE.

11. There is no written document establishing that Mr. Ourecky was Mr. Lavezzo's agent, or granting Mr. Ourecky a power of attorney. DA 37-38.

DISAGREE because the cited testimony does not support the proposed finding. Mr. Lavezzo specifically testified that there might be such documents, and they were in fact provided to the government after his deposition. DA 37-38.

PROPOSED REVISION: Mr. Lavezzo never executed a formal power of attorney document naming Dr. Ourecky as his attorney-in-fact. DA 37-38.

12. Mr. Ourecky simply provided Mr. Lavezzo's Social Security Number to the FLRA, and not Mr. Lavezzo's name . DA 39.

AGREE.

13. In response to concerns that Mr. Crawford would not act in a fair and equitable manner in response to claims submitted by contractors, FLRA Director of the Administrative Services Division, Ms. Yvonne Thomas provided written orders, dated March 24, 2004, to Mr. Crawford requiring him to notify her in writing when he received a claim, and to take no further action until receiving further direction. DA 21, 57, 58.

DISAGREE with the characterization of the motives behind this action. The cited testimony refers to an earlier claim by another contractor, not to DKO. DA 57-58. Further, the document itself states a different reason: "to ensure . . . communications" regarding contracting matters. DA 21. Moreover, the evidence as a whole suggests these instructions were undertaken because FLRA management believed that Mr. Crawford would render a decision in favor of the contractor and adverse to the agency, which they sought to prevent. *See* PA Tab 2 (Thomas Depo. at 30-31 & 37-39) & 3 (Smith Depo. at 20-22 & 25-27).

PROPOSED REVISION: FLRA Director of the Administrative Services Division, Ms. Yvonne Thomas provided written orders, dated March 24, 2004, to Mr. Crawford requiring him to notify her in writing when he received a claim, and to take no further action until receiving further direction. DA 21. FLRA management believed that Mr. Crawford would render a decision in favor of the contractor and adverse to the agency, which they sought to prevent. *See* PA Tab 2 (Thomas Depo. at 30-31 & 37-39) & 3 (Smith Depo. at 20-22 & 25-27).

14. The claims were submitted by Donald Ourecky and, once again, do not reference the existence of Mr. Lavezzo. JA Tab 45.

DISAGREE because the claims were those of and submitted in the name of DKO Technologies and it is undisputed that Mr. Lavezzo is the sole proprietor of DKO. JA Tab 45.

PROPOSED REVISION: DKO's claims did not specifically state that Mr. Lavezzo was the sole proprietor of DKO. JA Tab 45.

15. Ms. Thomas testified that she was not informed of the DKO claims until January 10, 2005. DA 59.

DISAGREE because Ms. Thomas' testimony is contradicted by the declaration of Mr. Crawford. PA Tab 5 (Crawford Decl. at ¶ 20 & Exh. IV-V).

PROPOSED REVISION: None.

16. FLRA Solicitor and Acting Executive Director David Smith did not learn of the claims until several weeks after they were filed. DA 51.

AGREE.

17. Mr. Smith testified that the requirement that Mr. Crawford not take any action with regard to the DKO claims was to allow the FLRA to determine the basis for the claim, and that the steps after notification would be determined at that point. DA 49-51.

DISAGREE because his testimony and other evidence contradicts this and/or demonstrates that this was not the sole reason. DA 49-51; JS ¶ 44, 47 & 53; JA Tab 44 & 53.

PROPOSED REVISION: While Mr. Smith testified that the purpose of these instructions was solely to provide the FLRA with notification that a claim had been filed, PA Tab 3 (Smith Depo. at 20-22), that claim is belied by the very text of the instructions which went well beyond notification to directing the contracting officer to ***take no action*** and the await ***guidance*** from FLRA management. JS ¶ 44, 47 & 53; JA Tab 44 & 53. Mr. Smith was

concerned that the FLRA would be liable for paying contractor claims and did not want Mr. Crawford to take any action without being directed to do so by FLRA management. DA 49-51.

