IN THE UNITED STATES COURT OF FEDERAL CLAIMS

---

No. 05-575C
(Judge Wheeler)

---

PHILLIP J. LAVEZZO
d/b/a DKO TECHNOLOGIES,
Plaintiff,

v.

THE UNITED STATES,
Defendant.

# PLAINTIFF'S REPLY TO DEFENDANT'S OPPOSITION TO PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT

DAVID M. KNASEL
CLARK & COLLINS, P.C.
Market Station
108-E South Street, S.E.
Leesburg, Virginia 20175

Telephone: (703) 443-1083
Facsimile: (703) 443-1081

Attorney for Plaintiff

September 5, 2006

TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . iii

PLAINTIFF'S BRIEF . . . . . . . . . . . . . . . . . . . . 1

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . 3

I. This Court Possesses Subject Matter Jurisdiction to Entertain this Case. . . 3

A. The Contracts Were Entered into on Behalf of and in the Name of Plaintiff. . . . . . . . . . . . . . . . 3

B. The Contracts Were Signed by Dr. Ourecky as Authorized Agent for DKO . . . . . . . . . . . . . . 5

C. Plaintiff Was Not an "Undisclosed Principal." . . . . . . . . . 6

II. Plaintiff Is Entitled to Summary Judgment as a Matter of Law. . . . . . 8

A. The DKO Claims Were Not Reassigned Before the Crawford Decision. . . . . . . . . . . . . . 9

B. The Crawford Decision Was Not *Ultra Vires*. . . . . . . . . . 11

C. The Government Cannot and Did Not Rescind the Crawford Decision. . . . . . . . . . . . . . . . 13

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . 16

TABLE OF AUTHORITIES

I. Cases

*Daniels & Shanklin Constr. Co.*, ASBCA No. 37102, 89-3 BCA ¶ 22,060 (May 23, 1989). . . . . . . . . . . . . 13

*Del-Rio Drilling Programs, Inc. v. United States*, 146 F.3d 1358, 1362 (Fed. Cir. 1998). . . . . . . . . . . . . 12-13

*Escote Mfg. Co. v. United States*, 144 Ct. Cl. 452 (1959). . . . . . . . . . 5

*Gant v. United States*, 63 Fed. Cl. 311, 315 (2004). . . . . . . . . . . . 6

*John A. Johnson Contacting Corp. v. United States*, 132 Ct. Cl. 645, 132 F. Supp. 698, 705-06 (1955). . . . . . . . . . 11

*Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 701-02 (1949). . . 12-13

*New York Shipbuilding Corp. v. United States*, 180 Ct. Cl. 446, 460, 385 F.2d 427 (1967). . . . . . . . . . . . 11

*Pacific Architects & Eng'rs, Inc. v. United States*, 203 Ct. Cl. 499, 518, 491 F.2d 734, 744 (1974). . . . . . . . . . . 11, 15

*Recalde v. ITT Hartford*, 492 S.E.2d 435, 437-38 (Va. 1997). . . . . . . . . 4, 7-8

*Scope Enterprises, Ltd. v. United States*, 18 Cl. Ct. 875 (1989). . . . . . . . 6

*United States v. Vesterso*, 828 F.2d 1234, 1244 (8th Cir. 1987). . . . . . . . 7

*Ysasi v. Rivkind*, 856 F.2d 1520 (Fed. Cir. 1988). . . . . . . . . . . . . 5

II. Statutes and Regulations

Contract Disputes Act, 41 U.S.C. § 601 *et seq.* . . . . . . . . . . . . passim

FAR § 1.601(b) . . . . . . . . . . . . . . . . . . . . . . 10

FAR § 1.603 . . . . . . . . . . . . . . . . . . . . . . 13

FAR § 4.101 . . . . . . . . . . . . . . . . . . . . . . 8

FAR § 4.102 . . . . . . . . . . . . . . . . . . . . . . 4-5

41 CFR § 33.210 . . . . . . . . . . . . . . . . . . . . . 13

41 CFR §33.211(h) . . . . . . . . . . . . . . . . . . . . . 8

III. Miscellaneous

John Cibinic, Jr. & Ralph C. Nash, Jr.,
*Formation of Government Contracts* 241 (3d ed.). . . . . . . . . . . . 5

