# In the United States Court of Federal Claims

No. 05-575C

(Filed: December 7, 2006)

| | |
|---|---|
| PHILLIP J. LAVEZZO d/b/a DKO TECHNOLOGIES, Plaintiff, v. THE UNITED STATES, Defendant. | Contract Disputes Act; Sole Proprietorship; Subject Matter Jurisdiction; Failure of Principal to Sign Contracts; Lack of Independent Contracting Officer's Final Decision; Remand. |

*David M. Knasel*, Clark & Collins, P.C., Leesburg, Virginia, for Plaintiff.

*David D'Alessandris*, with whom were *Peter D. Keisler*, Assistant Attorney General, *David M. Cohen*, Director, and *Franklin E. White, Jr.*, Deputy Director, United States Department of Justice, Civil Division, Commercial Litigation Branch, Washington, D.C., for Defendant.

## OPINION AND ORDER

WHEELER, Judge.[1]

This case presents an unusual circumstance under the Contract Disputes Act, 41 U.S.C. § 601 et seq., of a contractor suing to enforce a contracting officer's final decision in its favor. The Government disclaims this final decision for lack of contracting officer authority, and asserts instead that later decisions from a different contracting officer denying the contractor's claims are binding. The record reflects considerable agency discord in the handling of Plaintiff's claims, and Plaintiff's understandable confusion upon receiving two

---

[1] This case was transferred to Judge Thomas C. Wheeler on December 7, 2005, pursuant to Rule 40.1(b) of the Rules of the Court of Federal Claims.

conflicting contracting officer final decisions addressing the same claims. The Government also questions the validity of the underlying contracts because Plaintiff, a sole proprietorship, did not personally sign the contracts. Instead, a vice-president signed the contracts.

The parties have filed cross-motions for summary judgment on the enforceability of the contracting officer's final decision favorable to the contractor. Plaintiff has treated the favorable final decision as the only binding decision, and has not appealed from the later unfavorable final decisions. Defendant has moved to dismiss for lack of subject matter jurisdiction, asserting there is no privity of contract between Plaintiff and the Government.

For the reasons explained below, the Court finds that it has subject matter jurisdiction of this case. While the sole proprietor should have signed the contracts, this technical flaw at most made the contracts voidable at the election of the Government. Certainly, there is no evidence of intentional deception on Plaintiff's part, and no harm or prejudice to the Government. The agency could have verified Plaintiff's public business records on file in Alexandria, Virginia at any time. If the lack of a proper signature is at all actionable, the Court finds that the Government waived whatever rights it had to void the contracts by accepting Plaintiff's performance and paying Plaintiff for its work. Finding otherwise would leave Plaintiff without a remedy to pursue its contract claims. Defendant's motion to dismiss for lack of jurisdiction is denied.

With regard to the conflicting contracting officer final decisions, the Court finds that both decisions are tainted by the agency's internal discord and the interference of an agency supervisor, who is not a contracting officer. The agency supervisor should not have interfered by transferring Plaintiff's claims from the assigned contracting officer to a different decision-maker outside the agency. The procurement process is not well-served where a supervisor's meddling results in two conflicting final decisions, neither of which focuses particularly upon the merits of Plaintiff's claims. The agency has not complied with the fundamental requirement that final decisions on contract claims ought to reflect the independent determination of the contracting officer. See e.g., Pacific Architects & Eng'rs, Inc. v. United States, 203 Ct. Cl. 499, 518, 491 F.2d 734, 744 (1974); New York Shipbuilding Corp. v. United States, 180 Ct. Cl. 446, 460, 385 F.2d 427, 435 (1967).

The Court therefore will remand the case to the agency for a period not to exceed 60 days, during which time the agency shall appoint a new contracting officer with no prior involvement in these contracts to review Plaintiff's claims and issue a proper final decision. Upon receipt of a new contracting officer's final decision, Plaintiff shall advise the Court whether it accepts this decision, or wishes to have the Court review it. The Court will retain jurisdiction of this matter during the 60-day remand period. The parties' cross-motions for summary judgment are denied.