18. However, the FLRA determined to reassign the DKO claim to the BPD based upon Mr. Crawford's failure to notify management of the DKO claim in a timely manner and because of problems with Mr. Crawford's resolution of other claims. DA 52.

DISAGREE because his testimony and other evidence contradicts this and/or demonstrates that these were not the only reasons. DA 52-54; PA Tab 3 (Smith Depo. at 25-27 & 39).

PROPOSED REVISION: Mr. Smith testified that the decision to reassign the claims to the BPD was based upon Mr. Crawford having stated that he felt that a contractor had not been treated fairly and if given an opportunity he would render a decision adverse to the FLRA; however, Mr. Smith later contradicted himself, testifying that the comment at issue was specific to that particular contractor (Cicatrix) and did not impact Mr. Crawford's other responsibilities. PA Tab 3 (Smith Depo. at 25-27 & 39).

19. Ms. Thomas' e-mail to the BPD was sent at 1:09 p.m., and the BPD confirmed the agreement at 1:15 p.m. DA 22, 23.

DISAGREE because the reassignment did not occur until later, once the agreement modification was signed on January 26, 2005. PA Tab 2 (Thomas Depo. 55-57 & Exh. 14).

PROPOSED REVISIONS: On January 13, 2005, Ms. Thomas requested that the BPD modify the contracting agreement between the BPD and the FLRA to include a review and decision on the DKO Claims, and sent a package of documents from the FLRA contract file(s) to BPD. JS ¶ 49. It was necessary to enter into such a modification to permit the BPD contracting

officer to handle the DKO Claims; but that contract modification was not executed into until January 26, 2005. PA Tab 2 (Thomas Depo. 55-57 & Exh. 14). On or about January 18, 2005, the Claims were purportedly assigned to Linda Pryor, a contracting officer with BPD. JS ¶ 59.

20. On the afternoon of January 13, 2006, Mr. Crawford had consulted with his former supervisor, Mr. Dan Funkhowser, at the Federal Mediation and Conciliation Service ("FMCS"). DA 27.

AGREE.

21. After meeting with Mr. Funkhowser, Mr. Crawford signed the purported COFD, before Ms. Prothro, and returned to the FLRA late in the evening, after the FLRA mailroom had closed. DA 28, 30.

AGREE.

22. Mr. Crawford was aware, at the time that he signed the purported COFD, that he had been instructed not take any action with the DKO claim, but he believed these instructions to be invalid. DA 29.

AGREE.

23. In his purported COFD, Mr. Crawford found that the FLRA had wrongly suspended work upon an implied-in-fact contract, and that the FLRA had violated it duty of good faith and fair dealing. JA Tab 50 at P-0218-20.

AGREE.

24. Mr. Crawford determined that DKO was entitled to general & administrative expenses, fee and overhead costs totaling 35% of the unperformed portion of the implied-in-fact contracts, totaling $81, 728, plus CDA interest from receipt of the claims. JA Tab 50 at P-0221.

AGREE.

25. In an e-mail, which was sent at 5:07 p.m., Mr. Crawford promised to "put his mind" to the claims, and did not indicate to Ms. Thomas that he had prepared a purported COFD. JA Tab 52.

DISAGREE because Mr. Crawford had already made Ms. Thomas aware of his proposed decision. PA Tab 5 (Crawford Decl. at ¶ 20 & Exh. IV-V).

PROPOSED REVISION: In an e-mail, which was sent at 5:07 p.m., Mr. Crawford promised to "put his mind" to the claims. JA Tab 52

26. In his January 14, 2005, e-mail to Ms. Thomas, Mr. Crawford did not inform Ms. Thomas of the COFD. JA Tab 56.

DISAGREE because Mr. Crawford had already made Ms. Thomas aware of his proposed decision. PA Tab 5 (Crawford Decl. at ¶ 20 & Exh. IV).