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| PHILLIP J. LAVEZZO<br>d/b/a DKO TECHNOLOGIES,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | ) | No. 05-575C<br>(Judge Wheeler) |

**PLAINTIFF'S REPLY TO DEFENDANT'S OPPOSITION TO**
**PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT**

Plaintiff, Phillip J. Lavezzo d/b/a DKO Technologies ("DKO"), by his undersigned counsel, and pursuant to RCFC 5.2 and 56, hereby submits Plaintiff's Reply to Defendant's Opposition to Plaintiff's Cross-Motion for Summary Judgment and respectfully requests that this honorable Court deny Defendant's motion and enter summary judgment in favor of Plaintiff. In support of this reply, Plaintiff relies on the pleadings, the Joint Stipulations of Fact and Joint Appendix filed by the parties, and Plaintiff's Appendix filed with his initial brief.

**PLAINTIFF'S BRIEF**

INTRODUCTION

As shown in Plaintiff's initial brief and this reply, there is no genuine issue of material fact and, Plaintiff is entitled to judgment as a matter of law. Plaintiff entered into contracts with the United States government, submitted claims under those contracts to the contracting officer, and received a final decision from the contracting officer. Under the law, Defendant is afforded no right or opportunity to appeal the contracting officer's final decision, which is conclusive, and

Plaintiff is entitled to payment of the amount determined by the contracting officer to be owed by the government.

In its opposition brief, Defendant raises four (4) arguments that Plaintiff is not entitled to summary judgment: (1) that this Court lacks subject matter jurisdiction because Plaintiff is not in privity with the United States; (2) that the Crawford Decision is not binding because the claims were reassigned; (3) that the Crawford Decision was *ultra vires*; and (4) that the Crawford Decision was constructively rescinded. These arguments are without merit. First, privity clearly exists as the contracts were entered into by and in the name of DKO Technologies, a sole proprietorship owned by Plaintiff. Second, the Crawford Decision was a valid and binding contracting officer's final decision because any "reassignment" of the claims occurred, if at all, after the Crawford Decision was issued. Third, the Crawford Decision was well within the contracting officer's lawful authority and was not *ultra vires*. Finally, there is no legal authority that would permit a final decision to be "constructively rescinded" by an untimely decision issued by another contracting officer selected by the government agency seeking to rescind its own contracting officer's decision, to secure a favorable result for the agency.

Defendants' briefs are notable for the lack of legal authority supporting the extravagant arguments made by the government. In violation of the comprehensive statutory framework created by Congress for resolving contract claims – the Contract Disputes Act (CDA), 41 U.S.C. § 601 *et seq.* – Defendant would have this Court hold that:

- the management of a government agency may properly order a contracting officer to take no action on lawfully submitted contract claims even though he has a statutory duty to consider those claims and issue a timely decision; and

- the management of a government agency may rescind the decision (in which it is an interested party) of its own contracting officer, without his knowledge or consent, at any time, even though the CDA does not permit the government to appeal or otherwise contest a contracting officer's final decision.

In addition to being patently ridiculous, these claims are unsupported and contradicted by the applicable law. In order to adopt Defendant's position, this Court would need to virtually rewrite the CDA - something no court is competent or authorized to do. For all of the reasons set forth herein and in Plaintiff's initial brief, this Court should reject Defendant's arguments and grant Plaintiff's cross-motion for summary judgment.

## ARGUMENT

### I. This Court Possesses Subject Matter Jurisdiction to Entertain this Case Because Plaintiff Is in Privity of Contract with the United States.

Defendant's initial argument is that this Court lacks subject matter jurisdiction because Plaintiff is not in privity of contract with the United States. This argument is without merit. Privity of contract plainly exists between Plaintiff and the United States, and this Court, therefore, possesses subject matter jurisdiction. Defendant's contention is based solely on the fact that the contracts at issue were entered into under the name of DKO Technologies and singed on behalf of DKO by Dr. Ourecky. This argument must fail for at least three reasons.