## Factual Background[2]

Plaintiff Phillip J. Lavezzo is the sole proprietor of a business known as DKO Technologies ("DKO"). JS ¶¶ 12. On January 23, 2003, Mr. Lavezzo registered DKO as a sole proprietorship in Alexandria, Virginia after learning of a business opportunity with the Federal Labor Relations Authority ("FLRA"), an agency of the United States. JS ¶¶ 1, 10, 11, 13. Donald K. Ourecky is DKO's Vice President. JS ¶ 14. Dr. Ourecky learned of the business opportunity from an FLRA contracting officer, Gary Crawford, and informed Mr. Lavezzo. JS ¶ 11. Mr. Lavezzo authorized Dr. Ourecky to execute documents, sign checks, communicate with the FLRA, and interview potential subcontractors. JS ¶ 15.

Acting on DKO's behalf, Dr. Ourecky entered into two service contracts with the FLRA. Dr. Ourecky signed Contract No. 8095-03-035 ("the Help Desk Contract") on December 29, 2002, and committed DKO to staffing a computer help desk at the FLRA from January 1, 2003 until September 30, 2003. JS ¶ 21. Dr. Ourecky signed Contract No. 8095-03-001 ("the Oracle Contract") on April 3, 2003, an agreement for DKO to provide Oracle database programming services to the FLRA. JS ¶ 28; JA Tab 28. The Oracle Contract ran from April 3, 2003 to October 30, 2003. JS ¶ 31. Mr. Crawford served as the FLRA's contracting officer and signed the Help Desk and Oracle Contracts for the FLRA. JS ¶¶ 22, 29. Both contracts included options to extend for additional years at escalating hourly rates. JS ¶¶ 24, 31.

DKO successfully performed the Help Desk and Oracle Contracts. JS ¶ 39. While the FLRA did not officially exercise its options for additional years, the FLRA issued unilateral modifications extending the contract performance period of the Help Desk Contract and of the Oracle Contract at the same hourly rates as the initial contracts. JS ¶¶ 23, 30, 40; JA Tabs 23, 30. The FLRA did not extend the Help Desk Contract beyond January 31, 2004, or the Oracle Contract beyond April 30, 2004. JS ¶ 41, 43.[3]

Pursuant to the Contract Disputes Act, 41 U.S.C. §§ 601- 613, DKO submitted two claims to the FLRA concerning the Help Desk and Oracle Contracts on December 9, 2004.

[2] The facts herein are based upon the parties' Joint Stipulations of Fact ("JS"), filed June 9, 2006, and the parties' Joint Appendix ("JA"), filed July 20, 2006. In some instances, the Court refers to other documents furnished in Defendant's Appendix ("Deft. App."), filed July 7, 2006, and in Plaintiff's Appendix ("Pltf. App."), filed August 8, 2006.

[3] The parties' stipulations indicate that the FLRA "terminated" the Help Desk and Oracle Contracts on the stated dates, but the Court is not aware of any explicit agency document or action purporting to "terminate" the contracts. It is more accurate to say that the contracts expired on the stated dates because the FLRA did not extend them further.

JS ¶¶ 45, 46. The claims are worded similarly for each contract, and essentially claim that the FLRA constructively exercised the first option year, but ended the contracts before the option year was completed. JA Tab 45. DKO also broadly alleged wrongful interference with performance, breach of the duty of fair dealing, and improper contract administration. Id. DKO claimed $28,704 on the Help Desk Contract, and $57,408 on the Oracle Contract. Id. The FLRA received the claims in its mail room on December 13, 2004. JS ¶ 46; JA Tab 45.

Mr. Crawford, the FLRA's contracting officer, had an unlimited warrant from August 14, 2000 until March 25, 2004, when his authority was reduced to contracts not exceeding $200,000. JS ¶¶ 2, 4, 7; JA Tab 7. At all relevant times, Yvonne Thomas, Director of the FLRA's Administrative Services Division, was Mr. Crawford's immediate supervisor. JS ¶ 5. Ms. Thomas reported to David Smith, Acting Executive Director of the FLRA. Id. Mr. Crawford retired from the FLRA on April 30, 2005. JS ¶ 9.