PROPOSED REVISION: None.

27. Upon receipt of the purported COFD, DKO did not contact the BPD to inquire why they were reviewing the claim when a COFD had already been issued. DA 40, 41-42.

AGREE.

28. As the contract files were transmitted to the BPD before Mr. Crawford executed the purported COFD, the BPD did not receive a copy of the Crawford decision, and was unaware of the Crawford decision when it issued its COFDs. DA 22, 60-61.

AGREE.

29. The BPD denied the DKO claim pertaining to the Help Desk contract, as they were unable to determine against what contract DKO was asserting its claim. JA Tab 67 at P-0072-73.

DISAGREE to the extent it implies that the BPD's actions were legally effective. Further, the petty technicality referenced in the exhibit is laughable and suggests that the BPD was simply looking for the easiest way to deny the claims. JA Tab 67.

PROPOSED REVISION: The BPD purported to deny the DKO claim pertaining to the Help Desk contract claiming they were unable to determine against what contract DKO was asserting its claim. JA Tab 67.

30. The DKO claim referenced contract 8095-03-001, which was not a valid contract number, and Ms. Pryor was unable to contact Mr. Ourecky to obtain additional information. JA Tab 67 at P-0072.

DISAGREE because the contract number referenced was correct; Ms. Pryor was wrong. JS ¶ 21. Further, there is no evidence that Ms. Pryor was unable to contact Dr. Ourecky or DKO. In the referenced document, she apparently was able to send him an e-mail. JA Tab 67.

PROPOSED REVISION: None.

31. The BPD denied the DKO claim pertaining to the Oracle contract as it was a labor hours contract, and no direct labor hours were performed during the period for which DKO sought reimbursement. JA Tab 67 at P-0070-71.

DISAGREE to the extent it implies that the BPD's actions were legally effective.

PROPOSED REVISION: The BPD purported to deny the DKO claim pertaining to the Oracle contract claiming that it was a labor hours contract and that no direct labor hours were performed during the period for which DKO sought reimbursement. JA Tab 67.

32. The BPD contracting officer invited Mr. Ourecky to provide additional documentation in support of his claims, and indicated that she would be willing to reconsider her decisions if Mr. Ourecky provided additional information. JA Tab 67 at P-0070.

DISAGREE to the extent it implies that the BPD contracting officer was communicating with Mr. Ourecky individually rather than on behalf of DKO. JA Tab 67.

PROPOSED REVISION: The BPD contracting officer invited DKO to provide additional documentation in support of his claims, and indicated that she would be willing to reconsider her decisions if DKO provided additional information. JA Tab 67.

33. It was only after Mr. Ourecky filed suit that the FLRA became aware of the existence of the Crawford Decision. DA 54-55.

DISAGREE. Because he was a contracting officer, employee, and/or agent of the FLRA, the FLRA is charged with the knowledge of Mr. Crawford. Obviously, Mr. Crawford was immediately aware of his decision. Further, Mr. Crawford had previously, advised FLRA management of his proposed decision and his intent to issue it. PA Tab 5 (Crawford Decl. at ¶ 20 & Exh. IV-V); JS ¶ 52; JA Tab 52.

PROPOSED REVISION: None.

Respectfully submitted,

_____/s/ David M. Knasel_____
David M. Knasel, Esq.
Clark & Collins, P.C.
Market Station
108-E South Street, S.E.
Leesburg, Virginia 20175
Telephone: (703) 443-1083
Facsimile: (703) 443-1081

Counsel for Plaintiff

**CERTIFICATE OF SERVICE**

I hereby certify that on the 8th day of August, 2006, a true and correct copy of the foregoing was filed electronically through the U.S. Court of Federal Claims Case Management - Electronic Case Files system. I understand that notice of this filing will be sent to all parties/counsel of record by the Court's electronic filing system and that they may access this filing through that system.

_____/s/ David M. Knasel_____