#### A. The Contracts Were Entered into on Behalf of and in the Name of Plaintiff.

The record before this Court conclusively demonstrates that the contracts at issue were entered into on behalf of and in the name of DKO Technologies. It is undisputed that DKO

Technologies is a sole proprietorship owned by Plaintiff. JS ¶ 10 & 12.[1] As a sole proprietorship, there is no legal distinction between Plaintiff and DKO Technologies; they are one and the same person. *Recalde v. ITT Hartford*, 492 S.E.2d 435, 437-38 (Va. 1997) (holding that there is no distinction between sole proprietor and his business and that he "remains one person"). Defendant is, therefore, incorrect to state that DKO Technologies is not a legal or natural person: it is Plaintiff, a natural person. Thus, Plaintiff was a party to the contracts with the United States and is, accordingly, in privity with the government.

Defendant fails to cite any authority for its assertion that sole proprietorship is not a natural person and lacks the capacity to contract. This assertion is patently false. *See Recalde*, 492 S.E.2d at 437 (explaining that insurance contract was entered into by sole proprietorship under its trade name). Indeed, it is undisputed that a government contract may be entered into by a sole proprietorship. *See* FAR § 4.102(a). Here, the contracts were entered into by DKO Technologies, JS ¶ 21 & 28, who was identified as the contractor on the contracts, JA Tab 28, they were signed by Dr. Ourecky as the authorized agent of DKO Technologies, JS ¶ 23 & 30, and the contracts were performed by DKO Technologies through its subcontractors. JS ¶ 38-39. Because Plaintiff is DKO Technologies as a matter of law, Plaintiff is in privity of contract with the United States.

---

[1] Citations to the Joint Stipulation of Facts filed by the parties on June 9, 2006, are in the form "JS ¶ ___"; citations to the tabbed exhibits contained in the Joint Appendix filed by the parties pursuant to the Court's July 31, 2006 Order, are in the form "JA Tab ___"; citations to the Plaintiff's Appendix filed herewith are in the form "PA Tab ___"; citations to the exhibits contained in Defendant's Appendix in Support of Defendant's Motion to Dismiss or in the Alternative for Summary Judgment are in the form "DA Exh. ___"; and citations to Defendant's Supplemental Appendix are in the form "DSA at ___."

B. **The Contracts Were Signed by Dr. Ourecky as Authorized Agent for DKO.**

What the foregoing clearly shows is that, at its heart, Defendants argument hinges on the fact that the contracts were signed by Dr. Ourecky, as authorized agent for DKO Technologies, rather than by Plaintiff personally. Defendant is desperately trying to manufacture an issue where none exists. Tellingly, Defendant has failed to cite to any authority holding that, when a government contract is signed by the agent of a sole proprietor, there is no privity of contract between the sole proprietor and the government. To the contrary, it is clear that a contract may be executed by an authorized agent on behalf of another. *See* FAR § 4.102(e). Indeed, a government contract need not be signed or even be in writing. John Cibinic, Jr. & Ralph C. Nash, Jr., *Formation of Government Contracts* 241 (3d ed.) (citing *Escote Mfg. Co. v. United States*, 144 Ct. Cl. 452 (1959)). *See also* *Ysasi v. Rivkind*, 856 F.2d 1520 (Fed. Cir. 1988) (holding that the Court of Federal Claims has jurisdiction over claims based upon implied-in-fact contracts). Thus, there is no basis for Defendant's claim that Plaintiff lacks privity with the United States.

In a vain effort to avoid this obvious conclusion, Defendant contends that the government was deceived by Plaintiff. This contention, based on a selective reading of the facts, is wrong. The contracting officer correctly understood that Dr. Ourecky was authorized to sign the contracts on behalf of DKO Technologies. JS ¶ 37. *See also* JS ¶ 14-15, 23 & 30. While he was not sure what type of business entity DKO Technologies was, JS ¶ 36; DSA at 2 (Crawford Depo. at 56), neither he nor anyone else from the FLRA ever asked what type of entity it was or who owned it. JS ¶ 33. Further, there is no evidence that the use of Dr. Ourecky as Plaintiff's agent was anything other than an innocent attempt to capitalize on Dr. Ourecky's name

recognition and positive reputation at the FLRA. Finally, it is undisputed that DKO Technologies, i.e. Plaintiff, performed the contracts successfully. JS ¶ 39.