On June 29, 2004, following a telephone conversation with Dr. Ourecky, Mr. Crawford alerted Ms. Thomas and Mr. Smith by e-mail that DKO likely would submit a claim to the FLRA under the Contract Disputes Act. JA Tab 44; Pltf. App. Tab 5, Declaration of Gary Crawford, Sept. 6, 2005, ("Crawford Decl.") ¶ 12. The next day, Ms. Thomas responded to Mr. Crawford that "[i]f any claims are submitted by any contractors, including DKO, you are hereby instructed *not to take any action whatsoever*, with the exception of notifying David and I [sic] that you have received such." JA Tab 44 (emphasis in original). Ms. Thomas sent a copy of this message to Mr. Smith. Id. Mr. Crawford states that he objected in writing to this direction from his supervisor. Crawford Decl. ¶ 14.

Mr. Crawford first saw the DKO claims on or about December 17, 2004, and provided a copy of the claims to Ms. Thomas on January 10, 2005. JA Tab 44. The next day, January 11, 2005, Ms. Thomas informed Mr. Crawford again that he should take no action with regard to the DKO claims until he received guidance from Ms. Thomas and Mr. Smith. JS ¶ 47; JA Tab 53.

On or before January 13, 2005, Ms. Thomas and Mr. Smith decided to transfer the DKO claims to a contracting officer at the Department of the Treasury, Bureau of Public Debt, in Parkersburg, West Virginia for a final decision. JS ¶ 48. The FLRA and the Department of the Treasury executed a Reimbursable Services Agreement on January 26, 2005 for contract administration services. Pltf. App. Tab 2, Thomas Deposition, May 24, 2006, Exh. 14. The FLRA allocated $10,000 ($5,0000 per claim) for the Department of the Treasury to issue final decisions on DKO's claims. Deft. App. at 22-23. Neither Ms. Thomas nor Mr. Smith informed Mr. Crawford that DKO's claims had been reassigned to the Department of the Treasury for decision. JS ¶ 48.

On the same day, January 13, 2005, Mr. Crawford finished preparing a final decision on DKO's claims. JA Tab 50. In an 18-page document, with three pages of "Notes" and a copy of his Certification of Appointment attached, Mr. Crawford granted relief to DKO of $27,370 on the Help Desk Contract, and $54,358 on the Oracle Contract. Id.[4] Mr. Crawford's final decision is replete with criticisms of Ms. Thomas for alleged poor contract administration and interferences with the agency's procurement processes. Id. Mr. Crawford's signature is notarized on the last page by Mary Prothro, a U.S. Government employee and notary public.[5] JS ¶ 51. Mr. Crawford's final decision includes a cover page with a Certificate of Service, dated January 13, 2005, signed by DKO's Dr. Ourecky. JA Tab 50. Mr. Crawford recalls that he did not mail the final decision to Dr. Ourecky until Friday, January 14, 2005, late in the afternoon. Crawford Decl. ¶ 24; JS ¶ 54.

On January 13, 2005, after having his final decision notarized, Mr. Crawford sent a harshly worded e-mail to Ms. Thomas regarding "Notice of Action - Requirement for C.O. Final Decision." JS ¶ 52; JA Tab 52. Mr. Crawford sent a copy of his e-mail to Francine Eichler, the FLRA's Inspector General. JA Tab 52. Mr. Crawford emphasized in this e-mail the importance of an independent and timely contracting officer final decision, and he stated that "the courts have often declared that a contractor is entitled to a finding by the contractually agreed officer, and that a decision by someone else is a nullity." Id. Mr. Crawford included in his e-mail a list of 18 cases as precedent for this proposition. Id. Mr. Crawford concluded by stating "I plan to put my mind to this claim, and timely render a personal final decision, as required by statute and regulation, and consistent with my responsibility to obtain advice and assistance, as appropriate." Id. Ms. Thomas responded to Mr. Crawford on January 14, 2005 with the following message: "My guidance to you on January 11, 2005 remains in effect. You are not to take any action on either claim until you receive further instructions from David Smith or I [sic]." Id. Mr. Crawford did not reveal that he had finished preparing a final decision, and he contravened Ms. Thomas's direction by mailing his final decision to DKO later that day.

---

[4] Mr. Crawford's January 13, 2005 final decision refers to other attachments, Exhibits A through L, that the parties have not submitted to the Court. JA Tab 50; Crawford Decl. ¶¶ 12, 13, 16, 17.

[5] A December 30, 2004 "Proposed C.O.F.D." signed by Mr. Crawford is notarized by Thelma Brown, also a U.S. Government employee. Pltf. App., Crawford Decl., Attachment V. Mr. Crawford asserts that he sent the proposed final decision to Ms. Thomas and Mr. Smith on December 30, 2004, advising that "[t]he final decision must be received by the contractor not later than February 14, 2005." Id. The record does not indicate whether Ms. Thomas or Mr. Smith received or reviewed this document.