Therefore, there is no evidence that either the contracting officer or the FLRA was deceived by Plaintiff. To conclude that there was anything deceptive or improper done by Plaintiff would require this Court to make inferences unsupported by the undisputed facts.[2] Rather, it is undisputed that the contracts were entered into on behalf of and in the name of DKO Technologies, were signed by Dr. Ourecky as the authorized agent of Plaintiff, and that this is exactly what both the contracting officer (acting on behalf of Defendant) and Dr. Ourecky (acting on behalf of Plaintiff) intended and understood.

C. **Plaintiff Was Not an "Undisclosed Principal."**

Finally, contrary to Defendant's argument, Plaintiff was not an "undisclosed principal." As demonstrated above, the contracts identified and were in the name of DKO Technologies, and the contracting officer intended to contract with DKO Technologies and understood that Dr. Ourecky signed the contracts on behalf of and as the authorized agent of DKO Technologies. JS ¶ 20-23, 27-30 & 37; DSA at 2 (Crawford Depo. at 56). *See also* JS ¶ 14-15. Because DKO Technologies is Plaintiff, Plaintiff was clearly disclosed as the contracting party and principal.

As shown in Plaintiff's initial brief, the sole case relied upon by Defendant, *Scope Enterprises, Ltd. v. United States*, 18 Cl. Ct. 875 (1989), is readily distinguishable from the

[2] Defendant repeatedly charges that there was something deceptive and sinister about the fact that this lawsuit was initially captioned mistakenly under the name of Dr. Ourecky. This innocent mistake was resolved when Plaintiff was substituted as the real party in interest. Defendant's continued attempt to score rhetorical points at the expense of a legally unsophisticated and then-*pro se* party is unfair and improper. *See, e.g.*, *Gant v. United States*, 63 Fed. Cl. 311, 315 (2004) (explaining that *pro se* litigants are entitled to a certain amount of leniency). Further, it is immaterial to the merits of this case, as the lawsuit was filed well after the relevant events in this case occurred and could not, therefore, have misled the government in any way.

instant case. Defendant fails to recognize that, in order for there to be an "undisclosed principal," the contract must have been entered into in the name of the agent as the contracting party. In other words, the agent himself enters into the contract on his own behalf without mention of the principal. This was the situation in *Scope*, where, as part of a government sting operation, certain individuals entered into an illegal arms export "agreement" on their own behalf and in their own names. Such is not the case here.[3]

In the present case, Dr. Ourecky signed the contracts on behalf of Plaintiff, as his authorized agent. The principal, Plaintiff, was plainly disclosed, albeit by the trade name of his sole proprietorship, DKO Technologies. Plaintiff had registered his business as a sole proprietorship under the name of DKO Technologies. It was a matter of public record that Plaintiff was DKO Technologies, and, thus, Defendant had constructive knowledge of that fact. *See United States v. Vesterso*, 828 F.2d 1234, 1244 (8th Cir. 1987) (holding that defendants had constructive knowledge of easement agreements because they were public records). Therefore, Plaintiff was indisputably the party to the contracts at issue in this case. *See Recalde*, 492 S.E.2d

[3] Defendant fails to acknowledge that if its position were correct that would mean that Dr. Ourecky, individually, was the party to the contracts in this case. This is why Defendant's position is contrary to the position it took earlier in the case as well as to the ruling of the Court on Plaintiff's motion to substitute the real party in interest. When this case was being pursued *pro se*, Defendant took the position that Dr. Ourecky could not proceed *pro se* because the party to the contract was DKO Technologies, which it contended was a corporation. *See* Transcript of Hearing on December 21, 2005. Thereafter, when Plaintiff presented evidence that he was the sole proprietor of DKO Technologies and the contractor under the contracts, Defendant did not then contend that anyone other than DKO Technologies was the contracting party. Now, Defendant essentially argues that Dr. Ourecky entered into the contracts in his own individual capacity. If that were the case, then he would have been entitled to proceed *pro se* and the substitution of Mr. Lavezzo as Plaintiff, to which Defendant did not object, would not have been proper. While Defendant argues that it is legally entitled to advance these inconsistent positions, the Court need not resolve that issue because, as is demonstrated herein, Plaintiff was indisputably the party to the subject contracts. Nevertheless, the opportunistically inconsistent nature of Defendant's current position serves to underscore its lack of merit.