On January 14, 2005, Mr. Crawford sent another strongly worded e-mail to Ms. Thomas objecting to her interference with the DKO claim. JA Tab 56. In this e-mail, Mr. Crawford referred to a 2004 FLRA Inspector General report regarding similar management interference with another contractor's claim. Id. Mr. Crawford cited the Inspector General's finding that FLRA management had "*interfered with the contractor's procedural rights to a claim by intervening and suspending the alternative disputes resolution process,*" and that "*management action did obstruct and breach the contractor's right to settle the claim through ADR.*" Id. (emphasis in original). Mr. Crawford also alleged that "FLRA management removed from the file room all documents relating to this [DKO] claim." Id.

Also on January 14, 2005, Ms. Thomas sent a letter to DKO's Dr. Ourecky advising that the DKO claims "have been reassigned to a contracting officer with the U.S. Department of Treasury, Bureau of Public Debt." JA Tab 57. Dr. Ourecky strongly objected to the reassignment of the claims in a January 17, 2005 response letter to Ms. Thomas. JA Tab 58. Dr. Ourecky also sent a response letter to Mr. Crawford on January 23, 2005, stating that "[a]bsent your recusal or incapacity . . . DKO expects you to personally, independently, and timely settle both claims either through alternative dispute resolution or by rendering a final decision not later than February 14, 2005." Id. Dr. Ourecky again wrote to Mr. Crawford on January 28, 2005, with a copy to the FLRA Inspector General, inquiring why the FLRA had not offered to resolve the dispute by alternate dispute resolution. JS ¶ 61.

On January 31, 2005 (misdated as 2004), Ms. Thomas sent a letter to DKO advising again of the reassignment of the claims, and providing contact information for the new contracting officer, Linda Pryor, Department of Treasury, Parkersburg, West Virginia. JA Tab 62. Ms. Thomas further stated that "all future communications relating to DKO Technologies' claims should likewise be directed to the contracting officer, Ms. Pryor," and that "Mr. Crawford does not have any current involvement with those claims." Id. Dr. Ourecky sent another response letter on January 31, 2005, with a copy to the FLRA Inspector General, to protest the reassignment of its claims to the Bureau of Public Debt. JS ¶ 63; JA Tab 63.

DKO received Mr. Crawford's final decision on January 31, 2005. JS ¶ 64. Mr. Lavezzo states that he submitted an invoice to the FLRA on February 1, 2005 for the amount awarded in Mr. Crawford's final decision, $81,728. JS ¶ 65; JA Tab 65. The invoice bears an FLRA mail room receipt stamp of February 1, 2005. Id. The FLRA did not enter DKO's invoice into its Budget and Finance Division invoice log. JS ¶ 66.

On February 18, 2005, Ms. Pryor issued her final decisions on the DKO claims. JS ¶ 67; JA Tab 67. Ms. Pryor denied both claims in two-page letters with only minimal analysis of the merits of DKO's claims. JA Tab 67. Ms. Pryor referred in both letters to her unsuccessful attempts to contact DKO "to obtain additional detail and documentation." JA

Tab 67. The letters erroneously refer to DKO's claims dated "December 20, 2004." Id. The letter for the Help Desk Contract includes a discussion of whether the contract number is correct, and then states "[t]he contracting officer cannot presume or make a guess at the contract being addressed by a contractor's claim." Id. The letters do not cite any contract provisions or any applicable case law. Id. Plaintiff filed suit in this Court on May 26, 2005 seeking to enforce Mr. Crawford's final decision in Plaintiff's favor.[6]

## Discussion

### I. Standard of Review

In ruling on motions to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the Court accepts as true the undisputed allegations in the complaint, and draws all inferences in favor of the plaintiff. See RCFC 12(b)(1); Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). The plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence. Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746, 748 (Fed. Cir.1988). The Court must treat a motion to dismiss for lack of subject matter jurisdiction as a dispositive question, to be addressed before any others. Patton v. United States, 64 Fed. Cl. 768, 773 (2005) (citing Moran v. Kingdom of Saudi Arabia, 27 F.3d 169, 172 (5th Cir. 1994)).