at 437-38 (holding that individual owner was the party to an insurance contract that was entered into under the trade name of his sole proprietorship)

Defendant has failed to cite any authority that the use of a trade name or fictitious name in a contract deprives the person using such a name of privity of contract. Of course, such a principle would be contrary to well-established law that explicitly permits the use of trade names or fictitious names by businesses. *See, e.g.*, *id.* Simply put, despite Defendant's best efforts to create an appearance of impropriety, there is nothing wrong with the fact that contracts at issue in this case use the trade name of a sole proprietor to identify Plaintiff as the contracting party and were signed on behalf of Plaintiff by his authorized agent, Dr. Ourecky.[4]

Defendant can point to no authority that supports its meritless contention that there is no privity of contract between Plaintiff and the United States on the undisputed facts of this case. Accordingly, as demonstrated above and in Plaintiff's initial brief, Plaintiff is clearly in privity of contract with the United States, and, consequently, this Court possesses subject matter jurisdiction to hear and decide this case.

## II. Plaintiff Is Entitled to Summary Judgment as a Matter of Law.

As explained in Plaintiff's initial brief, the contracting officer issued a final decision on the claims submitted by DKO, the Crawford Decision, legally entitling Plaintiff to payment from the government of the amount determined to be owed. *See* 41 CFR § 33.211(h). Moreover, as a

---

[4] Even if the identification of the contractor or the signature block on the contracts failed to comply with applicable regulations, Defendant has cited no authority whatsoever for the proposition that a failure to comply with signature format requirements for government contracts means that there is no privity of contract or otherwise allows the government to escape its contractual obligations. Moreover, it is undisputed that the applicable regulations impose the obligation on the government to ensure that the contracts are properly formatted and executed. *See* FAR § 4.101 (stating that "[t]he ***contracting officer shall ensure***" that the FAR requirements are met). Defendant is attempting to blame Plaintiff for its own failures and, thereby, avoid its contractual obligations.

matter of law, the Crawford Decision was and is "final and conclusive and not subject to review." 41 U.S.C. § 605(b). Notwithstanding this clear law, Defendant advances three (3) arguments in an attempt to deprive the Crawford Decision of its conclusive effect and Plaintiff of the amount determined to be owed by the government. Each of these arguments is without merit.

A. **The DKO Claims Were Not Reassigned Before the Crawford Decision.**

Defendant contends that the DKO Claims were reassigned to a contracting officer at another government agency for resolution before Mr. Crawford, the contracting officer, issued his final decision. As shown in Plaintiff's initial brief, the uncontroverted facts establish that any reassignment of the DKO Claims was not accomplished until after January 14, 2005, the date that Mr. Crawford issued the Crawford Decision. Specifically, Linda Pryor, a contracting officer at the Department of Treasury, Bureau of Public Debt (BPD), was not designated as the purported successor contracting officer until January 18, 2005, JS ¶ 59, and the necessary inter-agency agreement to transfer the DKO Claims to BPD was not executed until January 26, 2005. PA Tab 2 (Thomas Depo. at 55-57 & Exh. 14).

In response, Defendant argues that the DKO Claims could have been "held in 'limbo'" in between the time when the decision to reassign the claims was allegedly made and when the purported successor contracting officer was designated. Unsurprisingly, Defendant fails to cite any legal authority for this novel theory. Such a theory would be particularly inappropriate in this case because FLRA management never advised Mr. Crawford that the DKO claims had been purportedly reassigned before he issued his decision. JS ¶ 48. Consequently, in keeping with the requirement of the CDA that claims be decided by a contracting officer, 41 U.S.C. § 605, this Court should find that the DKO Claims could only have been reassigned at the earliest on

January 18, 2005, when the purported successor contracting officer at BPD, Linda Pryor was designated.

Defendant further contends that there was a pre-exisiting agreement between the FLRA and the BPD, which obviated the need for any further agreement before the DKO claims could be reassigned. This contention is contradicted by the facts, however. The pre-exisiting agreement between the FLRA and the BPD was for another matter, which Yvonne Thomas referred to as "solicitations for contracts" and the modification document describes as a "procurement review." PA Tab 2 (Thomas Depo. at 54-55 & Exh. 14). Therefore, it was necessary for a modification to be executed to transfer the responsibility for deciding the DKO claims to the BPD. PA Tab 2 (Thomas Depo. at 55-57). Indeed, it is undisputed that FLRA management believed that such a modification was necessary. *Id.* Such an agreement can only be accomplished with the mutual agreement of the agency heads. FAR § 1.601(b). Defendant has presented no evidence that the head of the BPD ever agreed to the purported reassignment of the DKO claims before January 26, 2005, when the modification was executed.