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." RCFC 56; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). Summary judgment will not be granted "if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248. A "genuine" dispute is one that "may reasonably be resolved in favor of either party." Id. In making these determinations, the Court must resolve all reasonable inferences in favor of the non-moving party. Telenor Satellite Services, Inc. v. United States, 71 Fed. Cl. 114, 118-19 (2006) (citing Champagne v. United States, 35 Fed. Cl. 198, 206 (1996)). When there are cross-motions for summary judgment, the Court must evaluate each motion individually, making inferences against the moving party with respect to each motion. Telenor, 71 Fed. Cl. at 119.

---

[6] Plaintiff filed its suit as Donald K. Ourecky v. United States, and Dr. Ourecky at first appeared *pro se*. Following a hearing on December 21, 2005, the Court allowed Mr. Lavezzo to be substituted as the real party in interest. Thereafter, Plaintiff obtained counsel.

II. Subject Matter Jurisdiction

Defendant asserts that the Court is without jurisdiction to hear Plaintiff's claims because privity of contract is lacking between Mr. Lavezzo and the FLRA. Defendant contends that Mr. Lavezzo, as a sole proprietorship, should have signed the contracts. See Federal Acquisition Regulation ("FAR") § 4.102(a) ("A contract with an individual doing business as a firm shall be signed by that individual."). By having Dr. Ourecky sign the contracts, Defendant contends that Mr. Lavezzo was an undisclosed principal because FLRA officials were unaware that Dr. Ourecky was acting on Mr. Lavezzo's behalf. Defendant also argues that the Anti-Assignment Act, 41 U.S.C. § 15, would annul a contract transferred from an agent to an undisclosed principal.

The parties have stipulated that Mr. Lavezzo authorized Dr. Ourecky to execute documents, sign checks, communicate with the FLRA, and interview potential contractors on behalf of DKO. JS ¶ 15. The applicable regulations impose a duty on the contracting officer to "ensure that the signer(s) have authority to bind the contractor." FAR § 4.101. Under the facts presented, it is clear that Mr. Lavezzo authorized Dr. Ourecky to sign the contracts on behalf of DKO, and that Dr. Ourecky did so in his capacity as authorized representative of DKO. The FLRA could have inquired further if it questioned Dr. Ourecky's authority, or if it wanted to verify DKO's ownership and business structure. DKO's public business records were on file in Alexandria, Virginia. The contracting officer, Mr. Crawford, testified in his deposition that he determined "Dr. Ourecky was authorized to sign the contracts." Crawford Dep., May 15, 2006, at 56.

At most, DKO committed a technical violation of FAR § 4.102(a) in not having Mr. Lavezzo sign the contracts, and through that omission, the FLRA may have been unaware that Mr. Lavezzo was DKO's principal. However, no evidence exists that Mr. Lavezzo or Dr. Ourecky were attempting to conceal Mr. Lavezzo's ownership of DKO. Rather, the violation is more likely an innocent oversight by newcomers to Government contracting. Moreover, even if Dr. Ourecky's relationship with Mr. Lavezzo and DKO was unclear, the contract would not be void *ab initio*, but only "voidable" at the Government's election. See American Science & Engineering, Inc. v. United States, 663 F.2d 82, 87 (1981) ("This court will not declare a contract between the government and a private party void *ab initio* unless there was 'plain illegality' in the contract."); United Intern. Investigative Servs. v. United States, 26 Cl. Ct. 892, 900 (Cl. Ct., 1992) (noting that "a misrepresentation as to the identity of a party does not render a contract void, but rather voidable").

Plaintiff satisfactorily performed the contracts, the Government paid Plaintiff for its work, and any misunderstanding regarding DKO's ownership does not appear to have harmed or prejudiced the Government in any respect. See Roseburg Lumber Co. v. Madigan, 978 F.2d 660, 667 (Fed. Cir. 1992) (requiring that "the evidence . . . establish not only the existence of a misrepresentation, but also that the party seeking relief both relied upon such

misrepresentation, and was damaged thereby."). Under these circumstances, the Government may not now deny a contractual relationship with Mr. Lavezzo or DKO. To find otherwise would foreclose Plaintiff from pursing its contract claims. Accordingly, Defendant's motion to dismiss for lack of subject matter jurisdiction is DENIED.