Disregarding the requirements of law, Defendant's position essentially boils down to the contention that the DKO claims were reassigned upon the decision of FLRA management that they wished to reassign the claims, even if this decision was not communicated to the existing contracting officer, rather than when the reassignment actually occurred. Defendant has failed to cite any authority for this bootstrap argument. This Court should reject Defendant's argument, and instead find that the Crawford Decision was issued before any purported reassignment of the DKO claims to the BPD. As such, any purported reassignment could not have had any legal

effect upon the Crawford Decision, which had already been issued and was final and conclusive as a matter of law.[5] 41 U.S.C. § 605(b).

B. **The Crawford Decision Was Not *Ultra Vires*.**

Next, Defendant claims that the Crawford Decision was *ultra vires* because it was purportedly issued in violation of instructions given to Mr. Crawford by FLRA management to take no action whatsoever on the DKO claims, including even acknowledging their receipt. JS ¶ 44, 47 & 53; JA Tab 44 & 53. Defendant cites no authority for the proposition that a contracting officer's final decision issued in contravention of such instructions is *ultra vires* or otherwise not valid and binding. As explained in Plaintiff's initial brief, the cases cited by Defendant only stand for the uncontroversial proposition that a contracting officer may permissibly seek input and advice from others, not that he may be required to do so by order of a supervisor.[6] In response, Defendant does not seek to rebut Plaintiff's analysis of Defendant's authorities or cite any new authorities. Rather, Defendant only attempts to distinguish the cases cited by Plaintiff.

---

[5] Even assuming *arguendo* that the DKO claims were reassigned prior to the issuance of Crawford Decision, Defendant has failed to cite any authority permitting the reassignment of claims by the agency that is an interested party to another hand-picked contracting officer under the circumstances of this case. While, in *New York Shipbuilding Corp. v. United States*, 180 Ct. Cl. 446, 460, 385 F.2d 427 (1967), there was a contractual provision designating a specific decision-maker for claims, that case arose before the enactment of the CDA and associated regulations. Accordingly, that case does not stand for the proposition that that a government agency may at any time, for any reason unilaterally reassign a pending contract claim to another contracting officer and thereby deprive the first contracting officer of authority to decide the claim, which is what Defendant argues.

[6] Defendant's cases certainly do not support the notion that a supervisor may order a contracting officer to take no action whatsoever on a claim and otherwise seek to control the contracting officer's decision making process, as was done here. These orders by FLRA management were patently unlawful. *See Pacific Architects & Eng'rs, Inc. v. United States*, 203 Ct. Cl. 499, 518, 491 F.2d 734, 744 (1974) (holding the contracting officer must make his on decision); *John A. Johnson Contacting Corp. v. United States*, 132 Ct. Cl. 645, 132 F. Supp. 698, 705-06 (1955) (holding that a contracting officer may not defer to his superior in a decision). To the extent a narrower view is taken of the instructions given to Mr. Crawdford by FLRA management, he complied with those orders by advising his superiors of the claims and seeking their input on his decision. PA Tab 5 (Crawford Decl. at ¶ 20 & Attachments IV & V).

While it is true that these cases arise in a different context, they still address the critical issue of whether a government agent's actions are *ultra vires*. In *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 701-02 (1949), the plaintiff corporation brought a suit for injunctive and declaratory relief against the head of the War Assets Administration. The issue before the Court was whether the actions of the government official were those of the government (and, thus, entitled to sovereign immunity) or those of the official individually (in which case the suit could proceed against him). This issue turned on the question of whether the actions of the government official were *ultra vires* and, thus, not protected by sovereign immunity. The Supreme Court held that because the government official was acting within the scope of his statutory authority (even assuming that his action was erroneous or unlawful) it was not *ultra vires* and, therefore, the suit was properly one against the United States and barred by sovereign immunity. *Id.* at 703-04.