III. The Conflicting Contracting Officer Final Decisions

The record in this case reflects considerable agency discord between the contracting officer, Mr. Crawford, and his immediate supervisor, Ms. Thomas, that had a direct effect on the handling of Plaintiff's claims. Mr. Crawford was the assigned contracting officer for Plaintiff's contracts, yet Ms. Thomas instructed Mr. Crawford not to take any action on Plaintiff's claims. While Ms. Thomas certainly was authorized to manage her office at the FLRA, she was not a contracting officer, and she should not have taken any action to meddle in the claims process. For his part, Mr. Crawford appears to have been so angered by Ms. Thomas's interference that he was focused more on winning an office battle before his retirement than on the merits of Plaintiff's claims. His January 13, 2005 final decision, JA Tab 50, includes gratuitous criticism of Ms. Thomas's alleged poor contract administration and interferences with the agency's procurement process that is simply unrelated to Plaintiff's claims.

The FLRA's reassignment of Plaintiff's claims to a new contracting officer with the Department of Treasury has its own set of problems. An appearance of impropriety arose when Ms. Thomas transferred DKO's claims from one contracting officer within her agency, and the logical decision-maker, to another contracting officer outside the agency. By making this transfer, Ms. Thomas took the claims away from a contracting officer that she perceived would likely award relief, and sent them to a contracting officer outside the agency for which she would pay $5,000 per final decision. Had the second contracting officer, Ms. Pryor, performed a thorough review of DKO's claims and prepared well-reasoned final decisions, the impropriety may have been diminished, but such was not the case. The second set of final decisions reflects such a slipshod end product that the FLRA's $5,000 payments might be regarded as compensation for the desired outcome rather than for the effort expended.

From DKO's vantage, in its first Government contracting foray, it received two conflicting contracting officer final decisions within a month addressing the same claims. One of these decisions was an 18-page document filled with personal attacks on an agency supervisor, and the other was a set of rubber-stamp claim denials from the Department of Treasury. With even a rudimentary knowledge of the federal procurement process, DKO may have rightly wondered why an agency supervisor tried to prevent the assigned contracting officer from deciding its claims, and why it was necessary to go outside the agency to another contracting officer.

The FLRA's handling of Plaintiff's claims was at odds with the requirement of the Contract Disputes Act that contracting officers act independently when adjudicating disputes. The Contract Disputes Act gives contracting officers "final and conclusive" authority to decide claims, and their decisions are "not subject to review by any forum, tribunal, or Government agency, unless an appeal or suit is timely commenced . . . .'" 41 U.S.C. § 605(b). Ultimately, the contracting officer must "put his own mind to the problems and render his own decisions. . . ." Pacific Architects & Eng'rs, Inc., 203 Ct. Cl. at 518, 491 F.2d at 744 (quoting New York Shipbuilding Corp. v. United States, 180 Ct. Cl. 446, 460, 385 F.2d 427, 435 (1967)); CEMS, Inc. v. United States, 65 Fed. Cl. 473, 479 (Ct. Cl. 2005). See also Kurtis R. Mayer and Pamela Mayer, d/b/a Mayer Built Homes, HUDBCA No. 83-823-C20, 84-2 BCA ¶ 17,494. While contracting officers are encouraged to seek advice from legal counsel and other agency experts, their decisions must be "personal [and] independent," and "even the appearance of coercion [must] be avoided." Edmund Leising Bldg. Contractor, Inc., VABCA No. 1428, 81-1 BCA 14,925.

## Conclusion

Under the circumstances presented, the FLRA did not comply with the requirements of the Contract Disputes Act. The Court therefore will remand this matter to the agency for a period not to exceed 60 days for it to issue a proper final decision on Plaintiff's claims. The FLRA is directed to assign a new contracting officer to decide Plaintiff's claims, having no prior involvement with Plaintiff's contracts. The new contracting officer shall fairly and independently review Plaintiff's claims, and render a final decision that provides a reasoned analysis to Plaintiff.

The Court shall retain jurisdiction of this matter during the remand period. Upon receipt of the FLRA's new final decision, Plaintiff may accept the decision, or it may request the Court to review the merits of the claims. The parties' cross-motions for summary judgment are DENIED.

IT IS SO ORDERED.

s/Thomas C. Wheeler
THOMAS C. WHEELER
Judge