Similarly, in *Del-Rio Drilling Programs, Inc. v. United States*, 146 F.3d 1358, 1362 (Fed. Cir. 1998), plaintiff brought a takings claim, under the Fifth Amendment, against the United States. The issue before the court was whether the actions of government officials were those of the government and could, thus, form the basis for a takings claim. Once again, the issue turned on whether the officials' actions were *ultra vires*. The Federal Circuit held that, because the government officials were acting within the scope of their statutorily authorized duties, their actions were not *ultra vires* and, therefore, the issue of authorization presented no impediment to plaintiff's takings claim. *Id.* at 1362-63.

Thus, both *Larson* and *Del-Rio* specifically addressed the issue of what makes a government official's conduct *ultra vires*, which is precisely the issue raised by Defendant's argument that the Crawford Decision was *ultra vires*. As both these cases make clear, in order

for the act of a government agent to be *ultra vires*, it must be beyond the scope of his statutory authority; and mere failure to follow the instructions of a manager or superior is not enough, as even erroneous or illegal conduct may be within the scope of the agent's statutory authority so as to preclude a finding that the act was *ultra vires*. *Larson*, 337 U.S. at 701-02; *Del-Rio*, 146 F.3d at 1362.

Attempting to make a virtue out of the lack of authority for its position, Defendant claims that this is a "case of first impression" that should be decided in Defendant's favor. While the parties have not located a case directly on point, as explained above, the relevant precedent establishes that the Crawford Decision was not *ultra vires*. Moreover, Defendant does not even bother to address the fact that Mr. Crawford, a contracting officer with a warrant that remained in effect at all relevant times, JS ¶¶ 2-4 & 7-8, plainly had the requisite authority to issue his decision under the CDA and applicable regulations. *See* 41 CFR § 33.210 (setting out authority of contracting officer to decide claims); FAR § 1.603 (governing appointment of contracting officers by issuance of warrants). Even if this were a case of first impression, it must be decided in manner consistent with the applicable statutes and regulations and binding precedent. For these reasons, the Crawford Decision was not *ultra vires*, but was well within Mr. Crawford's authority.

C. **The Government Cannot and Did Not Rescind the Crawford Decision.**

Finally, Defendant asserts that the Crawford Decision was "constructively rescinded." Yet again, Defendant fails to cite to any authority supporting its argument or even the general notion that a contracting officer's decision can ever be "constructively rescinded." Rather, Defendant argues that the board of contract appeals decision in *Daniels & Shanklin Constr. Co.*, ASBCA No. 37102, 89-3 BCA ¶ 22,060 (May 23, 1989), where the contracting officer expressly

rescinded his own decision, should be extended to permit the "constructive" rescinding of a contracting officer's final decision by another contracting officer hand-picked by the government agency that is an interested party in the decision.[7]

In support, Defendant contends that the FLRA management was unaware of the Crawford Decision. This is a non sequitur. Defendant fails to provide any basis for why FLRA management's alleged lack of knowledge of the Crawford Decision is relevant in any way. Defendant's contention only serves to highlight how very different this case is from *Daniels & Shanklin*, the only case relied upon by Defendant. Moreover, Defendant's contention is false: FLRA management was made aware of the Crawford Decision. Mr. Crawford provided a draft to FLRA management before issuing it. PA Tab 5 (Crawford Decl. at ¶ 20 & Attachments IV & V). Also, the invoice submitted to the FLRA by Plaintiff referred to the Crawford Decision. JS ¶ 65; JA Tab 65.[8] Therefore, Defendant's contention is without merit, and the principle at issue in *Daniels & Shanklin* should not be extended to permit the "constructive" rescinding of a

[7] As shown in Plaintiff's initial brief, the "constructive rescission" was allegedly accomplished by a subsequent decision that was untimely under the CDA. 41 U.S.C. § 605(c)(1) ("contracting officer shall issue a decision . . . within sixty days . . ."). Defendant does not dispute that the Pryor Decisions were untimely, but argues that a contracting officer still has authority to issue a decision after the expiration of the 60-day period. Whatever the merits of this point, it begs the question of whether a contracting officer's final decision can be "constructively rescinded" under the circumstances of this case. For the reasons contained herein and in Plaintiff's initial brief, it cannot.

[8] While the government, based on Ms. Thomas' testimony, has denied receiving either the draft decision or the invoice, Ms. Thomas' credibility is suspect as a result of the false affidavit she submitted in this case. As explained in Plaintiff's initial brief, these issues are not material because, notwithstanding them, Plaintiff is entitled to judgment as a matter of law. Any statement by Plaintiff that "Defendant" is entitled to summary judgment is obviously a mistake and should say "Plaintiff" is entitled to summary judgment. However, to the extent the Court is at all inclined to adopt Defendant's view of the facts, which would be necessary to find that Defendant is entitled to summary judgment, summary judgment for Defendant would be improper in the face of these factual issues.

contracting officer's final decision by another contracting officer hand-picked by the government agency that is an interested party in the decision.

Not only would such an extension be patently unfair, it would contravene the legal requirement that the contracting officer "put his own mind to the problems and render his own decisions," *Pacific Architects & Eng'rs, Inc. v. United States*, 203 Ct. Cl. 499, 518, 491 F.2d 734, 744 (1974), as well as the statutory command that the contracting officer's decision is "final and conclusive and not subject to review." 41 U.S.C. § 605. Further, such an extension would give the government a *de facto* right to appeal where none was provided by Congress in the CDA. While Defendant argues that there is no "appeal" in this case because the FLRA was unaware of the contracting officer's decision,[9] it offers neither legal authority nor any principled basis for permitting the "constructive" rescinding of a contracting officer's decision of which the agency is allegedly unaware, but not the rescinding of a decision of which it is. Indeed, the very fact that Defendant argues that the Crawford Decision was "patently incorrect as a matter of law"[10] demonstrates that the Defendant is improperly attempting to seek review of a decision that, as a matter of law, is "final and conclusive and not subject to review." Therefore, the government could not and did not "constructively rescind" the Crawford Decision.

---

[9] As demonstrated above, FLRA management was made aware of the Crawford Decision. Further, even if FLRA management was unaware, there is no evidence that Plaintiff "concealed" the Crawford Decision from FLRA, as Defendant alleges. Any contractor would assume that an agency was fully aware of the decision of its own contracting officer, and the Crawford Decision was specifically referenced in the invoice submitted to the FLRA by Plaintiff. JS ¶ 65; JA Tab 65.

[10] Defendant also attempts to suggest impropriety by alleging that the Crawford Decision "awarded funds to long-time friend of the contracting officer." However, this suggestion is contradicted by Defendant's own brief, in which it argues that Mr. Crawford was unaware of the involvement of Mr. Lavezzo in DKO Technologies. Defendant is improperly attempting to have it both ways.

CONCLUSION

Accordingly, as demonstrated above and in Plaintiff's initial brief, each and every argument raised by Defendant in opposition to Plaintiff's motion for summary judgment is without merit. Defendant's briefs are remarkable for the utter lack of legal authority supporting its arguments. In order to adopt Defendant's arguments, this Court would need to virtually rewrite the applicable statutory and regulatory framework. Such a project is beyond the scope of this Court's authority and contrary to established law. Plaintiff is, therefore, entitled to judgment as a matter of law on the uncontroverted facts in the record before the Court.

WHEREFORE, for all of the reasons explicated above and in Plaintiff's initial brief, Plaintiff respectfully requests that this honorable Court deny Defendant's motion to dismiss or in the alternative for summary judgment, grant Plaintiff's motion for summary judgment, and enter judgment in favor of Plaintiff and against Defendant in the amount of $81,728.00, plus interest and attorneys' fees and costs.

Respectfully submitted,

_____/s/ David M. Knasel_____

David M. Knasel, Esq.
Clark & Collins, P.C.
Market Station
108-E South Street, S.E.
Leesburg, Virginia 20175
Telephone: (703) 443-1083
Facsimile: (703) 443-1081

Counsel for Plaintiff

**CERTIFICATE OF SERVICE**

I hereby certify that on the 5th day of September, 2006, a true and correct copy of the foregoing was filed electronically through the U.S. Court of Federal Claims Case Management - Electronic Case Files system. I understand that notice of this filing will be sent to all parties/counsel of record by the Court's electronic filing system and that they may access this filing through that system.

_____/s/ David M. Knasel_____